UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| Parkland Properties, LLC, et al. | ) | Case No.: 13-22702 |
| | ) | Jointly Administered |
| | ) | |
| Debtors. | ) | Judge Donald R. Cassling |

NINTH INTERIM ORDER AUTHORIZING USE OF CASH
COLLATERAL AND NOTICE OF FINAL HEARING
**American Enterprise Bank**

This matter came before the Court on the Debtor's Motion for Entry of a Ninth Interim Order Authorizing Debtor to (i) Utilize Cash Collateral Pursuant to 11 U.S.C. §363; and (ii) Granting Adequate Protection to Pre-Petition Secured Lender Pursuant to 11 U.S.C. §361 ("Motion")

Facsimile, US Mail, overnight or courier notice of the filing of the Motion, together with notice of the preliminary hearing on the Motion, has been given by Parkland Properties, LLC and Parkland VI, LLC ("Debtor") to the United States Trustee, American Enterprise Bank ("Lender"), Banco Popular North America, MRR Parkland Properties, LLC, Forest Park Bank, Liberty Bank, Bank of America, Bridgeview Bank, the Debtor's twenty largest unsecured creditors, and all entities that have requested notice of in this case. The Court having conducted a preliminary hearing on the Motion, having heard the statements of counsel with respect thereto, and being duly advised in the premises, now finds, as to paragraphs 1-4 below and the parties hereto stipulate to the matters set forth in paragraphs 5-11 below, as follows:

1.      Parkland Properties filed its voluntary petition for relief under Chapter 11 of Title 11 of the United States Code ("Bankruptcy Code") on May 31, 2013 and Parkland VI, LLC on July 1, 2013 ("Petition Date").

2.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (M).  Venue is proper in this district and division pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      The notice of the interim cash collateral hearing which the Debtor provided was sufficient and appropriate under the circumstances of this case, and satisfies the requirements of Rule 4001(b)(3) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

4.      The Debtor is presently operating as Debtor-in-Possession ("DIP") in accordance with sections 1107 and 1108 of the Bankruptcy Code.  No trustee, examiner or creditors' committee has been appointed in this case. The Debtor owns property subject to the Lender's lien commonly referred to as 4201-4203 W. North Avenue, Chicago, Illinois 60639.   This and other properties owned by the Debtor are managed by an affiliate company, Parkland Properties, LLC which is a debtor in bankruptcy case no 13-22702.

5.      Debtor and Lender stipulate and agree, that, (a) as of the Petition Date, the Debtor owed the Lender principal in the amount of $469,995.29, plus accrued interest, fees and expenses ("Pre-Petition Loan"); (b) as security for Debtor's obligation to pay the Pre-Petition Loan, the Lender holds a valid and properly perfected senior security interest and lien (the "Pre-Petition Lien") in and upon property commonly referred to as 4201-4203 W. North Avenue, Chicago, Illinois 60639 (the "Property"), and the rents, proceeds, and products thereof (the "Pre-Petition Collateral"); (c) the Lender holds a valid and perfected lien on and security interest in all rents, proceeds, and products from those products, as that term is defined in section 363(a) of the Bankruptcy Code ("Cash Collateral").

6.      The Debtor cannot successfully operate its business unless it can maintain its business operations, pay the utilities, waste removal, taxes, repairs, other necessary expenses and/or services, and satisfy other working capital needs in the ordinary course of its business.

7.      The Debtor does not have sufficient unencumbered cash or other assets with which to continue and operate its business in this Chapter 11 case.

8.      The Debtor must have immediate authority to use Cash Collateral in order to continue its operations without interruption toward the objective of formulating an effective plan of reorganization for the benefit of all of its creditors.

9.      The Cash Collateral will be used by the Debtor to pay actual expenses of the Debtor necessary to (a) the maintenance and preservation of its assets, and (b) the continued operation of its businesses.

10.     As adequate protection for its use of the Lender's Cash Collateral, the Debtor has offered to, among other things, grant the Lender a post-petition replacement lien on those categories of post-petition assets (the "Post-Petition Collateral") which constitute the Lender's Pre-Petition Collateral, to the same extent, and with the same priority, as the Pre-Petition Lien.  The Debtor also agrees that the value of the Post-Petition Collateral shall, at all times, equal or exceed the value of the Pre-Petition Collateral, as that value existed on the Petition Date.

