# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | Case No. 13-22702 |
| Parkland Properties, LLC, *et al*[1] | ) | (Jointly Administered) |
| | ) | |
| | ) | Honorable Donald R. Cassling |
| Debtors. | ) | |
| | ) | Hearing Date: January 26, 2016 |
| | ) | Hearing Time: 9:30 a.m. |

## <u>NOTICE OF MOTION</u>

To:   Persons Listed on the Attached Service List

PLEASE TAKE NOTICE THAT on **January 26, 2016 at 9:30 a.m.** the undersigned shall appear in front of the Honorable Donald R. Cassling, or any other Judge sitting in his stead in Courtroom 619 in the Everett McKinley Dirksen Building, 219 South Dearborn Street, Chicago, Illinois, and shall then and there present the attached **Motion to Authorize Relief from Judgment Pursuant to Bankruptcy Rule 9024**, a copy of which is attached hereto and herewith served upon you.

Dated:  January 21, 2016

Respectfully submitted,

Bank of America, N.A.
Ditech Financial, LLC

By:   /s/ Bryan E. Minier
One of their attorneys

Bryan E. Minier (ARDC # 6275534)
Pedersen & Houpt
161 N. Clark Street, Suite 2700
Chicago, Illinois 60601
Telephone:  (312) 261-2265
Telecopier:  (312) 261-1265
bminier@pedersenhoupt.com

---

[1] The "Debtors" include: Parkland Properties, LLC (Case No. 13-22702); Parkland II, LLC (Case No. 13-25121); Parkland III, LLC (Case No. 13-25125); Parkland IV, LLC (Case No. 13-26018); Parkland V, LLC (Case No. 13-27098); and Parkland VI, LLC (Case No. 13-26811).

## CERTIFICATE OF SERVICE

The undersigned, an attorney, does hereby certify that on January 21, 2016, he caused true and correct copies of the above and foregoing **Notice of Motion** and **Motion to Authorize Relief from Judgment Pursuant to Bankruptcy Rule 9024**, to be served on those persons listed below, via the Court's CM/ECF service.

_/s/ Bryan E. Minier_

Bryan E. Minier (ARDC # 6275534)
Pedersen & Houpt
161 N. Clark Street, Suite 3100
Chicago, Illinois 60601
Telephone:  (312) 261-2265
Telecopier:  (312) 261-1265
bminier@pedersenhoupt.com

## SERVICE LIST

| | | |
|---|---|---|
| Devon J Eggert<br>Freeborn & Peters LLP<br>311 S. Wacker Dr., Ste. 3000<br>Chicago, IL 60606<br>deggert@freeborn.com | Timothy R Herman<br>Clark Hill PLC<br>150 N. Michigan Avenue,<br>Suite 2700<br>Chicago, IL 60601<br>therman@clarkhill.com | Douglas J. Lipke<br>Vedder, Price<br>222 North LaSalle Street<br>Chicago, IL 60601<br>dlipke@vedderprice.com |
| Whitney Fogelberg<br>Vedder Price P.C.<br>222 North LaSalle Street<br>Chicago, IL 60601<br>wfogelberg@vedderprice.com | Elizabeth L Janczak<br>Freeborn & Peters LLP<br>311 S. Wacker Drive<br>Suite 3000<br>Chicago, IL 60606<br>ejanczak@freeborn.com | Thomas M Lombardo<br>DiMonte & Lizak, LLC<br>216 Higgins Road<br>Park Ridge, IL 60068<br>tlombardo@dimontelaw.com |
| Joshua D. Greene<br>Springer Brown, LLC<br>400 South County Farm Rd.<br>Suite 330<br>Wheaton, IL 60187<br>jgreene@springerbrown.com | Pamela J Leichtling<br>Clark Hill PLC<br>150 N. Michigan Ave. #2700<br>Chicago, IL 60601<br>pleichtling@clarkhill.com | Michael V Ohlman<br>Michael V. Ohlman, P.C.<br>308 West Erie, Suite 300<br>Chicago, IL 60606<br>mvohlman@ohlmanlaw.com |

| | | |
|---|---|---|
| Keara Roethke<br>Ginsberg Jacobs LLC<br>300 S. Wacker, Suite 2750<br>Chicago, IL 60606<br>kroethke@ginsbergjacobs.com | Joseph Santeler<br>Chuhak & Tecson, P.C.<br>30 S. Wacker Dr., Suite 2600<br>Chicago, IL 60606<br>jsanteler@chuhak.com | Scott N. Schreiber<br>Clark Hill PLC<br>150 N. Michigan Ave.<br>Suite 2700<br>Chicago, IL 60601<br>sschreiber@clarkhill.com |
| Miriam R. Stein<br>Chuhak & Tecson, P.C.<br>30 South Wacker Drive<br>Suite 2600<br>Chicago, IL 60606<br>mstein@chuhak.com | Tracy A Steindel Ickes<br>Ginsberg Jacobs LLC<br>300 S. Wacker Dr., Ste 2750<br>Chicago, IL 60606<br>tickes@ginsbergjacobs.com | Martin D. Tasch<br>Momkus McCluskey, LLC<br>1001 Warrenville Road<br>Suite 500<br>Lisle, IL 60532<br>mtasch@momlaw.com |

## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | Case No. 13-22702 |
| Parkland Properties, LLC, *et al*[2] | ) | (Jointly Administered) |
| | ) | |
| | ) | Honorable Donald R. Cassling |
| Debtors. | ) | |
| | ) | Hearing Date: January 26, 2016 |
| _____ | ) | Hearing Time: 9:30 a.m. |

### MOTION TO AUTHORIZE RELIEF FROM JUDGMENT
### PURSUANT TO BANKRUPTCY RULE 9024

Bank of America, N.A. ("BOA"), and Ditech Financial, LLC, f/k/a Green Tree Servicing, LLC ("Ditech"), by and through their attorneys, Pedersen & Houpt, hereby move this Court for an order modifying both the Order Confirming Debtor's Plan of Reorganization in the Parkland II, LLC case (Case No. 13-25121) (the "Parkland II Plan") and Order Confirming Debtor's Plan of Reorganization in the Parkland VI, LLC case (Case No. 13-26811) (the "Parkland VI Plan", and collectively with the Parkland II Plan, the "Plans")[3], pursuant to Rule 9024 of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules"), and in support thereof state as follows:

### SUMMARY OF ARGUMENT

1.     While neither BOA nor Ditech object to the confirmation of either of the Plans *per se*, they do object to language included in each of the Plans potentially affecting their interest in real property owned by certain of the Debtors. Each of the Plans contains language seemingly determining that BOA's and Ditech's interest in such real property is junior to that of Bridgeview

---

[2] The "Debtors" include: Parkland Properties, LLC (Case No. 13-22702); Parkland II, LLC (Case No. 13-25121); Parkland III, LLC (Case No. 13-25125); Parkland IV, LLC (Case No. 13-26018); Parkland V, LLC (Case No. 13-27098); and Parkland VI, LLC (Case No. 13-26811).

[3] The Parkland II Plan is attached hereto as Exhibit A.  The Parkland VI Plan is attached hereto as Exhibit B.

Bank Group's ("Bridgeview") interest in the same property.  *Parkland II Plan, §3.01, Parkland VI Plan, §3.01*.  Additionally, each of the Plans contains language that BOA and Ditech's interests are "wholly unsecured" and thus "stripped off" of the property.  *Id.*  However, whether Bridgeview's liens are senior to those of BOA and Ditech is currently being litigated in state court and has yet to be resolved - a fact that the Debtors, the Debtors' counsel, and Bridgeview and Bridgeview's counsel were well aware of. In fact, it appears that none of the parties made this Court aware of the ongoing state court lien priority dispute.  Instead, Debtors' counsel simply inserted (in the sixth iteration of the Plans) language that misrepresents the lien priority issue by seeming to indicate that the priority of Bridgeview's lien is undisputed.  Additionally, it appears no evidence or testimony was presented regarding the priority of BOA or Ditech's liens versus the liens of Bridgeview in the property and no evidence or testimony was presented regarding the value of the real property.  Also, and fatally, there is no record of either of the Plans (nor their corresponding disclosure statements) being served on either of BOA or Ditech - no certificate or affidavit of service was ever filed corresponding with either of the Plans.  In fact, there is no record of Ditech receiving service of any pleadings in these cases.  This fact is especially egregious considering that counsel to the Debtors, and counsel to Bridgeview, were aware that both BOA and Ditech were being represented in the state court lien priority dispute and were in regular communication with BOA's and Ditech's counsel throughout the bankruptcy proceedings. Lastly, the lien stripping language contained in each of the Plans is confusing at best, being premised upon the wrong section of the Bankruptcy Code and, in one instance, referring to the wrong creditor.

2.       For all of the reasons above, BOA and Ditech seek an order modifying the Plans pursuant to Bankruptcy Rule 9024, which incorporates Rule 60(b) of the Federal Rules of Civil

Procedure.  It is important to note that neither BOA nor Ditech is moving to revoke the orders confirming the Plans pursuant to 11 U.S.C. § 1144, but instead merely to modify Section 3.01 of each of the Plans as it relates to BOA and Ditech.

## BACKGROUND FACTS

### State Court Proceedings

3.      On or about May 12, 2003, James Brettner and Glenn Brettner (the "Brettners") executed a note (the "Potomac Note") in the amount of $230,400.00 in favor of Countrywide Home Loans, Inc. ("Countrywide"), which was secured by a mortgage on property located at 3217 W. Potomac Avenue in Chicago, Illinois (the "Potomac Property").  On the same date, the Brettners executed a note (the "Artesian Note") in the amount of $253,400.00, also in favor of Countrywide, and secured by a mortgage on property located at 1508 N. Artesian Avenue in Chicago, Illinois (the "Artesian Property").  Both mortgages were recorded with the Cook County Recorder of Deeds on May 22, 2003 and May 16, 2003, respectively.