11.     The Lender consents to the Debtor's use of the Lender's Cash Collateral, but only on the terms and conditions set forth herein. The adequate protection authorized and approved pursuant to the terms of this Interim Order (a) has been negotiated by the Debtor and the Lender in good faith and at arms' length, (b) is fair and reasonable under the

circumstances of this case, (c) reflects the Debtor's exercise of its business judgment, (d) is supported by reasonably equivalent value and fair consideration, and (e) all payments are provisional pending the final hearing.

Based upon the foregoing findings contained above in paragraphs 1-4 and the stipulations contained above in paragraphs 5-11, it is hereby ORDERED as follows:

A.  Authorization to Use Cash Collateral. The Debtor, as DIP may use Cash Collateral to pay the ordinary expenses of operating its business in accordance with (i) the budget attached hereto as Exhibit A ("Budget") and (ii) the terms of this Ninth Interim Order. The DIP's actual payments of the expenses described in each line of the Budget shall not exceed 110% of each such line-item expense for the time period set forth in the Budget, without either prior written consent of the Lender, or further order of this Court.  All Cash Collateral shall be held in the Debtor's preexisting bank account at Lender's institution.  No other related debtor in possession shall be authorized to use the Cash Collateral other than by further Order of this Court.

B..  Adequate Protection. As adequate protection for the use of the Lender's Cash Collateral and for any decline in the value of the Pre-Petition Collateral as of the Petition Date:

(i)  The Lender is hereby granted a perfected security interest in, and lien ("Adequate Protection Lien") upon, the Post-Petition Collateral to the same extent, and with the same validity and priority as the Lender's Pre-Petition Lien on the Pre-Petition Collateral;

(ii) Debtor shall pay to Lender $3,566.81 each month beginning on February 11, 2015 and on the 5th day of each month thereafter while this Order remains in effect;

(iii) Debtor shall remit $556.17 each month beginning on February 11, 2015

and on the 5th day of each month to the Lender to escrow for property taxes; (iv)

Debtor shall continue to maintain insurance on the Post-Petition

Collateral; and

(v) Permit the Lender to credit bid its claim (the "Lender's Claim") at any

sale of the Debtor's assets, including, without limitation, (a) a sale under either

or both of Bankruptcy Code §§363(b) and 363(f), and (b) a sale pursuant to

a plan of reorganization or a plan of liquidation.

(vi)    Lender is authorized to accept cash collateral payments in the amount of

$3,566.81 and escrow payments in an amount of $556.17 for the period between

the entry of the last order with respect to the Debtor's use of Lender's Cash

Collateral and the date of this Order.

C.  Automatic Perfection. This Order shall be deemed to be, and shall constitute, a

loan and security agreement under the applicable provisions of the Illinois Uniform

Commercial Code in effect from time to time. The Adequate Protection Lien granted to the

Lender by this Order shall be deemed perfected upon entry of this Order without the necessity

of filing or recording by any person of any document or instrument required to be filed or

recorded under applicable non-bankruptcy law in order to perfect the Adequate

Protection Lien. The validity and perfection of the Adequate Protection Lien granted to the

Lender by this Order shall be binding upon a successor to either the DIP or the Debtor, a

trustee appointed in this case under chapter 11 or 7 of the Bankruptcy Code, and upon any

and all creditors of the Debtor or the DIP who have extended, or who may hereafter extend

credit, to the Debtor or to the DIP, or who have asserted or who may hereafter assert a claim

of any nature or in any manner whatsoever in this chapter 11 case, or in any superseding case

of the Debtor under chapter 7 of the Bankruptcy Code. Anything herein to the contrary

notwithstanding, the DIP shall execute such other security agreements and supporting

documents as the Lender may request in order to document the Adequate Protection Lien

granted to the Lender pursuant to the terms of this Order.

D. <u>Termination</u>. The Debtor's authority to use Cash Collateral shall terminate on the earlier of (a) the occurrence of any Event of Default (identified below);   April 30, 2015; or the date presently scheduled for the continued hearing on this Motion.