4.      In 2008, Countrywide merged into and subsequently operated as part of BOA.

5.      In early 2013, the Brettners refinanced both the Countrywide mortgages with BOA, by executing new notes on the respective properties in favor of BOA.  However, at or about the same time as the refinancing, Bridgeview obtained two judgments against James Brettner and Glenn Brettner - the first judgment in the amount of $717,804.41 and the second judgment in the amount of $44,466.27.  Thereafter, Bridgeview recorded four memoranda of judgment relating to the two judgments.  The memoranda were recorded on May 10, 2013, May 16, 2013, May 23, 2013, and June 14, 2013.

6.      On October 18, 2013, Bridgeview filed two complaints in the Circuit Court of Cook County seeking to foreclose its judgments liens against the Potomac Property and Artesian

Property. Both cases are still pending - Case Number 2013 CH 23609 relating to the Potomac Property (the "Potomac Case") is pending before the Honorable Bridget Mitchell and Case Number 2013 CH 23608 relating to the Artesian Property (the "Artesian Case", together with the Potomac Case, the "State Court Proceedings") is pending before the Honorable Darryl B. Simko.

7.      Bridgeview included Bank of America as a defendant in the Artesian Case, and Green Tree Servicing, LLC ("Green Tree")[4] as a defendant in the Potomac Case, arguing in each instance that certain of Bridgeview's judgment liens were senior to BOA or Ditech (formerly Green Tree's) mortgages.  In short, Bridgeview's arguments are based on the assertion that Bridgeview recorded its judgments liens after each of BOA and Ditech released their original mortgages and before BOA and Ditech recorded new mortgages to memorialize the refinancing.

8.      On October 9, 2014, Bridgeview filed a Motion for Summary Judgment pursuant to 735 ILCS 5/2-1005 in the Potomac Case.  The Motion for Summary Judgment in the Potomac case has been fully briefed.  Attached hereto as Exhibit C is Bridgeview's Motion for Summary Judgment, Exhibit D is Green Tree's response, and Exhibit E is Bridgeview's reply.

9.      The Circuit Court of Cook County has not yet ruled upon Bridgeview's Motion for Summary Judgment in the Potomac Case, the motion was stayed on July 7, 2015 pending a resolution of the bankruptcy proceedings.  A copy of the July 7, 2015 order is attached hereto as Exhibit F.

10.      On September 24, 2014 Bridgeview filed a Motion for Summary Judgment pursuant to 735 ILCS 5/2-1005 in the Artesian Case.  This Motion for Summary Judgment was

---

[4] BOA was the original defendant in the Potomac Case, but Green Tree was later substituted in as a defendant for BOA after the underlying mortgage was assigned from BOA to Green Tree. Green Tree later merged into Ditech, the movant here.

4

also fully briefed.  Attached hereto as <u>Exhibit G</u> is Bridgeview's Motion for Summary Judgment, <u>Exhibit H</u> is BOA's response, and <u>Exhibit I</u> is Bridgeview's reply.

11.    On March 27, 2015 Judge Simko entered a memorandum and order granting Bridgeview's Motion for Summary Judgment in the Artesian Case.  That memorandum and order is attached hereto as <u>Exhibit J</u>.  However, on April 24, 2015, BOA filed a Motion to Reconsider in Part the Court's March 27, 2015 Memorandum Opinion and Order in the Artesian Case.  That motion is attached hereto as <u>Exhibit K</u>.  Such motion remains pending before Judge Simko.  A briefing schedule was set on May 19, 2015 and the motion was continued on July 30, 2015 pending a resolution of the bankruptcy proceedings. A copy of the May 19, 2015 order is attached hereto as <u>Exhibit L</u>.  A copy of the July 30, 2015 order is attached hereto as <u>Exhibit M</u>.

12.    On December 8, 2015, following the confirmation of both Plans, Bridgeview filed Motions to Reinstate both the Potomac Case and the Artesian Case, which motions are scheduled for presentment on January 14, 2016.   Those motions are attached hereto as <u>Exhibits N and O.</u>

**<u>Bankruptcy Proceedings</u>**

13.    On May 13, 2013, Parkland Properties, LLC filed a Chapter 11 Voluntary Petition for Bankruptcy (the "Main Case").

14.    On June 18, 2013, Parkland II, LLC ("Parkland II") filed a Chapter 11 Voluntary Petition for Bankruptcy (the "Parkland II Case").

15.    On July 1, 2015, Parkland VI, LLC ("Parkland VI") filed a Chapter 11 Voluntary Petition for Bankruptcy (the "Parkland VI Case").