E. <u>Post-Petition Effect of Pre-Petition Liens.</u> In addition to the Adequate Protection Lien granted in Paragraph B(i) above, Lender's Pre-Petition Lien shall extend to all of the Debtor's property acquired post-petition that is either proceeds from the sale of the Property or rents or proceeds that derived from the Properties, to the same extent, validity and priority as existed pre-petition, as provided by section 552(b)(1) of the Bankruptcy Code.

F.  <u>Parties' Rights to Seek Modification.</u>  This Order is without prejudice to the right of the DIP to seek a modification of this Order, and increased use of Cash Collateral, after notice and hearing, and is also without prejudice to the right of the Lender to seek a modification of this Order, decreased use of Cash Collateral or additional adequate protection, after notice and hearing.

G.  <u>Lender's Right to Object.</u>  Nothing in this Order shall (a) constitute or be construed  as, consent, acknowledgment or agreement by the Lender, or (b) constitute a waiver or estoppel, with respect to the rights of the Lender to dispute (i) the validity or accuracy of the Debtor's calculations which serve as a basis for either entry of this Order or the formulation of the Budget; or (ii) the allowance or payment of administrative expenses, including, without limitation, fees and expenses of the Debtor's professionals.  Lender's consent  to  the  terms  of this Order shall not constitute an admission that Debtor's compliance with the terms of this Order constitutes adequate protection for the Lender's interest in the Debtor's property and shall not be deemed a waiver of Lender's right either to request additional adequate protection, or to seek relief from the automatic stay for cause, including, without limitation, lack of adequate protection.

H.  Debtor's Obligation to Provide Information  Within three (3) business days of the

entry of this Order, the Debtor shall provide the Lender with (i) all leases for the Property; (ii)

all notes, security agreements mortgages, financing statements, applications, commitment

letters and related documents, together with any modifications, substitutions, extensions and

renewals thereof (collectively, the "Loan Documents"); (ii) any documents reflecting the grant

to, and perfection of, any security interest of other creditors in the assets of Debtor; (iii) all

documents regarding other loans by any entity or other entities to the Debtor; and (iv) any and

all documents or other information relating to information which Debtor disclosed, or should

have disclosed, on its Statement of Financial Affairs, as the same may be amended from time to

time.

On or before February 20, 2015 and on or before the fifth (5th) day of each month

thereafter, the Debtor shall provide Lender with a report with respect to the immediately

preceding calendar month that details the difference between the line item amounts set

forth in the Budget and the Debtor's actual income and expenses for the applicable month

(the "Variance Reports").

Furthermore, Debtor shall in good faith and in a reasonably prompt manner: (a)

provide to the Lender the financial reports submitted by the Debtor to the United States

Trustee's Office, and such other information as the Lender may reasonably request from time

to time; (b) answer inquiries and requests of the Lender and its professionals for information

and/or documentation; (c) provide full cooperation and information to the Lender as to the

value and description of assets of Debtor and the sale or liquidation of those assets; and (d)

timely provide to the Lender and its counsel any documentation requested relating to the

Variance Reports and amounts set forth therein (including, without limitation, bills,

invoices and rental checks).

I.  Lender's Right to Inspect .  Debtor agrees that Lender and its agents, independent

contractors and professionals, shall be entitled to inspect Debtor's property and books and

records during regular business hours following not less than three (3) business days' notice to

the Debtor.

J.   Events of Default. The DIP shall be in default hereunder upon the occurrence of

any of the following events (each an "Event of Default"):

(i)  DIP's failure to make any payment to Lender required by this Order and

as set forth in the Budget;

(ii) DIP's failure to comply with (a) any other provision of this Order, or (b) any

reporting or other requirements imposed by the Bankruptcy Code, the

Bankruptcy Rules, the local rules  or the United States Trustee;

(iii) DIP ceases operations;

(iv) DIP's failure to timely pay any post-petition tax obligations;

(v)  Dismissal or conversion to chapter 7 of Debtor's chapter 11 case;

(vi) Appointment of a chapter 11 trustee or examiner for the Debtor;

(vii)     A request by the DIP or any other entity that the Court grant a lien or

security interest in any of Lender's Pre-Petition or Post-Petition Collateral

which lien is senior in priority to, or pari passu with, either or both of the

Lender's Pre-Petition or Post-Petition Lien without the Lender's written

consent; and

(viii)    Reversal or modification of this Order on appeal or otherwise.