16.    On August 17, 2015, both Parkland II and Parkland VI filed their respective Plans.

17.    Section 3.0 of the Parkland II Plan, in pertinent part, states:

"Bank of America holds a secured claim in 1509 Artesian, Chicago, Illinois pursuant to a mortgage and note.  Bank of America's lien on the property is **wholly unsecured** due to Bridgeview Bank Group's **primary mortgage** being undersecured by the value of the property.  Pursuant to 11 U.S.C. § 507 (*sic*) Bank of America's claim of (*sic*) is **wholly unsecured and the lien will be stripped off [of] the property**.  Bank of America's claim, to the extend (*sic*) allowed, will be paid with other General Unsecured Creditors." *Parkland II Plan, §3.01* (emphasis added).

18.    Section 3.01 of the Parkland VI Plan, in pertinent part, states:

"Greentree Lending holds a third mortgage in Debtor's property found at 3217 West Potomac, Chicago, Illinois pursuant to a mortgage and note.  Greentree's lien on the property is **wholly unsecured** due to Bridgeview Bank Group's **primary mortgage** being undersecured by the value of the property.  Pursuant to 11 U.S.C. § 507 (*sic*) Chase Bank's (*sic*) claim of (*sic*) is **wholly unsecured and the lien will be stripped off the property**.  Greentree's claim, the extend (*sic*) allowed, will be paid with other General Unsecured Creditors." *Parkland VI Plan, §3.01* (emphasis added).

19.    On October 13, 2015 this Court entered an Order Confirming Debtors' Plan of Reorganization in each of the Parkland VI Case and Parkland II Cases (the "Confirmation Orders").

**Adversary Proceeding Relating to Artesian and Potomac Properties**

20.    On April 7, 2015, one of the Debtors, Parkland Properties, LLC ("Parkland Properties"), filed an adversary complaint ("Adversary Complaint") against Glenn Brettner and James Brettner (Adversary Proceeding No. 15-00238) (the "Adversary Proceeding").   Parkland Properties alleged that it transferred two properties (the Artesian Property and the Potomac Property) to Jim and Glenn Brettner, both insiders of Parkland Properties, and that such transfers were fraudulent and should be avoided.

21.    Exactly two weeks after the Adversary Proceeding was initiated, Parkland Properties filed a Motion for Entry of an Agreed Judgment Order.  A copy of the motion is

6

attached hereto as <u>Exhibit P</u>.  Per the certificate of service, and corresponding service list attached to the motion, neither BOA nor Ditech was served with the motion.

22.      On June 1, 2015, an Agreed Judgment Order Granting Judgment in Favor of Plaintiff and Against Defendants James Brettner and Glenn Brettner was entered (the "<u>Agreed Judgment Order</u>"). A copy of the June 1, 2015 Agreed Judgment Order is attached hereto as <u>Exhibit Q</u>.  Through the Agreed Judgment Order, judgment was entered against James and Glenn Brettner and "the Debtors"[5] were authorized to recover the Artesian Property and Potomac Property.

23.      The Agreed Judgment Order, in pertinent part, also states: "…the Potomac Property is hereby deemed transferred from James Brettner and Glenn Brettner to the Debtors <u>without affecting the liens of Bank of America and Bridgeview Bank Group</u>."  Agreed Judgment Order, ¶ 2 (emphasis added). It also states "…the Artesian Property is hereby deemed transferred from James Brettner and Glenn Brettner to the Debtors <u>without affecting the liens of Bank of America and Bridgeview Bank Group</u>."  Agreed Judgment Order, ¶ 3 (emphasis added).

## ARGUMENT

24.      Bankruptcy Rule 9024 incorporates Federal Rule of Civil Procedure 60(b), which governs motions to amend an order, such as the Confirmation Orders.  Motions under Rule 60(b) must be made "within a reasonable time", and if being made under 60(b)(1) - (3), no more than a year after the entry of the judgment. Fed. R. Civ. P. 60(c)

25.      The Confirmation Orders were entered on October 13, 2015.  Counsel for BOA and Ditech did not become aware of the Confirmation Orders until Bridgeview filed its Motions

---

[5] The Agreed Judgment Order does not indicate which of the Debtors the Artesian Property or Potomac Property was to be transferred to, but instead simply says they were to be transferred to "the Debtors".

to Reinstate both the Potomac Case and the Artesian Case on December 8, 2015.  As such, this Motion is timely brought within a "reasonable amount" of time and well within the one year period from entry of the Confirmation Orders.

26.     Relief is available here under a Rule 60(b)(4) as to the Parkland VI Plan because neither Green Tree nor Ditech was served with the Parkland VI Plan or corresponding disclosure statement.  Additionally, relief is also available as to both the Parkland II Plan and Parkland VI Plan under Rule 60(b)(3) by virtue of the misrepresentations and misconduct by Debtors' counsel and under Rule 60(b)(6) because other reasons exist which justify the relief sought.