K.   Lender' s  Remedies  Following Debtor's Default  Upon the occurrence of an

Event of Default:

(i)  DIP's authorization to use Cash Collateral shall immediately cease, and DIP may

resume use of Cash Collateral only if (a) the Event of Default is cured to Lender's

satisfaction, in its sole discretion or, (b) after notice and a hearing, the Court

authorizes DIP's continued use of Cash Collateral; and

(ii) Lender shall be entitled to file an emergency motion seeking relief from the automatic stay and/or abandonment of any of Lender's collateral, which motions may be heard by the Court as soon as practicable based on the Court's calendar following two business days' written notice by the Lender to the DIP. Debtor waives the right to contest any motion for relief from the automatic stay filed by Lender in accordance with this section.

L.  [intentionally blank]

M. Modification. If any or all provisions of this Order are hereafter modified, terminated, vacated or stayed by subsequent order of this Court, or any other court, such modification, termination, vacation or stay shall be prospective only and shall not affect the validity, priority or enforceability of the liens, priorities and  other adequate protection granted Lender (a) by this Order, or (b) by any other order or orders allowing the continued use of Cash Collateral, prior to the effective date of any such order modifying, terminating, vacating or staying this Order.

N.  Lender's Right to Request Additional Adequate Protection.  Lender reserves the right to seek relief from automatic stay, further adequate protection or any other remedy or relief, which right shall not be impaired by this Order.

O. Prohibited Use of Cash Collateral. Lender's Cash Collateral shall not be used, to pay any fees or expenses incurred by any party in interest relating to other properties managed by the DIP.  The Lender's Cash Collateral and all expenses relating to the Properties paid pursuant to the Budget and this Interim Order shall be separately accounted for.

P. Survival.  The provisions of this Order shall be binding upon and inure to the benefit of the Debtor, the DIP and Lender, and their respective successors and assigns, retroactively to September 1, 2013.  The terms of this Order and the Loan Documents shall be

valid and enforceable obligations of the Debtor and the DIP against any subsequent Chapter 11 or Chapter 7 trustee for the Debtor.  The Adequate Protection Lien granted to Lender herein shall survive conversion or dismissal of this case.

Q.  Plan of Reorganization or Other Subsequent Orders.   Absent prior written consent of Lender, the validity, priority and extent of the Adequate Protection Lien granted to the Lender pursuant to this Order shall not be modified, altered, or affected in any manner, (a) by a plan of reorganization or a plan of liquidation, or (b) a subsequent order by this Court.

R.  Contiued Hearing. A continued hearing on the Motion shall be held on February 24, 2015 at 10:00 a.m., in Courtroom 619, in the Everett McKinley Dirksen Building, 219 South Dearborn Street, Chicago, Illinois 60604.

IT IS FURTHER ORDERED that the Debtor shall serve a copy of this Order and Notice by US Mail, facsimile or email within one (1) business day from the date hereof, on the Office of the United States Trustee, the Lender, the Debtor's twenty largest unsecured creditors and all entities that have requested notice of pleadings filed in this case..

Dated: _____, 2015

_____
UNITED STATES BANKRUPTCY JUDGE

# EXHIBIT A

## 4201 West North Ave [NOR4201]

|  |  | Income | Expenses |
|---|---|---|---|
|  | Rental Income | $5,917.02 |  |
| **Direct Expenses** |  |  |  |
|  | Repairs |  | $715.00 |
|  | Appliances |  | $95.00 |
|  | Insurance |  | $263.17 |
|  | Taxes |  | $556.17 |
|  | Water |  | $213.56 |
|  | Debt Service |  | $3,566.81 |
| **Administrative Expenses** |  |  |  |
|  | Legal Expenses |  | $220.00 |
|  | Management Fees |  |  |
| **Total:** |  | $5,917.02 | $5,629.71 |

**Net Profit/Loss**                                           $287.31
**Management Fees**                    $0.00