27.     Relief under Rule 60(b) is "essentially equitable in nature and is to be administered upon equitable principles."  *C.K.S. Engineers, Inc. v. White Mountain Gypsum Co*., 726 F.2d 1202, 1208 (7th Cir. 1984).  In assessing whether relief is appropriate under Rule 60(b), the court must balance the competing policies of determining cases on their true merits against the desire to preserve res judicata and achieve finality in litigation.  Wright, Miller & Kane, Federal Practice and Procedure § 2857 (1995).

28.     The specific relief BOA and Ditech seek is the modification of the Confirmation Orders to (ii) remove any language declaring that Bridgeview's liens are superior to either of BOA or Ditech, (ii) remove any findings that either of BOA or Ditech are unsecured or undersecured and (iii) remove any determination that BOA or Ditech's liens are stripped.  BOA and Ditech are not seeking to revoke the orders confirming the plans and therefore are not proceeding under Section 1144 of the Bankruptcy Code.  Instead, they are merely seeking to modify the Confirmation Orders, which is allowable under Rule 60(b).  *In re Xpedio, Inc.,* 354 B.R. 210, 232 (Bankr. N.D. Ill. 2006)(recognizing a court's ability to modify a confirmation order under Rule 60(b), but refusing to do so under the facts of that case.) *See, also, In re 401 E.*

8

*89th St. Owners*, 223 B.R. 75 (Bankr. S.D.N.Y. 1998). *See, generally, In re BNW, Inc.,* 201 B.R.

838, 846 (Bankr. S.D. Ala. 1996) and *In re Poteet Construction Co. Inc.,* 122 B.R. 616 (Bankr.

S.D. Ga. 1990).

### Rule 60(b)(4) - Lack of Procedural Due Process
(As to Ditech and the Parkland VI Plan)

29.    Rule 60(b)(4) allows a court to provide relief from a final judgment, order or

proceeding if "the judgment is void". Fed. R. Civ. P. 60(b)(4)  "[I]f interested parties are not

informed of a proceeding that may adversely affect them, due process renders any judgments

entered at that proceeding void." *In re Papa's Mkt. Cafe*, 162 B.R. 519, 523 (Bankr. N.D. Ill.

1993).  Judgments that are void for lack of procedural due process may be challenged at any

time. *Philos Techs. V. Philos & D, Inc.*, 645 F.3d 851, 857 (7th Cir. 2011).  Although the term

"void" describes a result, rather than the conditions that render a judgment unenforceable, it

suffices to say that a void judgment is one so affected by a fundamental infirmity that the

infirmity may be raised even after the judgment becomes final. *United Student Aid Funds, Inc. v.

Espinosa*, 559 U.S. 260, 270 (2010).

30.    11 U.S.C.S. § 1128(a) requires that prior to a plan being confirmed, notice be

given to all parties in interest.  An elementary and fundamental requirement of due process in

any proceeding which is to be accorded finality is notice reasonably calculated, under all the

circumstances, to apprise interested parties of the pendency of the action and afford them an

opportunity to present their objections. *Reliable Electric Co. v. Olson Constr. Co*., 726 F.2d 620,

622 (10th Cir. 1984).  Additionally, even a creditor who has general knowledge of a debtor's

reorganization proceeding has no duty to inquire about further court action. *Cagan v. Southmark

Corp*., 1994 U.S. Dist. LEXIS 16247 (N.D. Ill. 1994). *See, also Reliable Electric Co. v. Olson*

9

*Constr. Co*., 726 F.2d at 622. The creditor has a "right to assume" that he will receive all of the notices required by statute before his claim is forever barred. *Id*.

31.     No certificate of service or affidavit of service was filed indicating the parties that were served with the Parkland VI Plan or corresponding disclosure statement.  However, upon request, counsel to the Debtors provided an unfiled Certificate of Service which allegedly indicates the parties that were served with the Plans and corresponding disclosure statements. That Certificate of Service is attached hereto as <u>Exhibit R</u>.  The Certificate of Service does not include any reference to Ditech or Green Tree, indicating that neither Ditech nor Green Tree were served with the Parkland VI Plan.

32.     Given that Ditech failed to receive notice regarding the confirmation hearing, as is required by 11 U.S.C. § 1128(a), the Court's Order confirming the Parkland VI Plan is void *ab initio* as matter of law.  Notably, in *Reliable Electric Co.*, the court determined that because the creditor did not receive notice of the confirmation hearing, which violated the creditor's Fifth Amendment rights, the creditor "cannot be bound to the Plan and, thus, [the creditor's claim was] not dischargeable."  *Id.* at 623.  As Ditech was never served with the Parkland VI Plan, that judgment is void and Ditech should be afforded the relief it seeks herein as to the Parkland VI Plan.

## Rule 60(b)(3) - Fraud, Misrepresentation or Misconduct by an Opposing Party

33.     In order to obtain relief under Rule 60(b)(3), the movant must show that: "(1) the party maintained a meritorious claim at trial; and (2) because of the fraud, misrepresentation or misconduct of the adverse party; (3) the party was prevented from fully and fairly presenting its case at trial." *Lonsdorf v. Seefeldt*, 47 F.3d 893, 897 (7th Cir. 1995).

34.     Each of BOA and Ditech maintains a meritorious claim. The Plans acknowledge

that BOA and Ditech are the holders of valid mortgages against the Debtors' property and thus

secured creditors.  *Parkland II Plan, §3.01, Parkland VI Plan, §3.01.*  And, for all the reasons

set forth by each of BOA and Ditech in the relevant state court pleadings attached hereto as

Exhibits C through E and G through I, including BOA's motion to reconsider filed in the

Artesian Case, they each have meritorious claims that their mortgages are senior in priority to

the judgment liens of Bridgeview.  At a minimum, each of BOA and Ditech have meritorious

claims that the Plans should have not been confirmed with the questionable language included

without some evidence being presented as to priority of the respective parties' liens or as to the

value of the subject real property.  Additionally, each of BOA and Ditech was prevented from

fully and fairly presenting their objections by virtue of the misrepresentations and misconduct

of the Debtors and their counsel.

35.     It is important to note at the outset that "[Rule 60(b)(3)] applies to both intentional

and unintentional misrepresentations." *In re Aztec Supply Corp.*, 399 B.R. 480, 491 (Bankr.

N.D. Ill. 2009) (citing *Lonsdorf v. Seefeldt*, 47 F.3d at 897). Therefore, it is irrelevant whether

the Debtors intended to mislead this Court or not. *Id.*  Additionally, "a determination of whether

the alleged misrepresentation altered the result of the case is unnecessary because Rule 60(b)(3)

protects the fairness of the proceedings, not necessarily the correctness of the verdict." *Lonsdorf

v. Seefeldt*, 47 F.3d at 897.

36.     Whether intentional or not, the Debtors misled this Court as to the lien priority

issue by presenting the issue as being resolved (or undisputed), when in fact it was anything but.

Notwithstanding the fact that the State Court Proceedings were still being litigated, and in fact

stayed because of these bankruptcy proceedings, the Debtors' counsel included language in the

11

Plans which states "…due to Bridgeview Bank Group's **primary** mortgage…" *Parkland II Plan, §3.01, Parkland VI Plan, §3.01* (emphasis added).  That language, without any reference to the ongoing state court lien priority dispute between the parties, makes it seem as if Bridgeview has an undisputed senior mortgage.  To the contrary, at the time the Plans were filed (with that language in each of them) no determination had been made in the Potomac Case as to the priority of Bridgeview's lien versus that of Ditech's mortgage and BOA had filed a motion to reconsider the court's ruling the Artesian Case.  Yet, the Debtors presented the issue to this Court as being certain.

37.    Neither the Plans nor their corresponding disclosure statements include any discussion of the State Court Proceedings, the fully briefed motions for summary judgment relating to the lien priority issue, or the fact that the lien priority issue was being considered by two different state court judges but had yet been determined.  In fact, counsel to the Debtors seemingly never advised this Court that there were ongoing state court proceedings wherein BOA, Ditech and Bridgeview were litigating the lien priority issue.  Instead, presumably after realizing that neither BOA or Ditech would ever see the Plans, the Debtors simply slipped the questionable language into the sixth versions of the Plans and proceeded to seek confirmation of the Plans without any explanation, discussion or evidence being presented regarding the lien priority issue.  Attached hereto as Exhibit S is a copy of the transcript from the October 13, 2015 confirmation hearing.  None of BOA or Ditech's liens, the State Court Proceedings or the lien priority dispute were addressed at the plan confirmation hearing.  Instead, counsel for the Debtors simply stated that "[Mr. Brettner] believes that the classes of claims are properly defined and each class's treatment is specified."  Transcript of 10/13/2015 Hearing, 8-10. At best, this was an inadvertent misrepresentation to this Court, and likely fraudulent conduct.

12

38.    It's important to note that the language was not included in any of the previous five iterations of the Plans, presumably because the Debtors understood that the lien priority issue was still unresolved.  Both of the initial plans in the Parkland II and Parkland VI cases state that "Bank of America holds a secured claim in Debtor's property . . . pursuant to a mortgage and note.  The Debtor will pay Bank of America pursuant to the terms of the mortgage and note."  *Original Parkland II Plan, §3.01, Original Parkland VI Plan, §3.01.* The original Parkland II Plan is attached hereto as Exhibit T, and the original Parkland VI Plan is attached hereto as Exhibit U, The second and third iterations of the Plans state the same. Those plans are attached hereto as Exhibit V and Exhibit W.  The fourth and fifth iterations of the Plans merely say "[omitted]" under Section 3.01 and include no treatment of either BOA or Ditech's liens.  Those plans are attached hereto as Exhibit X and Exhibit Y.  It is not until the sixth iteration of the Plans that the language suddenly appears, without explanation, discussion or evidence.

39.    Considering the inclusion of the new language wiping out BOA and Ditech's interests in the Debtors' property, the fact that the Debtors never served either Green Tree or Ditech with any pleadings, including the Plans, disclosure statements or ballots is especially troublesome.  Additionally, the only service the Debtors ever made on BOA were to a PO Box in Delaware. *Id.*  This fact is especially egregious considering the fact that counsel to the Debtors was aware BOA was being represented in the state court proceedings and in fact had several communications with BOA's state court counsel regarding these bankruptcy cases. In other words, the Debtors' counsel knew that BOA had representation, but instead chose to send notice of the Plans to a PO Box in Delaware, clearly service not "reasonably calculated" to apprise BOA of the Parkland II Plan, nor the hearing to confirm it.

13

40.     The manner in which the Adversary Proceeding was resolved also speaks to the way in which these cases have been handled by the Debtors and Bridgeview.  The Adversary Complaint acknowledges BOA and Ditech's mortgages (Adversary Complaint, ¶¶ 13, 14).  However, neither BOA nor Ditech was served with the Motion for Entry of an Agreed Judgment Order.[6]   Both the Debtors and Bridgeview were aware of BOA and Ditech's mortgages, yet both sought the entry of the Agreed Judgment Order which transferred the Artesian Property and Potomac Property away from Glenn and James Brettner, the mortgagors under the BOA and Ditech's mortgages.  The Agreed Judgment Order does contain language which seems directed towards preserving the interests of BOA (and Bridgeview) in the Potomac Property and Artesian Property[7], but it's unclear what the real effect of this language is or how the underlying properties could be transferred without affecting the rights of BOA and Ditech.  Regardless, the Agreed Judgment Order should not have been presented to this Court without first being served on BOA and Ditech.  The fact that the Debtors and Bridgeview presented an agreed order potentially affecting the rights of BOA and Ditech in the Potomac Property and Artesian Property without serving BOA or Ditech is another example of the Debtors' misconduct throughout these cases, which misconduct ultimately resulted in the entry of the Plans with the objectionable language included.

41.     When all of the above facts are considered, it becomes clear that the Debtors (and Bridgeview) simply took advantage of the fact that neither BOA nor Ditech had filed appearances in these cases and had not been actively involved.  Seeing an opportunity, they

---

[6] BOA and Ditech reserve the right to file a motion seeking relief from the entry of the Agreed Judgment Order based on this lack of service.

[7] That the properties are to be transferred "without affecting the liens of Bank of America and Bridgeview Bank Group."

14

snuck language into the sixth version of their reorganization plans, failed to serve Ditech with

the plans, served BOA at an address they should have known was unlikely to reach BOA's

existing counsel and then sought confirmation of those plans without ever disclosing to this

Court that the State Court Proceedings were pending and that the issue of lien priority amongst

the parties was being actively litigated.  In doing so, they misled this Court and obtained an

unwarranted advantage over BOA and Ditech in the State Court Proceedings.  This misconduct

should not be rewarded.  Instead, pursuant to Rule 60(b)(3), this Court should provide BOA and

Ditech relief from the Confirmation Orders.

### Rule 60(b)(6) - Other Reason Justifying Relief

42.     Rule 60(b)(6) allows a court to relieve a party from a final judgment, order, or

proceeding for "any other reason that justifies relief" and provides the court with a vehicle to

"vacate its own unappealed order if entered in error."  *In re Aztec Supply Corp.*, 399 B.R. 480,

489 (Bankr. N.D. Ill. 2009). Additionally, although Rule 60(b)(6) does not include particular

factors justifying relief thereunder, "it provides courts with authority adequate to enable them to

vacate judgments whenever such action is appropriate to accomplish justice." *Id.*  Rule 60(b)

"should be liberally applied to accomplish justice." *Andrews v. Heinold Commodities, Inc.*, 771

F.2d 184, 188 (7th Cir. 1985).  Lastly, BOA and Ditech acknowledge that although motions

under Rule 60(b) are addressed to the sound discretion of the district court, they are "generally

granted only upon a showing of exceptional circumstances."  *In re Aztec Supply Corp.*, 399 B.R.

at 489.

43.     However, courts have found "exceptional circumstances" to exist in situations like

this one.  "When a party timely presents a previously undisclosed fact so central to the litigation

that it shows the initial judgment to have been manifestly unjust, reconsideration under rule

60(b)(6) is proper even though the original failure to present that information was inexcusable." *See Gray v. Estelle*, 574 F.2d 209, 214-15 (5th Cir. 1978); *Floyd v. City of N.Y.*, 813 F. Supp. 2d 457, 470 (S.D.N.Y. 2011).  In this instance, the fact that there was an ongoing lien priority dispute in the State Court Proceedings was (presumably) not previously disclosed to this Court. And, if this fact would have been disclosed, this Court would presumably have required some discussion, evidence or argument as to why the inclusion of language in the Plans finding that Bridgeview's judgments liens were "primary" was proper.  This Court would have also likely required the Debtors to file a certificate of service showing that BOA and Ditech were both served with the Plans.  Instead, Bridgeview and the Debtors have succeeded in circumventing the State Court Proceedings and resolving the lien priority issue without any discussion, argument or evidence, a manifestly unjust result.

44.     Lastly, a few additional exceptional circumstances (which do not fit neatly into any of Rule 60(b)(1-5)), support the relief requested herein by BOA and Ditech - (i) the reliance on 11 U.S.C. 507 in the Plans for the "lien stripping" when Section 507 has nothing to do with "lien stripping", and (ii) the improper reference to Chase Bank (and not Ditech or Greentree) in Section 3.01 of the Parkland VI Plan.

45.     Section 3.01 of the Plans states that BOA and Ditech's liens will be "stripped" pursuant to "11 U.S.C. § 507".  *Parkland II Plan, §3.01, Parkland VI Plan, §3.01*.  As this Court is well aware, Section 507 of the Bankruptcy Code has nothing to do with lien stripping. Presumably, Debtors' counsel intended to refer to Section 506 of the Bankruptcy Code.  But, it did not.  As such, each of the Plans contains language that is unenforceable - liens cannot be stripped pursuant to Section 507.

46.     Similarly, although perhaps more fatal, Section 3.01 of the Parkland VI Plan states that Chase Bank's claim is "wholly unsecured" and therefore stripped. *Parkland VI Plan, §3.01*.  Once again, it's possible that the Debtors' counsel intended to reference Ditech's lien. But, again, it did not.  As such, the Parkland VI Plan currently only strips the liens of Chase Bank. There is no language holding that Ditech's lien is stripped.

### Equitable Considerations

47.     Equitable considerations strongly favor granting BOA and Ditech the relief requested herein.  BOA and Ditech are not seeking an adjudication of the lien priority issue now. Nor are they seeking to obtain an unfair advantage in the State Court Proceedings.  Instead, they are merely seeking the removal of language from the Plans that potentially gives Bridgeview an unfair advantage in the State Court Proceedings and returns the parties to the status quo. Bridgeview will not be prejudiced at all by the relief requested herein, they will still be able to present their arguments in the State Court Proceedings.  On the other hand, there are now orders entered by this Court which contain language Bridgeview can use to support its argument that BOA and Ditech's liens are junior to theirs.  That language, however, was obtained without discussion, argument or the provision of any evidence to this Court.  And, that language was obtained based on a misrepresentation to this Court that there was no lien priority dispute. Additionally, the language was obtained without any service on Ditech and with possibly the barest allowable service on BOA.  BOA and Ditech's interests in the Debtors' property will be wiped out if the relief requested herein is not granted.   This Court should not allow such a disastrous result based on misrepresentations and misconduct of the Debtors' counsel.

17

## **CONCLUSION**

48.     The Debtors failed to serve Ditech with the Parkland VI Plan.  Such failure renders the order confirming the Parkland VI Plan void and therefore subject to Rule 60(b)(4), allowing Ditech the relief it seeks herein.

49.     Additionally, whether intentionally or not, the Debtors made material misrepresentations to this Court in Section 3.01 of the Plans.   The Plans indicate that Bridgeview's liens are senior to those of BOA and Ditech, failing to indicate that the parties had an ongoing lien priority dispute in state court.  This misrepresentation allowed the Debtors to obtain confirmation of Plans containing language potentially harmful to BOA without any discussion, argument or evidence being presented to support the language - the Court had no reason to inquire about any support for the Debtors' assertions (or to even challenge the Debtors service of the Plans on BOA and Ditech).

50.     Lastly, "other reasons" exist under Rule 60(b)(6) because there is now a previously undisclosed fact (the ongoing state court litigation) which makes the confirmation of the Plans, with the objectionable language included, manifestly unjust.   Additionally, the language in Section 3.01 of the Plans incorrectly references Section 507 of the Bankruptcy Code as the bases for including lien stripping language and references Chase Bank, not Ditech in the Parkland VI Plan.

51.     For the foregoing reasons, BOA and Ditech respectfully request that this Court enter an order amending the Plans to remove any language describing Bridgeview's mortgage as "primary" and removing any language finding that BOA or Ditech are undersecured or unsecured and thus their liens are stripped.

18

Dated: January 21, 2016

BANK OF AMERICA, N.A.
DITECH FINANCIAL, LLC,
f/k/a Green Tree Servicing, LLC


By:   /s/   Bryan E. Minier
Bryan E. Minier (ARDC# 6275534)
Pedersen & Houpt. P.C.
161 N. Clark, Suite 2700
Chicago, Illinois 60601
Telephone: (312) 261-2265
Facsimile:  (312) 261-1265
Email: bminier@pedersenhoupt.com

19