**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | |
| Parkland Properties, LLC | ) | BK NO.:  13-22702 |
| | ) | |
| | ) | Jointly Administered |
| | ) | |
| | ) | Chapter 11 |
| | ) | |
| Debtor(s) | ) | Honorable Donald R. Cassling |
| | ) | |

## AFFIDAVIT OF BANK OF AMERICA N.A.

I, Ryan Dansby, being first sworn on oath depose and state that if called upon to testify in the above entitled cause, I would testify as follows:

1.     My name is Ryan Dansby and I am an AVP; Operations Team Manager at Bank of America National Association ("Bank of America N.A.")

2.     I have personal knowledge of the facts and statements stated in this affidavit, and if called as a witness I could competently testify that all such statements are true.

3.     At no time was Bank of America N.A. directly served with any documents related to the above-captioned case, including but not limited to of the following documents in the above-captioned case:

A.     August 18, 2015 Order Setting Hearing On the Adequacy of the Disclosure Statement and Plan Confirmation (entered August 19, 2015), attached hereto as Exhibit A;

B.     August 17, 2015 Sixth Modified Plan of Reorganization for Parkland II, attached hereto as Exhibit B.

C.     August 17, 2015 Sixth Modified Plan of Reorganization for Parkland VI, attached hereto as Exhibit C.

D.     August 17, 2015 Sixth Amended Disclosure Statement for Parkland II, attached hereto as Exhibit D.

E.   August 17, 2015 Sixth Amended Disclosure Statement for Parkland VI, attached hereto as Exhibit E.

F.   April 21, 2015 Motion for Entry of an Agreed Judgment Order filed by Parkland Properties, LLC in the Adversary Proceeding (15-00238), attached hereto as Exhibit F.

4.   Bank of America N.A. is headquartered and has its principal office at 100 North Tyron St., Charlotte, NC 28202.

5.   The following address is not a legitimate address to serve Bank of America N.A.: P.O. Box 15168, Wilmington, Delaware, 19850, which address is listed on the Certificate of Service attached hereto as Exhibit G.   Furthermore, this address is not used by Bank of America N.A. for any purpose.

6.   I declare under penalty of perjury that the foregoing is true and correct.

FURTHER AFFIANT SAYETH NOT.

**Bank of America N.A.**

Ryan Dansby
AVP; Operations Team Manager
Date: _7-19-16_

STATE OF TEXAS

COUNTY OF DALLAS

SUBSCRIBED and SWORN to before me on this _19_ day of _July_ , 20_16_ , by Ryan Dansby, known to me (□ or satisfactorily proven to me through production of Personal Knowledge as identification) to be the person(s) who appeared before me.

MICHAEL RINEY
Notary Public
STATE OF TEXAS
My Comm. Exp. 05-20-19

Michael Riney

Notary Public, State of Texas

Commission No.: 13023469-1

My Commission Expires: 05/20/2019

Page **2** of **2**

# EXHIBIT A

STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

In re:                                    )      Chapter 11
                                          )
Parkland Properties, LLC, *et al.* [1]    )      Case No.: 13-22702
                                          )      Jointly Administered
                                          )
        Debtors.                          )      Judge Donald R. Cassling

### ORDER SETTING HEARING ON THE ADEQUACY OF THE DISCLOSURE STATEMENT AND *Plan Confirmation*

The Debtors and Debtors in Possession having requested that this Honorable Court

set a date for a hearing on the adequacy of the Amended Disclosure Statements and

confirmation of the Modified Plans of Reorganization, and the Court being advised in the

premises,

IT IS HEREBY ORDERED:

1. The hearing to consider the adequacy of the Amended Disclosure Statements and

   Confirmation of the Plans of Reorganization for each of the jointly administered

   cases is set for  *September 29, 2015*  in Courtroom 619. *at 10:30 a.m.*

2. Debtor's counsel shall serve a notice of hearing to all creditors in each of the jointly

   administered cases and equity security holders on or before <u>August 21, 2015</u>.

3. Debtor's Counsel shall serve copies of the Amended Disclosure Statements and the

   Modified Plans, upon all creditors in each of the jointly administered cases and

   equity security holders, on or before <u>August 21, 2015</u>.

---

[1] The "Debtors" include: Parkland Properties, LLC (Case No. 13-22702); Parkland II LLC
("Case No. 13-25121); Parkland III, LLC (Case No. 13-25125); Parkland IV, LLC (Case No.
13-26018); and Parkland VI, LLC (Case No. 13-26811).

4. Debtor's Counsel shall serve an appropriate ballot for accepting or rejecting the Modified Plan upon all creditors in each of the jointly administered cases and the equity security holders on or before <u>August 21, 2015.</u>

5. <u>September 22, 2015</u> is fixed as the last day to file written objections to the adequacy of the Disclosure Statement and/or the confirmation of the Plan in each of the jointly administered cases.

6. <u>September 22, 2015</u> is fixed as the last day for those creditors entitled to vote upon the Modified Plans in each of the jointly administered cases to file, by written ballot, written acceptances or rejections of the appropriate Modified Plan with the Clerk of the United States Bankruptcy Court.

7. Debtor's counsel shall file a Report of Balloting for each of the jointly administered cases on the Modified Plans on or before <u>September 25, 2015</u>.

Dated:

8-18-15

BY THE COURT

<u>Donald R. Cassling</u>
The Honorable Donald R. Cassling
U.S. Bankruptcy Judge

This document was prepared by
Michael V. Ohlman #6294512
308 West Erie, Suite 300
Chicago, Illinois 60606

# EXHIBIT B

## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| Parkland Properties, LLC, *et al.* [1] | ) | Case No.: 13-22702 |
| | ) | Jointly Administered |
| | ) | |
| Debtors. | ) | Judge Donald R. Cassling |

### DEBTOR'S SIXTH MODIFIED PLAN OF REORGANIZATION

This Sixth Modified Plan of Reorganization ("Plan") is filed by Debtor and Debtor

in Possession Parkland II, LLC ("Debtor"), pursuant to Title 11 of the United States Code,

Section 1121(a), on August 17, 2015. Debtor intends to continue to operate its business

and use income generated through the businesses to pay the allowed claims of its

creditors over the life of the Plan to the extent as set forth herein.

### CONTENTS

| | | |
|---|---|---|
| ARTICLE I | - | Definitions |
| ARTICLE II | - | Construction |
| ARTICLE III | - | Classification and Treatment of Claims |
| ARTICLE IV | - | Stripping of Junior Mortgage Lien |
| ARTICLE V | - | Allowance and Disallowance of Claims |
| ARTICLE VI | - | Implementation of the Plan |
| ARTICLE VII | - | Discharge and Effects of Confirmation and Performance |
| ARTICLE VIII | - | Transfers of Claims |
| ARTICLE IX | - | Executory Contracts and Unexpired Leases |
| ARTICLE X | - | Retention, Enforcement, Settlement, or Adjustment of Claims |
| ARTICLE XI | - | Modification of the Plan |
| ARTICLE XII | - | Jurisdiction of the Court |
| ARTICLE XIII | - | General Provisions |

### ARTICLE I

### DEFINITIONS

1.00   The following terms, when used in the Plan, shall, unless the context

otherwise requires, have the meanings specified below:

---

[1] The "Debtors" include: Parkland Properties, LLC (Case No. 13-22702); Parkland II LLC ("Case No. 13-25121); Parkland III, LLC (Case No. 13-25125); Parkland IV, LLC (Case No. 13-26018); and Parkland VI, LLC (Case No. 13-26811).

1.01    ADMINISTRATIVE CLAIM: An administrative expense which is entitled or purportedly is entitled to priority pursuant to § 507(a)(1) of the Code, including any actual and necessary expenses of preserving the estate and any actual and necessary expenses of operating Debtor' business from and after the commencement of these reorganization proceedings, for which application for allowance has been filed prior to the Effective Date or such other date or dates as the Court determines.

1.02    ALLOWANCE DATE: The date an order of Court allowing a Claim in this chapter 11 case has become final and non-appealable and no appeal therefrom is pending.

1.03    ALLOWED ADMINISTRATIVE CLAIM: An Administrative Claim as the same is allowed, approved, and ordered paid by the Court.

1.04    ALLOWED CLAIM: A claim, proof, or application for which is filed within the time fixed by the Court or, if the claim arose out of the rejection of an executory contract or unexpired lease, within the time fixed by the Court or as provided in Article IX of the Plan; or (ii) that has appeared, or hereafter appears, in the final schedules filed by Debtor under § 521(a)(1) of the Code, except a claim that is disputed, contingent, or unliquidated as to amount and, in each case, to which no objection to the allowance thereof has been filed within the applicable period fixed by the Court, or as to which the order of Court allowing such claim has become final and non-appealable and no appeal therefore is pending. Allowed Claim includes Allowed Secured Claims and Allowed Priority Tax Claims. Allowed Claim shall not include any Allowed Administrative Claim. Claims which are identified in the schedules as belonging to one creditor, but are filed by a different creditor, shall be allowed and paid according to the proof claim.

1.05    ALLOWED SECURED CLAIM: An Allowed Claim to the extent that it is determined by the Court to be secured by a valid and subsisting lien, security interest, or other encumbrance (other than any liens, security interests or other encumbrances granted under the Plan) on property in which Debtor have an interest which is not void or voided under applicable state or federal law, including the Code, or that is subjected to setoff under § 553 of the Code.

1.06    CASE: The chapter 11 case of Parkland II, LLC filed pursuant to the Bankruptcy Code by Debtor on June 19, 2013.

1.07    CLAIMS: All obligations and liabilities of Debtor of every kind and nature incurred prior to the Confirmation Date, including without limitation, liquidated and unliquidated claims, disputed and undisputed claims, contingent and unconditional claims, allowed and disallowed claims, Secured Claims, and Priority Tax Claims.

1.08    CODE: Title 11 of the United States Code 11 U.S.C. §§ 101 *et seq.* and amendments thereto.

1.09    COMMITTEE: The creditor's committee as now or hereafter constituted which was or may be appointed in this case.

1.10    CONFIRMATION DATE: The date of the entry by the Court of an order confirming the Plan.

1.11    COURT: The United States Bankruptcy Court, a unit of the United States District Court, for the Northern District of Illinois, Eastern Division (Bankruptcy Court), including the United States Bankruptcy Judge presiding in this case or, as appropriate or

required, the United States District Court for said District and Division (District Court), and any Court having competent jurisdiction to hear appeals therefrom.

1.12   CREDITORS: All persons and entities holding or purporting to hold claims. Creditors shall include Secured Creditors.

1.13   DEBTOR: Parkland II, LLC, an Illinois limited liability company.

1.14   EFFECTIVE DATE: The Effective Date of this Plan is 14 days following the date of the entry of the order confirming the Plan. But, if a stay of the confirmation order is in effect on that date, the Effective Date will be the first business day after the date on which no stay of the confirmation order is in effect, provided that the confirmation order has not been vacated.

1.15   EQUITY INTEREST: Debtor' equitable interest in any real or personal property as of the Confirmation Date.

1.16   INSIDER:  Any director of the Debtor, officer of the Debtor, person in control of the Debtor, partnership in which the Debtor is a general partner, general partner of the Debtor or relative of a general partner, director, officer, or person in control of the Debtor.

1.17   INSIDER'S CLAIM: Every Claim of every Insider except Claims found upon a right of subrogation, exoneration, or contribution for payment by an Insider of all or part of an Allowed Claim of a Creditor other than an Insider.

1.18   INTEREST: Unless otherwise expressly stated in the Plan, interest shall mean simple interest at the specified annual rate. Where daily calculations are applicable or appropriate, the per diem rate shall be calculated on the basis of the number of days in the actual calendar year or month as the case may be.

1.19   PLAN: Debtor' plan of reorganization as set forth herein or as it may be modified or amended.

1.20   PRIORITY CLAIM: An Allowed Claim other than an Allowed Administrative Claim or an Allowed Priority Tax Claim to the extent that the Court determines that such claim is entitled to priority treatment under § 507 of the Code.

1.21   PRIORITY TAX CLAIM: A Claim entitled to or purportedly entitled to priority pursuant to § 507(a)(8) of the Code.

1.22   SECURED CLAIM: A Claim secured or purporting to be secured in whole or in part by a lien, security interest, or other encumbrance (other than any liens, security interest or other encumbrances granted under the Plan) on property in which Debtor have an interest which is not void or voidable under applicable state or federal law, including the Code, or that is subject to setoff under § 553 of the Code.

1.23   SECURED CREDITOR: A Creditor having an Allowed Secured Claim.

## ARTICLE II

## CONSTRUCTION

2.00   Where not inconsistent or in conflict with the provisions of the Plan, the words and phrases used herein shall have the meanings ascribed thereto in the Code

and in the Federal Rules of Bankruptcy Procedure.

    2.01   The table of contents, Articles, and Section captions used in the Plan are for convenience only, and shall not affect the construction of the Plan.

    2.02   In the event of ambiguity or uncertainty, the Plan shall be liberally construed in the light of the circumstances then present to best effectuate the policies and rehabilitative purposes of the Bankruptcy Code, particularly chapter 11 thereof.

## ARTICLE III

### CLASSIFICATION AND TREATMENT OF CLAIMS

    3.00   **UNCLASSIFIED CLAIMS**: Unclassified Claims shall be Allowed Administrative Claims, including fees owing to the Debtor' bankruptcy counsel, and statutory fees owing to the United States Trustee, and any priority tax claim of the Department of Treasury – Internal Revenue Service. Under Bankruptcy Code 1123(a)(1), these claims are not classified and are not entitled to vote on confirmation of the Plan. These claims shall be treated as follows:

    A. Professional Fees. Professional fees may only be paid upon application to and approval by the Bankruptcy Court. Debtor will pay professional fees in full in cash on the later of (i) the Effective Date or (ii) approval by the Court, except to the extent that a holder of such claim agrees to other terms. Once the Plan is confirmed and the Bankruptcy Court approves Debtor's Counsel's fees, the Debtor shall pay Michael V. Ohlman, P.C. in full or pursuant to an agreement between the parties.

    B. United States Trustee fees. The statutory fees owing to the United States Trustee shall be paid in full on the Effective Date, except to the extent that the U.S. Trustee agrees to other treatment.

    C. Tax Claims. There are currently no priority tax claims, but if one does arise, the Debtor will pay the allowed priority claim of the IRS in full, in accordance with §511 of the Bankruptcy Code.  This payment will be made in one lump distribution on the anniversary of the Effective Date prior to distributions to general unsecured creditors.

    3.01   **CLASS I CLAIM**:      Bank of America holds a secured claim in 1509 Artesian, Chicago, Illinois pursuant to a mortgage and note.  Bank of Ameica's lien on the property is wholly unsecured due to Bridgeview Bank Group's primary mortgage being undersecured by the value of the property.  Pursuant to 11 U.S.C. § 507 Bank of America's claim of is wholly unsecured and the lien will be stripped off the property.  Bank of America's Claim, to the extend allowed, will be paid with other General Unsecured Creditors. Funds to pay the claim will derive from net proceeds of the rental income received on the properties.

    3.02   **CLASS II CLAIM**:      Bank of America holds a secured claim in Debtor's property found at 3218 West Crystal, Chicago, Illinois pursuant to a mortgage and note.  The Debtor will continue to pay Bank of America pursuant to the terms of the mortgage and note.  Funds to pay the claim will derive from net proceeds of the rental income received.

3.03   **CLASS III CLAIM:**   MRR Parkland Loans, LLC holds a second mortgage in Debtor's property found at 3214 West Crystal, Chicago, Illinois pursuant to a mortgage and note.  On the date of filing Liberty Bank held a first lien against the property in an amount that fully encumbered the subject property.  As such there is no value for which MRR Parkland Loans, LLC's lien on the 3214 West Crystal property can attach, and is therefore wholly unsecured per § 506 of the Code.  Pursuant to an agreement Class II Claimant, MRR Parkland Loans, LLC, will receive a total distribution of $50,000.00 (7.2%) for its $686,329.00 claim and it shall release the second mortgage on the 3214 West Crystal property.

3.04   **CLASS IV CLAIM:**      CFS Allocation Solutions, successor in interest to Banco Popular North America ("**CFS**"), holds an allowed secured claim on the Debtor's property located at 3237 West Thomas, Chicago, Illinois ("**Property**"), pursuant to a first and senior recorded mortgage. The claim is cross-collateralized with properties located at 1239 South Avers and 306 South Hamlin, Chicago, Illinois, which are not part of this Estate. CFS filed proof of claim No. 1-1 in the amount of $690,952.00 ("**Claim**"). The Debtor will pay CFS's Claim as follows:

CFS will enter into a forbearance agreement with the Debtor ("**Forbearance 1A**"). Payment of Forbearance 1A will be secured by a first and senior mortgage in the amount of $275,000 on the Property. Forbearance 1A will be paid monthly at 5% interest rate (payment of $1,467.26) pursuant to a 30-year amortization schedule with a balloon payment of all amounts due in 84 months. In addition, Debtor will make monthly payments to CFS in the amount equal to 1/12 the annual real estate taxes for the Property. The balance of CFS's Class IV claim ($170,952.24) will be paid pursuant to "**Note 2**". Note 2 will be paid monthly, at 2.5% interest, 20-year amortization schedule and an 84 month balloon (payment of $_____). Provided Forbearance 1A, Forbearance 1B and Forbearance 1C are paid in accordance with their respective terms, Note 2 will be satisfied upon full payment of Forbearance 1A, Forbearance 1B and Forbearance 1C. Upon sale of the Property if prior to the maturity date, CFS shall be entitled to the unpaid balance from Forbearance 1A plus 35% of the net sale proceeds from the Property.

If the Debtor defaults under its Plan obligations to CFS, CFS shall be entitled to exercise its remedies against the Property and repayment of its Claim in the full amount, less any payments made to CFS post confirmation of the Plan.

3.05   **CLASS V CLAIM:**      Bridgeview Bank Group holds a secured claim in Debtor's property found at 1152 North Kedzie, Chicago, On the Effective Date of the Parkland II Plan the Debtors shall pay Bridgeview $52,067.64 in full satisfaction of the Class V Claim.  Class V is not impaired.

3.06   **CLASS VI CLAIM:**      Liberty Bank holds a secured claim in Debtor's property found at 932 North Richmond, Chicago, Illinois pursuant to a mortgage and note.  The Debtor will pay Liberty Bank pursuant to the terms of the mortgage and note.  The funds to pay Liberty Bank's claim will derive from rental incomes.

3.07   **CLASS VII CLAIM:**      Bridgeview Bank Group holds a secured claim in Debtor's property found 1508 Artesian, Chicago, Illinois pursuant to a judgment lien in the amount of $690,000.  This is the primary lien on the property per the Cook County Recorder of Deeds. The Debtor and Bridgeview Bank have agreed to modify the automatic stay with respect to this property so that Bridgeview may continue its foreclosure action and be declared the primary lienholder.  Once a determination is made in the state court

the Debtor and Bridgeview Bank Group will enter into a mortgage by which the Debtor
will pay Bridgeview Bank Group based on a value of $330,000.

3.08 **CLASS VIII CLAIMS:**    The Class VIII Claims are all allowed general
unsecured claims, without priority. Class VII is impaired and is entitled to vote on the
Plan. This class also includes the claims that were filed as secured claims, but will be
treated as Class VII general unsecured claims by the Plan. Each member of Class VIII
shall receive 11.16% of its claim, without interest. The Debtor shall make quarterly pro-
rata distributions to members of Class VII beginning in month 12 of the Plan through the
60th month of the Plan.

3.09 **CLASS IX CLAIM:**    The holder of Class IX equity interests will receive no
disbursements, James Brettner and Glenn Brettner will, however, retain their equity
interest.

## ARTICLE IV

### STRIPPING OF MORTAGE LIENS PURSUANT TO 11 U.S.C. § 506

4.01    MRR Parkland Properties, LLC's second mortgage on the property found at
3218 West Crystal, Chicago, Illinois is wholly unsecured due to the first lienholder, First
American Bank, being undersecured. Pursuant to 11 U.S.C. § 507 MRR Parkland
Properties, LLC's claim of $686,329.00 is wholly unsecured and the lien will be stripped
from the property.

4.02    Bank of America holds a second mortgage in Debtor's property found at
1509 Artesian, Chicago, Illinois pursuant to a mortgage and note. Bank of America's
lien on the property is wholly unsecured because it is the second recorded lien against
the property pursuant to the Cook County Recorder of Deeds' records. Pursuant to § 507
Bank of America's lien is wholly unsecured and the lien will be stripped off of the
property. To the extent allowed, Bank of America's Claim will be paid with other
General Unsecured Creditors and funds to pay the claim will derive from net proceeds of
the rental income received on the property.

## ARTICLE V

### ALLOWANCE AND DISALLOWANCE OF CLAIMS

5.00    Disputed Claims: A disputed claim is a claim that has not been allowed in a
specific amount or disallowed by a final non-appealable order, and as to which either: (i)
a proof of claim has been filed or deemed filed and Debtor or another party in interest has
filed an objection; or (ii) no proof of claim has been filed and the Debtor has scheduled
such claim as disputed, contingent, or unliquidated, or has objected to the claim for any
other reason.

5.01    Delay of Distribution on a Disputed Claim: No distribution will be
made on account of a disputed claim unless such claim is allowed by a final non-
appealable order.

5.02    Settlement of Disputed Claims: Debtor will have the power and
authority to settle and compromise a disputed claim prior to confirmation with Court
approval and compliance with Rule 9019 of the Federal Rules of Bankruptcy

Procedure.

## ARTICLE VI

## IMPLEMENTATION OF THE PLAN

6.00    After confirmation, Debtor will continue to possess its assets and to manage its affairs. Debtor shall have the right to borrow money, to sell any ownership interest in their real property, to negotiate and enter into contracts, to incur new indebtedness, to enter into partnerships and joint ventures, to hire and fire professionals, to settle claims, and to pay post- petition creditors on a current basis without further order of court.

6.01    Funding: Pursuant to 11 U.S.C. § 1123, payments required under the Plan shall be funded from the revenues generated through rental revenues, the sale of property in the ordinary course of business, and from any cash holdings of the debtor, available on the Effective Date.

6.02    Surrender of Assets: Any assets may be surrendered to the holder of the Allowed Secured Claims secured by such assets in full satisfaction of such claim as set forth in this Plan or to the extent the parties otherwise agree, or if no agreement is reached, after notice and a hearing before the Court.

6.03    Dispersing Agent/Distribution to Creditors: Glenn Brettner, the managing member of the LLC, shall be the dispersing agent and shall be responsible for making all distributions and other payments required under this Plan.

6.04(a) Disputed Claims: In the event that a non-tax claim is allowed by the Court after one or more distributions or payments otherwise would have been due under the Plan on account of such claim, then, every such payment or payments, which would have been due earlier to that creditor, shall be made within ninety (90) days after the allowance date of such claim.

6.04(b) Disputed Claims: In the event that a dispute arises as to a priority tax claim, Debtor shall continue to remit such payments as though no such dispute has occurred until such time as the dispute is resolved.

6.05    Reports: Pursuant to the requirements of Federal Rule of Bankruptcy Procedure 2015(a)(5), until the case is closed, Debtor shall file written reports of the distributions made under the Plan, and serve copies of the reports on the United States Trustee.

6.06    Closing the Case: When the Plan has been substantially consummated the Plan pursuant to the relevant provisions of the Code, the Debtor shall make a motion in the Court to close the case.

6.07(a) Notices: Unless the Court orders otherwise, all notices required to be given to Debtor shall be delivered to Parkland II, LLC, at the address listed in the Chapter 11 Petition, and to the attorney of record for the Debtor. At the time of confirmation, Debtor' attorneys of record are: Michael V. Ohlman, Michael V. Ohlman, P.C. 308 West Erie, Suite 300, Chicago, Illinois 60654. Copies of notices to Debtor shall also be served upon the United States Trustee.

6.07(b) Notices: Unless the Court, the Bankruptcy Rules, or the Local Rules require other and further notice, notice shall be deemed sufficient if given to Debtor, the United States Trustee, the attorney of record for Debtor, and every holder of an Allowed

Secured Claim directly and materially affected by the matter which is the subject of the notice. Notice to all interested persons shall not be necessary, except in the event of a general and material modification of the Plan for which a general vote of creditors is required by the Bankruptcy Code.

6.08  Adversary Proceedings:  The Debtor shall continue to prosecute the Adversary (Case No. 15-238) against James Brettner, Glenn Brettner, and Bridgeview Bank.  If the Debtor is successful, it will pay the mortgage according to the terms entered into with Bank of America. Further, if necessary the Debtor will increase its distributions to unsecured creditors accordingly.

## ARTICLE VII

### DISCHARGE AND OTHER EFFECTS OF CONFIRMATION AND PERFORMANCE

7.00   Confirmation binding. Confirmation of the Plan shall bind to the provisions of the Plan the Debtor and its creditors, whether or not any claim or interest of any such creditor or equity security holder is impaired under the Plan, and whether or not any such creditor or equity security holder has accepted the Plan.

7.01   Vesting of property. On the Effective Date, all property of the estate will vest in the reorganized Debtor pursuant to 1141(b) of the Bankruptcy Code, free and clear of all claims and interests except as provided in the Plan.

7.02   Plan Creates New Obligations. The payments provided for by the Plan constitute new obligations that, upon confirmation, replace those obligations to creditors that existed prior to confirmation of the Plan.

7.03   Creditor Action Restrained. Creditors may not take any action to enforce either pre-confirmation obligations or obligations due under the Plan, so long as the Debtor is not in Material Default (defined below in Section 7.04) under the Plan. If the Debtor is in Material Default under the Plan, then affected creditors may take any actions permitted under non-bankruptcy law to enforce the terms of the Plan or move to dismiss this case or to convert this case to a Chapter 7 bankruptcy case.

7.04   Material Default Defined. If the Debtor fails to make any payment required under the Plan, or to perform any other obligation required under the Plan, the affected creditor may serve upon the Debtor and Debtor's attorney (if any) a written notice of default. The Debtor is in Material Default under the Plan if the Debtor fails, within 21 days of the service of such notice of default, to either (i) cure the default or (ii) to obtain from the Court an extension of time to cure the default or a determination that no default occurred.

## ARTICLE VIII

### TRANSFERS OF CLAIMS

8.00   In the event that any Creditor shall transfer or assign its claim, it shall deliver to Debtor and his attorney, by certified United States Mail, written notice of such transfer, including the name and address of the transferee. Debtor shall be entitled to assume that no transfer of any claim has been made until Debtor receives such written notice to the contrary. Each transferee of any claim shall take such claim subject to the provisions of the Plan and to any request made, waiver or consent given, or other action taken hereunder; and, except as expressly provided in such notice,

Debtor shall be entitled to assume conclusively that the transferee named in such notice shall thereafter be vested with all rights and powers under the Plan of the transferor with respect thereto.

## ARTICLE IX

### EXECUTORY CONTRACTS AND UNEXPIRED LEASES

9.00    Debtor assumes the following executory contract: the management contract with Parkland Properties, LLC.

9.00(a) In the event that there are any leases with the Debtor, the Debtor assumes all of them upon the current terms.

9.01    Any person or entity claiming rights under any executory contract or unexpired lease, rejected pursuant to the provisions of this Article, shall have until the later of thirty (30) days after the Effective Date, or the rejection of such executory contract or unexpired lease, to file a proof of claim in this chapter 11 case, or such additional time as the Court, before that date, may allow.

## ARTICLE X

### RETENTION. ENFORCEMENT, SETTLEMENT, OR ADJUSTMENT OF CLAIMS BELONGING TO THE DEBTOR OR TO THE ESTATE

10.00  The Debtor shall retain and have the right to enforce all causes of action, previously known or unknown, if any, existing in favor of the estate. The Debtor shall have the right to employ such attorneys, accountants, or other experts as may be necessary to enforce the causes of action retained here.

10.01  Allowance of Claims and Interests: After the Effective Date, except as released herein or by Bankruptcy Court order, the reorganized Debtor shall have and retain any and all rights and defenses the Debtors had with respect to any Claims and Interests immediately prior to the Effective Date.

10.02  Administration of Claims and Interests: Except as otherwise specifically provided in the Plan, after the Effective Date, the reorganized Debtor shall have the authority: (1) to file, withdraw, or litigate to judgment any objections to Claims or Interests; (2) to settle or compromise any Disputed Claim or Interest without any further notice to or action, order, or approval by the Bankruptcy Court; and (3) to administer and adjust the Claims Register to reflect any such settlements or compromises without any further notice to or action, order, or approval by the Bankruptcy Court.

10.03  Estimation of Claims and Interests: Before the Effective Date, the Debtor, and after the Effective Date, the reorganized Debtor, may (but is not required to) at any time request that the Bankruptcy Court estimate any Disputed Claim or Interest that is contingent or unliquidated pursuant to section 502(c) of the Bankruptcy Code for any

reason, regardless of whether any party previously has objected to such Claim or Interest or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court shall retain jurisdiction to estimate any such Claim or Interest, including during the litigation of any objection to any Claim or Interest or during the appeal relating to such objection. Notwithstanding any provision otherwise in the Plan, a Claim or Equity Interest that has been expunged from the Claims Register, but that either is subject to appeal or has not been the subject of a Final Order, shall be deemed to be estimated at zero dollars, unless otherwise ordered by the Bankruptcy Court. In the event that the Bankruptcy Court estimates any contingent or unliquidated Claim or Interest, that estimated amount shall constitute a maximum limitation on such Claim or Interest for all purposes under the Plan (including for purposes of distributions), and the reorganized Debtor, may elect to pursue any supplemental proceedings to object to any ultimate distribution on such Claim or Interest. Notwithstanding section 502(j) of the Bankruptcy Code, in no event shall any Holder of a Claim or Interest that has been estimated pursuant to section 502(c) of the Bankruptcy Code or otherwise be entitled to seek reconsideration of such estimation unless such Holder has filed a motion requesting the right to seek such reconsideration on or before fourteen days after the date on which such Claim is estimated.

10.04  Adjustment to Claims Without Objection: Any Claim or Interest that has been paid or satisfied, or any Claim or Interest that has been amended or superseded, may be adjusted or expunged on the Claims Register at the request of reorganized Debtor without any further notice to or action, order, or approval of the Bankruptcy Court.

10.05  Disallowance of Claims or Interests: Any Claims or Interests held by Entities from which property is recoverable under section 542, 543, 550, or 553 of the Bankruptcy Code or that is a transferee of a transfer avoidable under section 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of the Bankruptcy Code, shall be deemed disallowed pursuant to section 502(d) of the Bankruptcy Code, and Holders of such Claims and Interests may not receive any distributions on account of such Claims and Interests until such time as such Causes of Action against that Entity have been settled or a Bankruptcy Court order with respect thereto has been entered and all sums due, if any, to the Debtor by that Entity have been turned over or paid to the Reorganized Debtor.

## ARTICLE XI

### MODIFICATION OF THE PLAN

11.00  Debtor may propose modifications to the Plan at any time before confirmation, provided that such Plan as modified meets the requirements of §§ 1122, 1123, and 1125 of the Bankruptcy Code.

11.01  A holder of a claim or interest that has accepted or rejected the Plan shall, upon modification of the Plan, be deemed to have accepted or rejected the Plan as modified unless, within the time fixed by the Court, such holder changes its previous acceptance or rejection.

## ARTICLE XII

### JURISDICTION OF THE COURT

12.00   Until this chapter 11 case is closed, the Court shall retain jurisdiction over all matters, including, but not limited to the following:

12.0.1   The classification or subordination of the claims of any creditor and re-examination of claims which have been allowed for purposes of voting, and the determination of such objections as may be filed against creditors' claims.

12.0.2   The determination of all questions and disputes regarding title to the assets of the estate, and determinations of all causes of action, controversies, disputes, or conflicts, whether or not subject to action pending as of the date of confirmation, between Debtor and any other party, including but not limited to, any right of Debtor to recover assets pursuant to the provisions of the Bankruptcy Code.

12.0.3   The commencement, completion, or adjudication of any and all adversaries or contested proceedings now or hereafter arising, including, but not limited to, avoidance actions under chapter 5 of the Bankruptcy Code.

12.0.4   The entry or enforcement of any and all orders, including injunctions, necessary to enforce the title, rights, and powers of Debtor and to impose such limitations, restrictions, terms and condition of such title, rights and powers as the Court may deem necessary. A violation of any provision of the Plan shall constitute a violation of the Order Confirming the Plan.

12.0.5   The correcting of any defect, the curing of any omission, or the reconciliation of any inconsistency in this Plan, or the order of confirmation, or any other order entered by this Court as may be necessary to carry out the purposes of this Plan.

12.0.6   Any necessary interpretation or enforcement of the terms and conditions of this Plan and any order entered by this Court.

12.0.7   Any order or other actions necessary to protect or preserve any assets or proceeds being administered under the Plan.

12.0.8   The entry of an order concluding and terminating the case.

12.01   Continuing Jurisdiction of Bankruptcy Court. The Bankruptcy Court shall retain jurisdiction over the Debtor, after confirmation of the Plan, for purpose of enforcing the provisions of the Plan, including without limitation, the determination of the amount of Allowed Claims, the hearing of objections (if any) to Claims, for estimating any contingent or unliquidated Claims, for conducting adversary proceedings, including but not limited to any preference actions, actions to subordinate Claims under § 510, to conduct any actions which may be properly removed to the Bankruptcy Court, and for other proper purposes related to this Plan

## ARTICLE XIII

## GENERAL PROVISIONS

13.00   Debtor submits that all of the applicable requirements of §1129(a) of the

Bankruptcy Code are met with respect to the Plan, that it has been proposed in good faith and not by any means forbidden by law, that the Plan does not discriminate unfairly, and is fair and equitable with respect to each class of claims or interests that is impaired under the Plan.

13.01  Should Debtor fail to receive sufficient votes to confirm a plan under § 1129(a), Debtor will nevertheless ask the Court to confirm the plan under § 1129(b).

13.02   If any provision in the Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of the Plan.

13.03 The rights and obligations of any entity named or referred to in this Plan will be binding upon and will inure to the benefit of the successors or assigns of such entity.

13.04 Unless a rule of law of procedure is supplied by Federal Law (including the Bankruptcy Code or the Federal Rules of Bankruptcy Procedure), the laws of the State of Illinois govern the Plan and any agreements, documents, and instruments executed in connection with the Plan, except as otherwise provided in the Plan.

13.05   If the Debtor's Plan is confirmed over a creditor objection, ownership of the Debtor shall be determined at an auction to be held at the confirmation hearing.  Bidding will begin at $18,000.00 and shall increase incrementally in $1,000.00 amount until the highest bidder is determined.  Anyone with an intention to bid shall deliver to counsel for the Debtor, written notice of an intention to bid and an earnest money check in certified funds in an amount that is no less than $19,000.00, 7 days prior to confirmation.

Dated: August 17, 2015

Respectfully submitted,
Parkland II, LLC

By:        /s/ Glenn Brettner
           Managing Member

           /s/ Michael V. Ohlman
           One of its attorneys

Michael V. Ohlman #6294512
MICHAEL V. OHLMAN, P.C.
308 West Erie, Suite 300
Chicago, Illinois 60606
312-869-4155
mvohlman@ohlmanlaw.com

# EXHIBIT C

STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

In re:                                    )    Chapter 11
                                          )
Parkland Properties, LLC, *et al.* [1]    )    Case No.: 13-22702
                                          )    Jointly Administered
                                          )
Debtors.                                  )    Judge Donald R. Cassling

## DEBTOR'S SIXTH MODIFIED PLAN OF REORGANIZATION

This Sixth Modified Plan of Reorganization ("Plan") is filed by Debtor and Debtor in Possession Parkland VI, LLC ("Debtor"), pursuant to Title 11 of the United States Code, Section 1121(a), on August 17, 2015. Debtor intends to continue to operate its business and use income generated through the businesses to pay the allowed claims of its creditors over the life of the Plan to the extent as set forth herein.

## CONTENTS

| ARTICLE I | - | Definitions |
| ARTICLE II | - | Construction |
| ARTICLE III | - | Classification and Treatment of Claims |
| ARTICLE IV | - | Stripping of Junior Mortgage Lien |
| ARTICLE V | - | Allowance and Disallowance of Claims |
| ARTICLE VI | - | Implementation of the Plan |
| ARTICLE VII | - | Discharge and Effects of Confirmation and Performance |
| ARTICLE VIII | - | Transfers of Claims |
| ARTICLE IX | - | Executory Contracts and Unexpired Leases |
| ARTICLE X | - | Retention, Enforcement, Settlement, or Adjustment of Claims |
| ARTICLE XI | - | Modification of the Plan |
| ARTICLE XII | - | Jurisdiction of the Court |
| ARTICLE XIII | - | General Provisions |

## ARTICLE I

## DEFINITIONS

1.00    The following terms, when used in the Plan, shall, unless the context otherwise requires, have the meanings specified below:

1.01    ADMINISTRATIVE CLAIM: An administrative expense which is entitled

---

[1] The "Debtors" include: Parkland Properties, LLC (Case No. 13-22702); Parkland II LLC ("Case No. 13-25121); Parkland III, LLC (Case No. 13-25125); Parkland IV, LLC (Case No. 13-26018); and Parkland VI, LLC (Case No. 13-26811).

or purportedly is entitled to priority pursuant to § 507(a)(1) of the Code, including any actual and necessary expenses of preserving the estate and any actual and necessary expenses of operating Debtor' business from and after the commencement of these reorganization proceedings, for which application for allowance has been filed prior to the Effective Date or such other date or dates as the Court determines.

1.02    ALLOWANCE DATE: The date an order of Court allowing a Claim in this chapter 11 case has become final and non-appealable and no appeal therefrom is pending.

1.03    ALLOWED ADMINISTRATIVE CLAIM: An Administrative Claim as the same is allowed, approved, and ordered paid by the Court.

1.04    ALLOWED CLAIM: A claim, proof, or application for which is filed within the time fixed by the Court or, if the claim arose out of the rejection of an executory contract or unexpired lease, within the time fixed by the Court or as provided in Article IX of the Plan; or (ii) that has appeared, or hereafter appears, in the final schedules filed by Debtor under § 521(a)(1) of the Code, except a claim that is disputed, contingent, or unliquidated as to amount and, in each case, to which no objection to the allowance thereof has been filed within the applicable period fixed by the Court, or as to which the order of Court allowing such claim has become final and non-appealable and no appeal therefore is pending. Allowed Claim includes Allowed Secured Claims and Allowed Priority Tax Claims. Allowed Claim shall not include any Allowed Administrative Claim. Claims which are identified in the schedules as belonging to one creditor, but are filed by a different creditor, shall be allowed and paid according to the proof claim.

1.05    ALLOWED SECURED CLAIM: An Allowed Claim to the extent that it is determined by the Court to be secured by a valid and subsisting lien, security interest, or other encumbrance (other than any liens, security interests or other encumbrances granted under the Plan) on property in which Debtor have an interest which is not void or voided under applicable state or federal law, including the Code, or that is subjected to setoff under § 553 of the Code.

1.06    CASE: The chapter 11 case of Parkland VI, LLC filed pursuant to the Bankruptcy Code by Debtor on June 25, 2013.

1.07    CLAIMS: All obligations and liabilities of Debtor of every kind and nature incurred prior to the Confirmation Date, including without limitation, liquidated and unliquidated claims, disputed and undisputed claims, contingent and unconditional claims, allowed and disallowed claims, Secured Claims, and Priority Tax Claims.

1.08    CODE: Title 11 of the United States Code 11 U.S.C. §§ 101 *et seq.* and amendments thereto.

1.09    COMMITTEE: The creditor's committee as now or hereafter constituted which was or may be appointed in this case.

1.10    CONFIRMATION DATE: The date of the entry by the Court of an order confirming the Plan.

1.11    COURT: The United States Bankruptcy Court, a unit of the United States District Court, for the Northern District of Illinois, Eastern Division (Bankruptcy Court), including the United States Bankruptcy Judge presiding in this case or, as appropriate or required, the United States District Court for said District and Division (District Court),

and any Court having competent jurisdiction to hear appeals therefrom.

    1.12   CREDITORS: All persons and entities holding or purporting to hold claims. Creditors shall include Secured Creditors.

    1.13   DEBTOR: Parkland VI, LLC, an Illinois limited liability company.

    1.14   EFFECTIVE DATE: The Effective Date of this Plan is 14 days following the date of the entry of the order confirming the Plan. But, if a stay of the confirmation order is in effect on that date, the Effective Date will be the first business day after the date on which no stay of the confirmation order is in effect, provided that the confirmation order has not been vacated.

    1.15   EQUITY INTEREST: Debtor' equitable interest in any real or personal property as of the Confirmation Date.

    1.16   INSIDER: Any director of the Debtor, officer of the Debtor, person in control of the Debtor, partnership in which the Debtor is a general partner, general partner of the Debtor or relative of a general partner, director, officer, or person in control of the Debtor.

    1.17   INSIDER'S CLAIM: Every Claim of every Insider except Claims found upon a right of subrogation, exoneration, or contribution for payment by an Insider of all or part of an Allowed Claim of a Creditor other than an Insider.

    1.18   INTEREST: Unless otherwise expressly stated in the Plan, interest shall mean simple interest at the specified annual rate. Where daily calculations are applicable or appropriate, the per diem rate shall be calculated on the basis of the number of days in the actual calendar year or month as the case may be.

    1.19   PLAN: Debtor' plan of reorganization as set forth herein or as it may be modified or amended.

    1.20   PRIORITY CLAIM: An Allowed Claim other than an Allowed Administrative Claim or an Allowed Priority Tax Claim to the extent that the Court determines that such claim is entitled to priority treatment under § 507 of the Code.

    1.21   PRIORITY TAX CLAIM: A Claim entitled to or purportedly entitled to priority pursuant to § 507(a)(8) of the Code.

    1.22   SECURED CLAIM: A Claim secured or purporting to be secured in whole or in part by a lien, security interest, or other encumbrance (other than any liens, security interest or other encumbrances granted under the Plan) on property in which Debtor have an interest which is not void or voidable under applicable state or federal law, including the Code, or that is subject to setoff under § 553 of the Code.

    1.23   SECURED CREDITOR: A Creditor having an Allowed Secured Claim.

## ARTICLE II

### CONSTRUCTION

    2.00   Where not inconsistent or in conflict with the provisions of the Plan, the words and phrases used herein shall have the meanings ascribed thereto in the Code and in the Federal Rules of Bankruptcy Procedure.

12

2.01    The table of contents, Articles, and Section captions used in the Plan are for convenience only, and shall not affect the construction of the Plan.

2.02    In the event of ambiguity or uncertainty, the Plan shall be liberally construed in the light of the circumstances then present to best effectuate the policies and rehabiliative purposes of the Bankruptcy Code, particularly chapter 11 thereof.

## ARTICLE III

### CLASSIFICATION AND TREATMENT OF CLAIMS

3.00    **UNCLASSIFIED CLAIMS**: Unclassified Claims shall be Allowed Administrative Claims, including fees owing to the Debtor' bankruptcy counsel, and statutory fees owing to the United States Trustee, and any priority tax claim of the Department of Treasury – Internal Revenue Service. Under Bankruptcy Code 1123(a)(1), these claims are not classified and are not entitled to vote on confirmation of the Plan. These claims shall be treated as follows:

A. Professional Fees. Professional fees may only be paid upon application to and approval by the Bankruptcy Court. Debtor will pay professional fees in full in cash on the later of (i) the Effective Date or (ii) approval by the Court, except to the extent that a holder of such claim agrees to other terms. Once the Plan is confirmed and the Bankruptcy Court approves Debtor's Counsel's fees, the Debtor shall pay Michael V. Ohlman, P.C. in full or pursuant to an agreement between the parties.

B. United States Trustee fees. The statutory fees owing to the United States Trustee shall be paid in full on the Effective Date, except to the extent that the U.S. Trustee agrees to other treatment.

C. Tax Claims. There are currently no priority tax claims, but if one does arise, the Debtor will pay the allowed priority claim of the IRS in full, in accordance with §511 of the Bankruptcy Code.  This payment will be made in one lump distribution on the anniversary of the Effective Date prior to distributions to general unsecured creditors.

3.01    **CLASS I CLAIM**:            Greentree Lending holds a third mortgage in Debtor's property found at 3217 West Potomac, Chicago, Illinois pursuant to a mortgage and note.  Greentree's lien on the property is wholly unsecured due to Bridgeview Bank Group's primary mortgage being undersecured by the value of the property.  Pursuant to 11 U.S.C. § 507 Chase Bank's claim of is wholly unsecured and the lien will be stripped off the property.  Greentree's Claim, to the extend allowed, will be paid with other General Unsecured Creditors. Funds to pay the claim will derive from net proceeds of the rental income received on the properties.

3.02    **CLASS II CLAIM**:            Chase Bank holds a second mortgage in Debtor's property found at 3217 West Potomac, Chicago, Illinois pursuant to a mortgage and note. Chase Bank's lien on the property is wholly unsecured due to Bank of America's primary mortgage being undersecured by the value of the property.  Pursuant to 11 U.S.C. § 507 Chase Bank's claim of $60,000.00 is wholly unsecured and the lien will be stripped off the property.  Chase Bank's Claim will be paid with other General Unsecured Creditors. Funds to pay the claim will derive from net proceeds of the rental income received on the property.

3.03    **CLASS III CLAIM**:            CFS Allocation Solutions ("**CFS**") holds an allowed secured claim on the Debtor's property located at 306 South Hamlin, Chicago,

Illinois ("Property"), pursuant to a first and senior recorded mortgage. The claim is cross-collateralized with properties located at 3237 West Thomas and 1239 South Avers, Chicago, Illinois, which are not part of this Estate. CFS filed proof of claim No. 1-1 in the amount of $690,952.00 ("Claim"). The Debtor will pay CFS's Claim as follows:

CFS will enter into a forbearance agreement with the Debtor ("**Forbearance 1C**"). Payment of Forbearance 1C will be secured by a first and senior mortgage in the amount of $125,000.00 on the Property. Forbearance 1C will be paid monthly at 5% interest rate (payment of $730.74) pursuant to a 30-year amortization schedule with a balloon payment of all amounts due in 84 months. In addition, Debtor will make monthly payments to CFS in the amount equal to 1/12 the annual real estate taxes for the property. The balance of CFS's Class III claim ($170,952.24) will be paid pursuant to "**Note 2**". Note 2 will be paid monthly, at 2.5% interest, 20-year amortization schedule and an 84 month balloon (payment of $_____). Provided Forbearance 1A, Forbearance 1B and Forbearance 1C are paid in accordance with their respective terms, Note 2 will be satisfied upon full payment of Forbearance 1A, Forbearance 1B and Forbearance 1C. Upon sale of the Property if prior to the maturity date, CFS shall be entitled to the unpaid balance from Forbearance 1C plus 35% of the net sale proceeds from the Property.

If the Debtor defaults under its Plan obligations to CFS, CFS shall be entitled to exercise its remedies against the Property and repayment of its Claim in the full amount, less any payments made to CFS post confirmation of the Plan.

3.04   **CLASS IV CLAIM**:   American Enterprise Bank holds a secured claim in Debtor's property found 4201 West North Ave, Chicago, Illinois pursuant to a mortgage and note.  American Enterprise Bank filed a proof of claim in the amount of $496,811.10.  Debtor shall surrender 4201 West North Ave, Chicago, Illinois to First American Bank.  American Enterprise Bank will also receive an unsecured claim of $493,000.

3.05   **CLASS V CLAIM**:   MRR Parkland Properties, LLC holds a mortgage on Debtor's property found 310 South Hamlin, Chicago, Illinois and 3214 West Crystal, Chicago, Illinois, pursuant to a mortgage and note.  MRR Parkland Properties, LLC has agreed to release the lien on this property, and in return,  MRR Parkland Properties, LLC's will receive a total distribution of $50,000.00 (7.2%) for its $530,191.45.00 claim.

3.06   **CLASS VI CLAIM**:   Bridgeview Bank Group holds a secured claim in Debtor's property found 1514 South Albany, Chicago, Illinois pursuant to a mortgage and note.  Bridgeview Bank Group filed a proof of claim 5-1 in the secured amount of $606,600.86.  Debtor shall surrender 1514 South Albany, Chicago, Illinois to Bridgeview Bank Group as the indubitable equivalent, and in full satisfaction of all Class VI Claims against the Estate.

3.07   **CLASS VII CLAIM**:   City of Chicago Water Department holds a secured claim in Debtor's assets pursuant to a lien.  The Debtor will pay the Class VII claimant 100% of its claim on or before the first anniversary of the Effective Date of the Plan.

3.08   **CLASS VIII CLAIM**:   Bridgeview Bank Group holds a secured claim in Debtor's property found 3217 West Potomac, Chicago, Illinois pursuant to a judgment lien in the amount of $690,000.  This is the primary lien on the property per the Cook County Recorder of Deeds. The Debtor and Bridgeview Bank have agreed to modify the

automatic stay with respect to this property so that Bridgeview may continue its foreclosure action and be declared the primary lienholder.  Once a determination is made in the state court the Debtor and Bridgeview Bank Group will enter into a mortgage by which the Debtor will pay Bridgeview Bank Group based on a value of $225,000.

3.08  **CLASS IX CLAIM:**          Class IX claims are all allowed general unsecured claims, without priority.  Class VII is impaired and is entitled to vote on the Plan. This class also includes the claims that were filed as secured claims, but will be treated as Class IX general unsecured claims by the Plan.  Each member of Class IX shall receive 6.79% of its claim, without interest. The Debtor shall make quarterly pro-rata distributions to members of Class IX beginning in month 12 of the Plan.

3.09  **CLASS X CLAIM:**     The holder of Class X equity interests will receive no disbursements, James Brettner and Glenn Brettner will, however, retain their equity interest.

## ARTICLE IV

### STRIPPING OF MORTAGE LIENS PURSUANT TO 11 U.S.C. 506

4.01   Chase Bank holds a second mortgage in Debtor's property found at 3217 West Potomac, Chicago, Illinois pursuant to a mortgage and note.  Chase Bank's lien on the property is wholly unsecured due to Bank of America's primary mortgage being undersecured by the value of the property.  Pursuant to 11 U.S.C. § 507 Chase Bank's claim of $60,000.00 is wholly unsecured and the lien will be stripped off the property. Chase Bank's Claim will be paid with other General Unsecured Creditors. Funds to pay the claim will derive from net proceeds of the rental income received on the property.

4.02   Greentree holds a second mortgage in Debtor's property found at 3217 West Potomac, Chicago, Illinois pursuant to a mortgage and note.  Greentree's lien on the property is wholly unsecured because it is the second recorded lien against the property pursuant to the Cook County Recorder of Deeds' records.  Pursuant to § 507 Grentree's lien is wholly unsecured and the lien will be stripped off of the property.  To the extent allowed, Greentree's Claim will be paid with other General Unsecured Creditors and funds to pay the claim will derive from net proceeds of the rental income received on the property.

## ARTICLE V

### ALLOWANCE AND DISALLOWANCE OF CLAIMS

5.00   Disputed Claims: A disputed claim is a claim that has not been allowed in a specific amount or disallowed by a final non-appealable order, and as to which either: (i) a proof of claim has been filed or deemed filed and Debtor or another party in interest has filed an objection; or (ii) no proof of claim has been filed and the Debtor has scheduled such claim as disputed, contingent, or unliquidated, or has objected to the claim for any other reason.

5.01   Delay of Distribution on a Disputed Claim: No distribution will be made on account of a disputed claim unless such claim is allowed by a final non-appealable order.

5.02   Settlement of Disputed Claims: Debtor will have the power and authority to settle and compromise a disputed claim prior to confirmation with Court

approval and compliance with Rule 9019 of the Federal Rules of Bankruptcy
Procedure.

## ARTICLE VI

### IMPLEMENTATION OF THE PLAN

6.00    After confirmation, Debtor will continue to possess its assets and to manage its affairs. Debtor shall have the right to borrow money, to sell any ownership interest in their real property, to negotiate and enter into contracts, to incur new indebtedness, to enter into partnerships and joint ventures, to hire and fire professionals, to settle claims, and to pay post- petition creditors on a current basis without further order of court.

6.01    Funding: Pursuant to 11 U.S.C. § 1123, payments required under the Plan shall be funded from the revenues generated through rental revenues, the sale of property in the ordinary course of business, and from any cash holdings of the debtor, available on the Effective Date.

6.02    Surrender of Assets: Any assets may be surrendered to the holder of the Allowed Secured Claims secured by such assets in full satisfaction of such claim as set forth in this Plan or to the extent the parties otherwise agree, or if no agreement is reached, after notice and a hearing before the Court.

6.03    Dispersing Agent/Distribution to Creditors: James Brettner, the managing member of the LLC, shall be the dispersing agent and shall be responsible for making all distributions and other payments required under this Plan.

6.04(a) Disputed Claims: In the event that a non-tax claim is allowed by the Court after one or more distributions or payments otherwise would have been due under the Plan on account of such claim, then, every such payment or payments, which would have been due earlier to that creditor, shall be made within ninety (90) days after the allowance date of such claim.

6.04(b) Disputed Claims: In the event that a dispute arises as to a priority tax claim, Debtor shall continue to remit such payments as though no such dispute has occurred until such time as the dispute is resolved.

6.05    Reports: Pursuant to the requirements of Federal Rule of Bankruptcy Procedure 2015(a)(5), until the case is closed, Debtor shall file written reports of the distributions made under the Plan, and serve copies of the reports on the United States Trustee.

6.06    Closing the Case: When the Plan has been substantially consummated the Plan pursuant to the relevant provisions of the Code, the Debtor shall make a motion in the Court to close the case.

6.07(a) Notices: Unless the Court orders otherwise, all notices required to be given to Debtor shall be delivered to Parkland VI, LLC, at the address listed in the Chapter 11 Petition, and to the attorney of record for the Debtor. At the time of confirmation, Debtor' attorneys of record are:  Michael V. Ohlman, Michael V. Ohlman, P.C. 308 West Erie, Suite 300, Chicago, Illinois 60654. Copies of notices to Debtor shall also be served upon the United States Trustee.

6.07(b) Notices: Unless the Court, the Bankruptcy Rules, or the Local Rules require other and further notice, notice shall be deemed sufficient if given to Debtor, the

12

United States Trustee, the attorney of record for Debtor, and every holder of an Allowed Secured Claim directly and materially affected by the matter which is the subject of the notice. Notice to all interested persons shall not be necessary, except in the event of a general and material modification of the Plan for which a general vote of creditors is required by the Bankruptcy Code.

6.08   Adversary Proceedings:  The Debtor shall continue to prosecute the Adversary (Case No. 15-238) against James Brettner, Glenn Brettner, and Bridgeview Bank.  If the Debtor is successful, it will pay the mortgage according to the terms entered into with Bank of America. Further, if necessary the Debtor will increase its distributions to unsecured creditors according to the increase in revenue.

## ARTICLE VII

### DISCHARGE AND OTHER EFFECTS OF CONFIRMATION AND PERFORMANCE

7.00   Confirmation binding. Confirmation of the Plan shall bind to the provisions of the Plan the Debtor and its creditors, whether or not any claim or interest of any such creditor or equity security holder is impaired under the Plan, and whether or not any such creditor or equity security holder has accepted the Plan.

7.01   Vesting of property. On the Effective Date, all property of the estate will vest in the reorganized Debtor pursuant to 1141(b) of the Bankruptcy Code, free and clear of all claims and interests except as provided in the Plan.

7.02   Plan Creates New Obligations. The payments provided for by the Plan constitute new obligations that, upon confirmation, replace those obligations to creditors that existed prior to confirmation of the Plan.

7.03   Creditor Action Restrained. Creditors may not take any action to enforce either pre-confirmation obligations or obligations due under the Plan, so long as the Debtor is not in Material Default (defined below in Section 7.04) under the Plan. If the Debtor is in Material Default under the Plan, then affected creditors may take any actions permitted under non- bankruptcy law to enforce the terms of the Plan or move to dismiss this case or to convert this case to a Chapter 7 bankruptcy case.

7.04   Material Default Defined. If the Debtor fails to make any payment required under the Plan, or to perform any other obligation required under the Plan, the affected creditor may serve upon the Debtor and Debtor's attorney (if any) a written notice of default. The Debtor is in Material Default under the Plan if the Debtor fails, within 21 days of the service of such notice of default, to either (i) cure the default or (ii) to obtain from the Court an extension of time to cure the default or a determination that no default occurred.

## ARTICLE VIII

### TRANSFERS OF CLAIMS

8.00   In the event that any Creditor shall transfer or assign its claim, it shall deliver to Debtor and his attorney, by certified United States Mail, written notice of such transfer, including the name and address of the transferee. Debtor shall be entitled to assume that no transfer of any claim has been made until Debtor receives such written notice to the contrary. Each transferee of any claim shall take such claim

subject to the provisions of the Plan and to any request made, waiver or consent given, or other action taken hereunder; and, except as expressly provided in such notice, Debtor shall be entitled to assume conclusively that the transferee named in such notice shall thereafter be vested with all rights and powers under the Plan of the transferor with respect thereto.

## ARTICLE IX

### EXECUTORY CONTRACTS AND UNEXPIRED LEASES

9.00    Debtor rejects all executory contracts except those provided for in § 9.00(a).

9.00(a) In the event that there are any leases with the Debtor, the Debtor assumes all of them upon the same terms as currently written.

9.01    Any person or entity claiming rights under any executory contract or unexpired lease, rejected pursuant to the provisions of this Article, shall have until the later of thirty (30) days after the Effective Date, or the rejection of such executory contract or unexpired lease, to file a proof of claim in this chapter 11 case, or such additional time as the Court, before that date, may allow.

## ARTICLE X

### RETENTION, ENFORCEMENT, SETTLEMENT, OR ADJUSTMENT OF CLAIMS BELONGING TO THE DEBTOR OR TO THE ESTATE

10.00    The Debtor shall retain and have the right to enforce all causes of action, previously known or unknown, if any, existing in favor of the estate. The Debtor shall have the right to employ such attorneys, accountants, or other experts as may be necessary to enforce the causes of action retained here.

10.01    Allowance of Claims and Interests: After the Effective Date, except as released herein or by Bankruptcy Court order, the reorganized Debtor shall have and retain any and all rights and defenses the Debtors had with respect to any Claims and Interests immediately prior to the Effective Date.

10.02    Administration of Claims and Interests: Except as otherwise specifically provided in the Plan, after the Effective Date, the reorganized Debtor shall have the authority: (1) to file, withdraw, or litigate to judgment any objections to Claims or Interests; (2) to settle or compromise any Disputed Claim or Interest without any further notice to or action, order, or approval by the Bankruptcy Court; and (3) to administer and adjust the Claims Register to reflect any such settlements or compromises without any further notice to or action, order, or approval by the Bankruptcy Court.

10.03    Estimation of Claims and Interests: Before the Effective Date, the Debtor, and after the Effective Date, the reorganized Debtor, may (but is not required to) at any time request that the Bankruptcy Court estimate any Disputed Claim or Interest that is contingent or unliquidated pursuant to section 502(c) of the Bankruptcy Code for any reason, regardless of whether any party previously has objected to such Claim or Interest or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court

shall retain jurisdiction to estimate any such Claim or Interest, including during the litigation of any objection to any Claim or Interest or during the appeal relating to such objection. Notwithstanding any provision otherwise in the Plan, a Claim or Equity Interest that has been expunged from the Claims Register, but that either is subject to appeal or has not been the subject of a Final Order, shall be deemed to be estimated at zero dollars, unless otherwise ordered by the Bankruptcy Court. In the event that the Bankruptcy Court estimates any contingent or unliquidated Claim or Interest, that estimated amount shall constitute a maximum limitation on such Claim or Interest for all purposes under the Plan (including for purposes of distributions), and the reorganized Debtor, may elect to pursue any supplemental proceedings to object to any ultimate distribution on such Claim or Interest. Notwithstanding section 502(j) of the Bankruptcy Code, in no event shall any Holder of a Claim or Interest that has been estimated pursuant to section 502(c) of the Bankruptcy Code or otherwise be entitled to seek reconsideration of such estimation unless such Holder has filed a motion requesting the right to seek such reconsideration on or before fourteen days after the date on which such Claim is estimated.

10.04   Adjustment to Claims Without Objection: Any Claim or Interest that has been paid or satisfied, or any Claim or Interest that has been amended or superseded, may be adjusted or expunged on the Claims Register at the request of reorganized Debtor without any further notice to or action, order, or approval of the Bankruptcy Court.

10.05   Disallowance of Claims or Interests: Any Claims or Interests held by Entities from which property is recoverable under section 542, 543, 550, or 553 of the Bankruptcy Code or that is a transferee of a transfer avoidable under section 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of the Bankruptcy Code, shall be deemed disallowed pursuant to section 502(d) of the Bankruptcy Code, and Holders of such Claims and Interests may not receive any distributions on account of such Claims and Interests until such time as such Causes of Action against that Entity have been settled or a Bankruptcy Court order with respect thereto has been entered and all sums due, if any, to the Debtor by that Entity have been turned over or paid to the Reorganized Debtor.

## ARTICLE XI

### MODIFICATION OF THE PLAN

11.00   Debtor may propose modifications to the Plan at any time before confirmation, provided that such Plan as modified meets the requirements of §§ 1122, 1123, and 1125 of the Bankruptcy Code.

11.01   A holder of a claim or interest that has accepted or rejected the Plan shall, upon modification of the Plan, be deemed to have accepted or rejected the Plan as modified unless, within the time fixed by the Court, such holder changes its previous acceptance or rejection.

## ARTICLE XII

### JURISDICTION OF THE COURT

12.00   Until this chapter 11 case is closed, the Court shall retain jurisdiction over all matters, including, but not limited to, the following:

12.0.1  The classification or subordination of the claims of any creditor and re-examination of claims which have been allowed for purposes of voting, and the determination of such objections as may be filed against creditors' claims.

12.0.2  The determination of all questions and disputes regarding title to the assets of the estate, and determinations of all causes of action, controversies, disputes, or conflicts, whether or not subject to action pending as of the date of confirmation, between Debtor and any other party, including but not limited to, any right of Debtor to recover assets pursuant to the provisions of the Bankruptcy Code.

12.0.3  The commencement, completion, or adjudication of any and all adversaries or contested proceedings now or hereafter arising, including, but not limited to, avoidance actions under chapter 5 of the Bankruptcy Code.

12.0.4  The entry or enforcement of any and all orders, including injunctions, necessary to enforce the title, rights, and powers of Debtor and to impose such limitations, restrictions, terms and condition of such title, rights and powers as the Court may deem necessary. A violation of any provision of the Plan shall constitute a violation of the Order Confirming the Plan.

12.0.5  The correcting of any defect, the curing of any omission, or the reconciliation of any inconsistency in this Plan, or the order of confirmation, or any other order entered by this Court as may be necessary to carry out the purposes of this Plan.

12.0.6  Any necessary interpretation or enforcement of the terms and conditions of this Plan and any order entered by this Court.

12.0.7  Any order or other actions necessary to protect or preserve any assets or proceeds being administered under the Plan.

12.0.8  The entry of an order concluding and terminating the case.

12.01    Continuing Jurisdiction of Bankruptcy Court. The Bankruptcy Court shall retain jurisdiction over the Debtor, after confirmation of the Plan, for the purpose of enforcing the provisions of the Plan, including without limitation, the determination of the amount of Allowed Claims, the hearing of objections (if any) to Claims, for estimating any contingent or unliquidated Claims, for conducting adversary proceedings, including but not limited to any preference actions, actions to subordinate Claims under § 510, to conduct any actions which may be properly removed to the Bankruptcy Court, and for other proper purposes related to this Plan.

## ARTICLE XIII

### GENERAL PROVISIONS

13.00  Debtor submits that all of the applicable requirements of §1129(a) of the Bankruptcy Code are met with respect to the Plan, that it has been proposed in good faith and not by any means forbidden by law, that the Plan does not discriminate unfairly, and

12

is fair and equitable with respect to each class of claims or interests that is impaired under the Plan.

13.01  Should Debtor fail to receive sufficient votes to confirm a plan under § 1129(a), Debtor will nevertheless ask the Court to confirm the plan under § 1129(b).

13.02  If any provision in the Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of the Plan.

13.03 The rights and obligations of any entity named or referred to in this Plan will be binding upon and will inure to the benefit of the successors or assigns of such entity.

13.04 Unless a rule of law of procedure is supplied by Federal Law (including the Bankruptcy Code or the Federal Rules of Bankruptcy Procedure), the laws of the State of Illinois govern the Plan and any agreements, documents, and instruments executed in connection with the Plan, except as otherwise provided in the Plan.

13.05  If the Debtor's Plan is confirmed over a creditor objection, ownership of the Debtor shall be determined at an auction to be held at the confirmation hearing.  Bidding will begin at $5,000.00 and shall increase incrementally in $1,000.00 amount until the highest bidder is determined.  Anyone with an intention to bid shall deliver to counsel for the Debtor, written notice of an intention to bid and an earnest money check in certified funds in an amount that is no less than $5,000.00, 7 days prior to confirmation.

Dated: August 17, 2015                          Respectfully submitted,
                                                Parkland VI, LLC

                                By:             /s/ Glenn Brettner
                                                Managing Member

                                                /s/ Michael V. Ohlman
                                                One of its attorneys

Michael V. Ohlman #6294512
MICHAEL V. OHLMAN, P.C.
308 West Erie, Suite 300
Chicago, Illinois 60603
Phone: 847-406-0022
mvohlman@ohlmanlaw.com

# EXHIBIT D

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| Parkland Properties, LLC, *et al.* [1] | ) | Case No.: 13-22702 |
| | ) | Jointly Administered |
| | ) | |
| Debtors. | ) | Judge Donald R. Cassling |
| | ) | |

SIXTH AMENDED DISCLOSURE STATEMENT
Parkland II, LLC

This Sixth Amended Disclosure Statement (the "Disclosure Statement") is filed by the Debtor Parkland II, LLC (the "Debtor"), dated August 17, 2015 in connection with the Debtor's Modified Plan of Reorganization ("Plan") also filed by the Debtor on August 17, 2015. This Disclosure Statement is intended to provide creditors with information of a kind and in sufficient detail of the Debtor's history and of the condition of the Debtor's books and records to allow creditors to make an informed judgment when voting on the Plan. Creditors are advised that, after review, the Court may approve the Disclosure Statement, but such approval does not constitute endorsement.

## I. SUMMARY:

On June 19, 2013 (the "Petition Date"), the Debtor filed a voluntary petition under Chapter 11 of the United States Bankruptcy Code (the "Code"). The Debtor remains in possession of its assets and continues to generate income pursuant to §§ 1107 and 1108 of the Code. The Debtor, a condominium developer, conducts its business at 3217 West Potomac, Chicago, Illinois.

The Debtor is proposing a Five-Year Plan, in which the Debtor will continue to rehab rental units, hold rental properties that will continue to be managed by Parkland

[1] The "Debtors" include: Parkland Properties, LLC (Case No. 13-22702); Parkland II LLC ("Case No. 13-25121); Parkland III, LLC (Case No. 13-25125); Parkland IV, LLC (Case No. 13-26018); (Case No. 13-27098) and Parkland VI, LLC (Case No. 13-26811).

1

Properties, LLC.  Pursuant to the Plan, Glenn Brettner will be the disbursing agent.  The Plan will be funded from future revenues generated from renting, rehabbing, and in some cases, selling buildings if necessary.  In the Plan, claims are divided into Unclassified, Class I, Class II, Class III, and Class IV, Class V, Class VII, and Class VIII equity interests.

The Debtor plans to pay holders of Claims of Classes I-VII claims pursuant to the terms set forth in the Plan.  Debtor believes that it will have the necessary funds to pay Classes I-V 100% of their allowed claims based on the terms described herein.  Debtor is also confident that it can pay all General Unsecured Creditors 28% within the 5-years of the Plan.

Creditors who have been scheduled but have not filed proofs of claim, and have not been listed as "disputed, unliquidated, or contingent", will be paid according to the claim amount listed in the Debtor's schedules, unless the Debtor objects to the claim within the time set forth in Debtor's plan.

Classes I through VI are secured creditors of the Debtor.  The Debtor has proposed modified mortgage terms for a number of these creditors to better reflect the market conditions and values of the properties.  The Debtor is seeking to strip liens from Class III because the Class III claimant's claim does not attach to any equity due to the diminished value of the property.  The Class III claimant (and other claimants whose secured claims are transmuted into unsecured due to 11 U.S.C. § 506) will receive an unsecured claim equal in value to the amount of the unsecured portion of the claim.

Class VII claims are the General Unsecured Claims without Priority (excluding Unclassified Claims as defined in the Debtor's Plan) to the extent that they are allowed.  Class VII claims will begin receiving payments in the 12th month of the Plan.

Class VIII equity interests are the equity interests of James Brettner and Glenn Brettner, the managing members of Parkland II, LLC (and Parkland Properties, LLC, the

2

entity that manages the Debtor), the Debtor. James Brettner and Glenn Brettner will receive distributions if, and only if, all senior holders of Classes I-VII claims receive 100% distribution. Since the Plan does not provide for a 100% distribution to all classes with higher priority, James Brettner and Glenn Brettner will not receive any distributions. However, they will maintain their ownership interest in the Debtor after confirmation.

## II. FINANCIAL DIFFICULTIES AND BACKGROUND OF DEBTOR

The Debtor began its operations in December of 2003. The original purpose of the Debtor was to hold properties that it acquired. During the next few years the Debtor began purchasing multi-unit residential buildings with the intention of selling them or holding them as investments. This was a profitable venture until approximately 2008. When the price of real estate began to decrease the Debtor lost hundreds of thousands of dollars in equity and their secured lenders began to require the Debtor to sign new mortgages and notes that further depreciated the assets. In an attempt to wait-out the real estate market the Debtor began reinvest in the properties and cross-collateralizing properties. This strategy only placed additional burdens on the Debtor and the assets it held. Around 2010 tenants that currently rented from the Debtor began to vacate the buildings, demand rental concessions, and otherwise began to refuse to pay the Debtor. The Debtor was forced to evict a number of tenants which negatively affected the cash flow that was being used to pay the secured and unsecured creditors. Lastly, the Debtors were unable to find suitable tenants and the managing members were unable to fully concentrate on renting the vacant units while working with the Lenders and fighting foreclosure suits.

The Debtor approached its secured creditors in 2012 in the hopes of extending the mortgages and notes or to find a creative way to restructure the debts outside of court. Only Bank of America was willing to work with the Debtor to restructure the debts. Being rebuffed by the great majority of lenders, the Debtor fell further behind on its bills, and it

was unable to find alternative financing due to the economic climate and the lack of equity in the properties it held. Due to these and other economic conditions, the Debtor sought relief through chapter 11.

### III. POST-PETITION ACTIVITIES

After filing a petition for relief under Chapter 11 of the Bankruptcy Code, the Debtor was able to focus efforts on maintain and evaluating a strategy to continue to hold the properties it has accumulated while at the same time determining what further efforts must be taken for each building to be profitable.  The Debtor has also negotiated with its creditors (both secured and unsecured) in preparing its Plan and Disclosure Statement.

The Debtor has worked diligently with its secured creditors to secure cash collateral orders (when necessary) that allow the Debtor rehabilitate units so that they are more desirable to potential tenants and reevaluate the current value of its leases. The Debtors greatest focus presently and going forward is to find tenants for its vacant commercial units and renegotiate long-term leases with its present commercial tenants.  Further, the Debtor intends on raising the rental rates to conform with present economic conditions.

**Insurance:**  The Debtor is current with all post-petition premium payments for Property and Liability Insurance.

**Utilities:**  The Debtor is current with all post-petition utility payments.

**Taxes:**  Parkland II, LLC is current with all post-petition taxes.

### IV. ASSETS

The following is a summary of the Debtor's assets at the time of filing:

<u>Real Estate</u>:  The Debtor currently owns the following real property (subject to liens and encumbrances):

1.  1508 Artesian, Chicago, IL (subject to Adversary Case No. 15-238)

4

2. 2318 W Crystal, Chicago, IL

3. 3237 West Thomas, Chicago, IL

4. 932 North Richmond, Chicago, IL

5. 1152 North Kedzie, Chicago, IL

A breakdown of the property values are contained in the Liquidation Analysis attached

hereto as **Exhibit A**.

Operating Accounts: The Debtor did not have any open operating accounts at the

time of filing. The management company that manages the Debtor's assets has since

opened a separate operating account and has segregated all rental income received by the

Debtor's properties since the Petition Date.

### V. CREDITORS

The following is a summary of creditor claims against the Debtor's bankruptcy

estate:

| Creditor Name | Claim Number | Secured Amount | Priority Amount | General Unsecured | Remarks |
|---|---|---|---|---|---|
| CFS Allocation Solutions, LLC | 4-1 | $225,000.00 | - | 148,712.30 | - |
| Bank of America | - | $417,000.00 | | | No Objection |
| Bridgeview Bank Group | 3-1 | $46,432.47 | - | - | No Objection |
| City of Chicago, Water Division | | - | - | $395.66 | No Objection |
| Commonwealth Edison | 1-1 | $273.16 | - | - | No Objection |
| Liberty Bank | - | | | | |
| MRR Parkland Loans, LLC | 2-1 | $528,820.85 | - | - | No Objection |
| People's Gas | - | - | - | $189.00 | |
| | | | | | |
| **Total** | | **$ 1,217,526.48** | | **$149,296.96** | |

### CLASS I CLAIMS:  BANK OF AMERICA

Bank of America holds a secured claim in 1509 Artesian, Chicago, Illinois pursuant to a mortgage and note.  Bank of Ameica's lien on the property is wholly unsecured due to Bridgeview Bank Group's primary mortgage being undersecured by the value of the property.  Pursuant to 11 U.S.C. § 507 Bank of America's claim of is wholly unsecured and the lien will be stripped off the property.  Bank of America's Claim, to the extend allowed, will be paid with other General Unsecured Creditors. Funds to pay the claim will derive from net proceeds of the rental income received on the properties.

### CLASS II CLAIMS: ALLOWED SECURED CLAIM OF  BANK OF AMERICA

Bank of America holds a secured claim in Debtor's property found at 3218 West Crystal, Chicago, Illinois pursuant to a mortgage and note.  The Debtor will pay Bank of America pursuant to the terms of the mortgage and note.  Funds to pay the claim will derive from net proceeds of the rental income received on the property.

### CLASS III CLAIM: CLAIM OF MRR PARKLAND LOANS, LLC

MRR Parkland Loans, LLC holds a second mortgage in Debtor's property found at 3218 West Crystal, Chicago, Illinois and 3214 West Crystal, Chicago, Illinois, pursuant to a mortgage and note.  MRR Parkland Loans, LLC lien on the 3218 West Crystal property is wholly unsecured due to Bank of America's primary mortgage being undersecured by the value of the property.  Pursuant to 11 U.S.C. § 507 MRR Parkland Loans, LLC's claim of $686,329.00 is wholly unsecured and the lien will be stripped off the property.  MRR Parkland Loans, LLC's will receive a total distribution of $50,000.00 (7.2%) for its $686,329.00 claim and it shall release the second mortgage on the 3218 West Crystal property and abandon its interest in 3214 West Crystal property per an agreement.  Funds to pay the claim will derive from net proceeds of the rental income received on the property.

### CLASS IV CLAIM: ALLOWED SECURED CLAIM OF CFS ALLOCATION SOLUTIONS, LLC

CFS Allocation Solutions, successor in interest to Banco Popular North America ("**CFS**"), holds an allowed secured claim on the Debtor's property located at 3237 West Thomas, Chicago, Illinois ("**Property**"), pursuant to a first and senior recorded mortgage. The claim is cross-collateralized with properties located at 1239 South Avers and 306 South Hamlin, Chicago, Illinois, which are not part of this Estate. CFS filed proof of claim No. 1-1 in the amount of $690,952.00 ("**Claim**"). The Debtor will pay CFS's Claim as follows:

CFS will enter into a forbearance agreement with the Debtor ("**Forbearance 1A**"). Payment of Forbearance 1A will be secured by a first and senior mortgage in the amount of $275,000 on the Property. Forbearance 1A will be paid monthly at 5% interest rate (payment of $1,467.26) pursuant to a 30-year amortization schedule with a balloon payment of all amounts due in 84 months. In addition, Debtor will make monthly payments to CFS in the amount equal to 1/12 the annual real estate taxes for the Property. The balance of CFS's Class IV claim ($170,952.24) will be paid pursuant to "**Note 2**". Note 2 will be paid monthly, at 2.5% interest, 20-year amortization schedule and an 84 month balloon (payment of $_____). Provided Forbearance 1A, Forbearance 1B and Forbearance 1C are paid in accordance with their respective terms, Note 2 will be satisfied upon full payment of Forbearance 1A, Forbearance 1B and Forbearance 1C. Upon sale of the Property if prior to the maturity date, CFS shall be entitled to the unpaid balance from Forbearance 1A plus 35% of the net sale proceeds from the Property.

If the Debtor defaults under its Plan obligations to CFS, CFS shall be entitled to exercise its remedies against the Property and repayment of its Claim in the full amount, less any payments made to CFS post confirmation of the Plan.

## CLASS V CLAIMS: ALLOWED SECURED CLAIM OF BRIDGEVEIW BANK GROUP

Bridgeview Bank Group holds a secured claim in Debtor's property found at 1152 North Kedzie, Chicago, Illinois pursuant to a mortgage and note. The Debtor shall pay Bridgeview Bank Group $46,432.47 on the Effective Date in full satisfaction of its claim. Class V is unimpaired. The Debtor will use funds from the rental proceeds and a cash infusion from the principals of the Debtor to make this one-time payment.

## CLASS VI CLAIMS: ALLOWED SECURED CLAIM OF LIBERTY BANK

Liberty Bank holds a secured claim in Debtor's property found at 932 North Richmond, Chicago, Illinois pursuant to a mortgage and note. The Debtor will pay Liberty Bank pursuant to the terms of the mortgage and note. Funds to pay this claim will be paid from the net rental proceeds.

## CLASS VIII CLAIMS: ALLOWED GENERAL UNSECURED CLAIMS WITHOUT PRIORITY

The following table indicates the creditors who possess general unsecured claims without priority, and the Debtor's intentions with regard to each creditor. To the extent these claims are allowed, they will be paid at 11.17% during the Plan, prior to any distribution to the holder of Class IX Equity Interests of the Debtor.

| Creditor | Amount | Claim No. | Debtor's Intent |
|---|---|---|---|
| Commonwealth Edison | $273.16 | 1-1 | No Objection |
| People's Gas | | | No Objection |
| City of Chicago, Water Division | | | No Objection |
| Bank of America | Unknown | | Objection |

### CLASS IX CLAIMS: EQUITY INTERESTS

The holder of Class IX equity interests of the Debtor, Jim and Glenn Brettner will retain their equity interest.  They will receive equity distributions if and only if allowed claims of senior classes approve the Disclosure Statement and Plan or will receive 100% distribution and interest if so specified.

### DISPUTED CLAIMS

The Debtor has not classified any claims as "contingent, unliquidated, or disputed." Claims of Creditors That Filed No Proof of Claim:  The Bar Date for general unsecured claims was January 10, 2014.  If the claim was scheduled by the Debtor as "disputed", "unliquidated", or "contingent", then the Debtor will object to any late filed proof of claim.

### VI.    EXECUTORY CONTRACTS

The Debtor will assume the executory contract between it and Parkland Properties, LLC, the company that manages all of the Debtor's properties.  Any and all leases that are entered into between Parkland II, LLC and tenants of the aforementioned properties are also all assumed.

### VII.    THE PLAN

The Debtor expects to continue its business of rehabbing, holding, and selling real estate.  Having proposed, in good faith, a feasible plan under § 1129(a) to satisfy its secured creditors, priority unsecured creditors, and general unsecured creditors, and other holders of allowed claims.  The plan provides that, should Debtor fail to obtain the votes required to confirm a consensual plan, it will nevertheless ask the Court to confirm the plan under § 1129(b) as being fair, reasonable, and in accordance with Code provisions.

Classification of Claims:

Unclassified Claims consist of Administrative Claims including; (a) claim of the Debtor's Attorneys, in an amount as yet undetermined, but estimated at approximately $55,000.00 (combined for all Parkland entities) and (b) the statutory fees owing to the U.S. Trustee, in an amount as yet undetermined, but expected to be current at the time of confirmation.

The remaining actual claimants fall into the following classifications:

| Creditor Name | Claim Number | Secured Amount | Priority Amount | General Unsecured | Remarks |
|---|---|---|---|---|---|
| Bank of America | - | $417,000.00 | | | No Objection |
| Bridgeview Bank Group | 3-1 | $46,432.47 | - | - | No Objection |
| City of Chicago, Water Division | | - | - | $395.66 | No Objection |
| Commonwealth Edison | 1-1 | $273.16 | - | - | No Objection |
| Liberty Bank | - | | | | |
| MRR Parkland Loans, LLC | 2-1 | $528,820.85 | - | - | No Objection |
| People's Gas | - | - | - | $189.00 | |
| Bank of America | | - | - | Unknown | Objection |
| | | | | | |
| Total | | $ 1,217,526.48 | | $149,296.96 | |

Plan is Fair

The Debtor asserts that its Plan is feasible and fair, and, if creditors do not consent to it, the Debtor will nevertheless ask the Court to confirm it under § 1129(b).

A liquidation analysis is attached hereto as **Exhibit A**. In summary, it shows that the total liquidation value of Debtor's assets is as follows:

| Item | FMV | Liquidation value |
|------|-----|-------------------|
| Real Property | $950,000.00 | $785,000.00 |
| Personal Property<br>· Accounts | $  - | $  - |
| TOTAL FAIR MARKET VALUE | $950,000.00 | |
| TOTAL LIQUIDATION VALUE OF DEBTOR'S ASSETS | | $785,000.00 |

The following Secured Claims and Administrative Priority Claims that would need to be satisfied before any funds would be paid to unsecured creditors:

| Claimant | Estimated Amount |
|----------|------------------|
| Secured Claim of Bank of America | $214,996.00 |
| Secured Claim of Bank of America (3218 West Crystal) | $187,083.00 |
| Secured Claim MRR Parkland Loans, LLC (3214 West Crystal and 3218 West Crystal) | $528,820.85 |
| Secured Claim CFS Allocation Solutions, LLC (3237 West Thomas) | $690,952.00 |
| Secured Claim Liberty Bank (932 North Richmond) | $267,406.00 |
| Secured Claim Bridgeview Bank Group (1152 North Kedzie) | $41,421.00 |
| **TOTAL SECURED AND ADMINISTRATIVE PRIORITY CLAIMS** | **$1,893,378.85** |

Before unsecured creditors would be paid any money, all claimants with a higher priority under 11 U.S.C. § 507(a) must be paid in full from the proceeds of liquidation by a chapter 7 trustee. Under the above liquidation analysis, after claimants with higher priorities are paid, there would be **$0.00** available to pay general unsecured creditors without priority.

11

### Treatment of Claims by the Plan

The unclassified claims of the Debtor's Attorneys, and the United State Trustee will be paid from the rental income of the Debtor's properties.  All fees of the United States Trustee will be paid current prior to confirmation and the Debtor's Attorneys will be paid after the Court approves the fees.

After confirmation, the holder of the Class I through VII claims will be paid pursuant to the terms of the Plan from the rental income generated by the properties. Beginning in the 12th month the Debtor will begin paying the Class VII Claimants (General Unsecured Creditors) 28% of their allowed claims pro-rata on a quarterly basis. The claim of MRR Parkland Loans, LLC will be paid on a quarterly basis beginning in month 3 of the Plan and will continue until it is paid in full. The revenues used to pay the General Unsecured Creditors and MRR Parkland Loans, LLC will be paid from the Debtor's operating account from the continued operations of the business.

### VIII. DEBTOR'S FINANCIAL CONDITION

The Debtor has filed operating reports for Parkland Properties, LLC for the months of December of 2013 and January and February of 2013 and continues to show an operating profit after payments to its secured lenders. While the Debtor did run into problems with vacancies in October and November, it was a short-term issue and the Debtor has been able to fill some of the vacancies and is working to fill others.  The Debtor is working to continue marketing the vacant apartments in its current inventory and will be sending notices of increased rents to current tenants in some buildings.  Further, the Debtor intends to work with its current tenants to enter into long-term leases with more favorable terms and in some instances will be raising rents on certain units.

The Debtor's Five Year Projection of Income and Expenses is attached hereto as **Exhibit C**. Exhibit C indicates that the Debtor anticipates total gross revenue of

$128,685.00 for Year 1, $135,000.00 for Year 2, $135,000.00 for Year 3, $140,000.00 for Year 4, and $145,000.00 for Year 5. As is set forth in full detail in **Exhibit C** hereto, the Debtor estimates that it will have funds available for plan payments in the following amounts; $5,952.00 in year 1, $9,663.00 in year 2, $7114.00 year 3, $8438.00 in year 4 and $10,609.00 in year 5. Projected plan payments are set forth in **Exhibit D**, attached hereto. These figures represent estimates, actual plan payments may increase or decrease depending on the rental income and other market conditions.

## VIII . EFFECT OF CONFIRMATION OF PLAN

A.    INJUNCTION RELATING TO PLAN

1.    STATUTORY INJUNCTION

AS OF THE EFFECTIVE DATE, EXCEPT AS SET FORTH IN THE PLAN, ALL PERSONS THAT HAVE HELD, CURRENTLY HOLD, OR MAY HOLD A CLAIM OR OTHER DEBT OR LIABILITY THAT IS ADDRESSED IN THE PLAN ARE PERMANENTLY ENJOINED FROM TAKING ANY OF THE FOLLOWING ACTIONS ON ACCOUNT OF SUCH CLAIMS, DEBTS, LIABILITIES OR INTEREST, OTHER THAN ACTIONS BROUGHT TO ENFORCE ANY RIGHTS OR OBLIGATIONS UNDER THE PLAN; (I) COMMENCING OR CONTINUING IN ANY MANNER, DIRECTLY OR INDIRECTLY, ANY SUIT, ACTION OR OTHER PROCEEDING OF ANY KIND AGAINST OR AFFECTING THE DEBTOR OR ITS PROPERTY; (II) CREATING, PERFECTING OR OTHERWISE ENFORCING IN ANY MANNER, DIRECTLY OR INDIRECTLY, ANY LIEN OR OTHER ENCUMBRANCE OF ANY KIND AGAINST THE DEBTOR OR ITS PROPERTY, (III) ENFORCING, LEVYING, ATTACHING, COLLECTING, OR OTHERWISE RECOVERING BY ANY MANNER OR MEANS, WHETHER DIRECTLY OR INDIRECTLY, ANY JUDGMENT AWARD, DECREE OR ORDER AGAINST THE DEBTOR OR ITS PROPERTY; (IV) ASSERTING ANY RIGHT OF SETOFF,

SUBROGATION OR RECOUPMENT DIRECTLY OR INDIRECTLY, AGAINST ANY DEBT, LIABILITY OR OTHER OBLIGATIONS DUE TO THE DEBTOR OR ITS PROPERTY; (V) COMMENCING OR CONTINUING, IN ANY MANNER OR ANY PLACE, ANY ACTION THAT DOES NOT COMPLY WITH OR IS INCONSISTENT WITH THE PROVISIONS OF THE PLAN OR THE CONFIRMATION ORDER; AND (VI) PROSECUTING OR OTHERWISE ASSERTING ANY RIGHT, CLAIM OR CAUSE OF ACTION RELEASED PURSUANT TO THE PLAN TO THE EXTENT ALLOWED UNDER THE PLAN AND.

### C.    Modification

The Plan Proponent may modify the Plan and/or the Disclosure Statement at any time before confirmation.

### IX. TAX CONSEQUENCES

THE FOLLOWING SUMMARY IS NOT A SUBSTITUTE FOR CAREFUL TAX PLANNING AND ADVICE BASED ON THE PARTICULAR CIRCUMSTANCES OF EACH HOLDER OF A CLAIM OR INTEREST.  EACH HOLDER OF A CLAIM OR INTEREST IS URGED TO CONSULT HIS, HER, OR ITS OWN TAX ADVISORS AS TO THE U.S. FEDERAL INCOME TAX, STATE, LOCAL AND/OR FOREIGN LAW CONSEQUENCES OF THE PLAN.

### A.    Consequences to Debtor

#### 1.    Debtor Taxation

The Debtor will continue being taxed as a Limited Liability Corporation.

#### 2.    Cancellation of Debt

In general and absent an exception, a debtor will realize and recognize cancellation of debt income ("COD Income") upon satisfaction of its outstanding indebtedness for total consideration less than the amount of such indebtedness.  The amount of COD Income, in

general, is the excess of (a) the accrued indebtedness satisfied, over (b) the sum of (x) the amount of Cash paid, and (y) the fair market value of any new consideration given in satisfaction of such indebtedness at the time of the exchange.

A debtor will not, however, be required to include any amount of COD Income in gross income if the debtor's debt is discharged pursuant to a proceeding under chapter 11 of the Bankruptcy Code. Instead, as a consequence of such exclusion, a debtor must reduce its tax attributes by the amount of COD Income that it excluded from gross income under *section 108 of the Internal Revenue Code* In general, tax attributes will be reduced in the following order: (a) Net Operating Losses ("NOL"); (b) most tax credits and capital loss carryovers; and (c) tax basis in assets.

B.    <u>Consequences to Holders of Allowed Claims</u>

(i)    Holders of Secured Claims

The holders of Secured Claims may recognize income, gain or loss for United States federal income tax purposes with respect to the discharge of their Claims. A holder whose Secured Claim is reinstated pursuant to the Plan will not recognize gain or loss unless either (i) such holder is treated as having received interest, damages, or other income in connection with the reinstatement or (ii) such reinstatement is considered a "significant modification" of the Claim. A holder that receives cash or other property in exchange for its Claim pursuant to the Plan will generally recognize income, gain or loss for United States federal income tax purposes in an amount equal to the difference between (i) the amount of cash or fair market value of other property, if any, received in exchange for its Claim and (ii) the holder's adjusted tax basis in its Claim. The character of such gain or loss as capital gain or loss or as ordinary income or loss will be determined by a number of factors, including the tax status of the holder, the nature of the Claim in such holder's hands, whether the Claim constitutes a capital asset in the hands of the holder, whether the Claim

was purchased at a discount, and whether and to what extent the holder has previously claimed a bad debt deduction with respect to its Claim.

(ii)     Holders of Other Priority Claims

A Claimant whose Claim is paid in full or otherwise discharged on the Effective Date will recognize income, gain or loss for United States federal income tax purposes in an amount equal to the difference between (i) the amount of cash received by such holder in respect of its Claim and (ii) the Claimant's adjusted tax basis in the Claim.  The character of such gain or loss as capital gain or loss or as ordinary income or loss will be determined by a number of factors which must be discussed with your tax professional.  A Claimant recognizing a loss as a result of the Plan may be entitled to a bad debt deduction, either in the taxable year of the Effective Date or a prior taxable year.

(iii)     Holders of General Unsecured Claims

A holder of General Unsecured Claims that receive cash in discharge of its Claim pursuant to the Plan will generally recognize income, gain , or loss for United States federal income tax purposes in an amount equal to the difference between (i) the amount of cash received in exchange for its Claim and (ii) the holder's adjusted tax basis in its Claim.  The character of such gain or loss as capital gain or loss or as ordinary income or loss will be determined by a number of factors of which you should discuss with your tax professional.  A holder recognizing a loss as a result of the Plan may be entitled to a bad debt deduction, either in the taxable year of the Effective Date or a prior taxable year.

C.     Importance of Obtaining Professional Tax Assistance

Each Creditor will encounter certain U.S. federal income tax consequences as a result of the Plan based on the Internal Revenue Code, Treasury Regulations thereunder, and administrative and judicial interpretations and practice in effect on the date of the Plan's confirmation, all of which are subject to change, with possible retroactive effect.  Due

to the lack of definitive judicial and administrative authority in a number of areas, substantial uncertainty may exist with respect to some of the tax consequences you may face.

No opinion of counsel has been obtained, and the Debtor does not intend to seek a ruling from the IRS as to any of the tax consequences of the Plan. Further, there can be no assurance that the IRS will not challenge one or more of the tax consequences of the Plan. As such, it is imperative that each Creditor carefully plan for his, her, or its particular circumstances. Each Creditor is urged to consult his, her, or its own tax advisors as to the U.S. federal income tax consequences, as well as other tax consequences, including any applicable state, local, and foreign law.

IRS CIRCULAR 230 DISCLOSURE: TO ENSURE COMPLIANCE WITH REQUIREMENTS IMPOSED BY THE IRS, ANY TAX ADVICE CONTAINED IN THIS DISCLOSURE STATEMENT IS NOT INTENDED OR WRITTEN TO BE USED, AND CANNOT BE USED, BY ANY TAXPAYER FOR THE PURPOSE OF AVOIDING TAX-RELATED PENALTIES UNDER THE U.S. INTERNAL REVENUE CODE. THE TAX ADVICE CONTIANED IN THIS DISCLOSURE STATEMENT WAS WRITTEN TO SUPPORT THE PROMOTION OR MARKETING OF THE TRANSACTIONS DESCRIBED IN THE DISCLOSURE STATEMENT. EACH TAXPAYER SHOULD SEEK ADVICE BASED ON THE TAXPAYER'S PARTICULAR CIRCUMSTANCES FROM AN INDEPENDENT TAX ADVISOR.

## IX. THE PURPOSE OF THIS DISCLOSURE STATEMENT

Together with this Disclosure Statement, the Debtor has filed with the Court its proposed Plan of Reorganization. The purpose of this Disclosure Statement is to provide each creditor with a description of the Plan to aid her/him in making an informed decision

as to whether to accept or reject the Plan. Each creditor in an impaired class is entitled to vote on acceptance of the Plan. A copy of the Plan accompanies this Disclosure Statement. THE DISCLOSURE STATEMENT PROVIDES A BRIEF SUMMARY OF THE PLAN AND OTHER INFORMATION WITH RESPECT THERETO AND IS NOT INTENDED TO TAKE THE PLACE OF THE PLAN. EACH CREDITOR IS URGED TO STUDY THE PLAN IN FULL AND TO CONSULT WITH COUNSEL WITH RESPECT TO THE PLAN AND ITS EFFECT ON ITS RIGHTS.

The Court will set a date for a hearing on the confirmation of the Plan. Creditors may vote on the Plan by filing out and mailing the accompanying Ballot for Accepting or Rejecting The Plan to: Closing Department, 7th Floor Dirksen Building: 219 South Dearborn St., Chicago, IL 60604. In order for the Plan to be accepted, claimants holding at least two-thirds (2/3) in amount and more than one-half (1/2) in number of the allowed claims in impaired classes who vote, must vote in favor of the Plan. The Plan might be confirmed with the acceptance of one Class of Claimants as described hereafter in the final paragraph.

NO REPRESENTATIONS CONCERNING THE DEBTOR ARE AUTHORIZED THAN AS SET FORTH IN THIS STATEMENT. ANY REPRESENTATIONS OR INDUCEMENTS MADE TO SECURE YOUR ACCEPTANCE WHICH ARE OTHER THAN AS CONTAINED IN THIS STATEMENT SHOULD NOT BE RELIED UPON BY YOU IN ARRIVING AT YOUR DECISION, AND SUCH ADDITIONAL REPRESENTATIONS AND INDUCEMENTS SHOULD BE REPORTED TO THE OFFICE OF THE UNITED STATES TRUSTEE WHICH, IN TURN, SHALL DELIVER SUCH INFORMATION TO THE BANKRUPTCY COURT FOR SUCH ACTION AS MAY BE DEEMED APPROPRIATE.

THE INFORMATION CONTAINED HEREIN HAS NOT BEEN SUBJECT TO CERTIFIED AUDIT. THE DEBTORS DO NOT WARRANT OR REPRESENT THE INFORMATION CONTAINED HEREIN IS WITHOUT ANY INACCURACY, ALTHOUGH CONSIDERABLE EFFORT HAS BEEN MADE TO BE ACCURATE.

The Debtor has proposed his Plan of Reorganization in good faith and in compliance with the applicable provisions of the Bankruptcy Code.  Regardless of the results of voting under any class of claims, the Debtor may ask the Court to confirm the Plan of Reorganization which can occur as provided by law if the Court finds that the Plan does not discriminate unfairly and is fair and equitable with respect to the rejecting creditors described is such class.  This option can occur only if the Court makes the requisite findings after being presented with supporting evidence.

Dated: August 17, 2015

Respectfully submitted,
Parkland II, LLC

By:   /s/ Glenn Brettner
        Managing Member

        /s/ Michael V. Ohlman
        One of its attorneys

Michael V. Ohlman #6294512
MICHAEL V. OHLMAN, P.C.
308 West Erie, Suite 300
Chicago, Illinois 60606
Phone: 312-869-4155
mvohlman@ohlmanlaw.com

# EXHIBIT E

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| Parkland Properties, LLC, *et al.* [1] | ) | Case No.: 13-22702 |
| | ) | Jointly Administered |
| | ) | |
| Debtors. | ) | Judge Donald R. Cassling |
| | ) | |

SIXTH AMENDED DISCLOSURE STATEMENT
Parkland VI, LLC

This Sixth Amended Disclosure Statement (the "Disclosure Statement") is filed by
the Debtor Parkland VI, LLC (the "Debtor"), dated August 17, 2015 in connection with the
Debtor's Fifth Modified Plan of Reorganization ("Plan") also filed by the Debtor on August
17, 2015. This Disclosure Statement is intended to provide creditors with information of a
kind and in sufficient detail of the Debtor's history and of the condition of the Debtor's
books and records to allow creditors to make an informed judgment when voting on the
Plan. Creditors are advised that, after review, the Court may approve the Disclosure
Statement, but such approval does not constitute endorsement.

I. SUMMARY:

On June 25, 2013 (the "Petition Date"), the Debtor filed a voluntary petition under
Chapter 11 of the United States Bankruptcy Code (the "Code"). The Debtor remains in
possession of its assets and continues to generate income pursuant to §§ 1107 and 1108 of
the Code. The Debtor, a condominium developer, conducts its business at 3217 West
Potomac, Chicago, Illinois.

The Debtor is proposing a Five-Year Plan, in which the Debtor will continue to
rehab rental units, hold rental properties that will continue to be managed by Parkland

---

[1] The "Debtors" include: Parkland Properties, LLC (Case No. 13-22702); Parkland II LLC
("Case No. 13-25121); Parkland III, LLC (Case No. 13-25125); Parkland IV, LLC (Case No.
13-26018); and Parkland VI, LLC (Case No. 13-26811).

1

Properties, LLC. Pursuant to the Plan, James Brettner will be the disbursing agent. The Plan will be funded from future revenues generated from renting, rehabbing, and in some cases, selling buildings if necessary. In the Plan, claims are divided into Unclassified, Class I, Class II, Class III, and Class IV, Class V, Class VI, Class VII, Class VIII, and Class IX equity interests.

The Debtor plans to pay holders of Claims of Classes I – VII claims pursuant to the terms set forth in the Plan. Debtor believes that it will have the necessary funds to pay Classes I – VII 100% of their allowed secured claims based on the terms (sometimes modified to better reflect the market conditions) described herein. Debtor is also confident that it can pay all General Unsecured Creditors 10.47% within the 5-years of the Plan.

Creditors who have been scheduled but have not filed proofs of claim, and have not been listed as "disputed, unliquidated, or contingent", will be paid according to the claim amount listed in the Debtor's schedules, unless the Debtor objects to the claim within the time set forth in Debtor's plan.

Classes I through VII are secured creditors of the Debtor. The Debtor has proposed modified mortgage terms for the Class III, IV, and VI claimants to better reflect the market conditions and value of the property. The Debtor is seeking to strip liens from Class II and V because the value of the property has dramatically decreased or pursuant to an agreement. The Class II, III, IV, and VI claimants (and other claimants whose secured claims are transmuted into unsecured due to 11 U.S.C. § 506) will receive an unsecured claim equal in value to the amount of the unsecured portion of the claim.

Class VIII claims are the General Unsecured Claims without Priority (excluding Unclassified Claims as defined in the Debtor's Plan) to the extent that they are allowed. Class VIII claims will begin receiving payments in the 12th month of the Plan.

Class IX equity interests are the equity interests of James Brettner and Glenn Brettner, the managing members of Parkland VI, LLC (and Parkland Properties, LLC, the entity that manages the Debtor), the Debtor. James Brettner and Glenn Brettner will receive distributions if, and only if, all senior holders of Classes I-VII claims receive 100% distribution. Since the Plan does not provide for a 100% distribution to all classes with higher priority, James Brettner and Glenn Brettner will not receive any distributions. However, they will maintain their ownership interest in the Debtor after confirmation.

## II. FINANCIAL DIFFICULTIES AND BACKGROUND OF DEBTOR

The Debtor began it operations in December of 2003. The original purpose of the Debtor was to hold properties that it acquired. During the next few years the Debtor began purchasing multi-unit residential buildings with the intention of selling them or holding them as an investment. This was a profitable venture until approximately 2008. When the price of real estate began to decrease the Debtor lost hundreds of thousands of dollars in equity and their secured lenders began to require the Debtor to sign new mortgages and notes that further depreciated the assets. In an attempt to wait-out the real estate market the Debtor began reinvest in the properties and cross-collateralizing properties. This strategy only placed additional burdens on the Debtor and the assets it held. Around 2010 tenants that currently rented from the Debtor began to vacate the buildings, demand rental concessions, and otherwise began to refuse to pay the Debtor. The Debtor was forced to evict a number of tenants which negatively affected the cash flow that was being used to pay the secured and unsecured creditors. Lastly, the Debtor was unable to find suitable tenants and the managing members were unable to fully concentrate on renting the vacant units while working with the Lenders and fighting foreclosure suits.

The Debtor approached its secured creditors in 2012 in the hopes of extending the mortgages and notes or to find a creative way to restructure the debts outside of court.

Only Bank of America was willing to work with the Debtor to restructure the debts. Being rebuffed by the great majority of lenders, the Debtor fell further behind on its bills, and it was unable to find alternative financing due to the economic climate and the lack of equity in the properties it held. Due to these and other economic conditions, the Debtor sought relief through chapter 11.

### III. POST-PETITION ACTIVITIES

After filing a petition for relief under Chapter 11 of the Bankruptcy Code, the Debtor was able to focus efforts on maintain and evaluating a strategy to continue to hold the properties it has accumulated while at the same time determining what further efforts must be taken for each building to be profitable. The Debtor has also negotiated with its creditors (both secured and unsecured) in preparing its Plan and Disclosure Statement.

The Debtor has worked diligently with its secured creditors to secure cash collateral orders (when necessary) that allow the Debtor rehabilitate units so that they are more desirable to potential tenants and reevaluate the current value of its leases. The Debtors greatest focus presently and going forward is to find tenants for its vacant commercial units and renegotiate long-term leases with its present commercial tenants. Further, the Debtor intends on raising the rental rates to conform with present economic conditions.

**Insurance:** The Debtor is current with all post-petition premium payments for Property and Liability Insurance.

**Utilities:** The Debtor is current with all post-petition utility payments.

**Taxes:** Parkland VI, LLC is current with all post-petition taxes.

### IV. ASSETS

The following is a summary of the Debtor's assets at the time of filing:

Real Estate: The Debtor currently owns the following real property (subject to liens and encumbrances):

1. 3217 West Potomac, Chicago, IL

2. 4201 West North, Chicago, IL

3. 306 South Hamlin, Chicago, IL

4. 310 South Hamlin, Chicago, IL

5. 1514 South Albany, Chicago, IL

A breakdown of the property values are contained in the Liquidation Analysis attached hereto as **Exhibit A**.

Operating Accounts: The Debtor did not have any open operating accounts at the time of filing. The management company that manages the Debtor's assets has since opened a separate operating account and has segregated all rental income received by the Debtor's properties since the Petition Date.

## V. CREDITORS

The following is a summary of creditor claims against the Debtor's bankruptcy estate:

| Creditor Name | Claim Number | Secured Amount | Priority Amount | General Unsecured | Remarks |
|---|---|---|---|---|---|
| CFS Allocation Solutions, LLC | 3-1 | $94,000.00 | | $96,783.10 | No Objection |
| Commonwealth Edison | - | | | $175.00.00 | No Objection |
| Chase Bank | | | | $60,000.00 | |
| American Enterprise Bank | 6-1 | $496,811.10 | | | No Objection |
| City of Chicago, Department of Water | 3-1 | $625.77 | | | |
| City of Chicago Department of Water | 2-1 | $507.13 | | | No Objection |
| City of Chicago | 1-1 | $2,878.86 | | | No Objection |

| | | | | | |
|---|---|---|---|---|---|
| Water | | | | | |
| People's Gas | - | | | $258.00 | No Objection |
| CFS Allocation Solutions, LLC | 7-1 | $97,000.00 | | $64,063.87 | No Objection |
| Bridgeview Bank Group | 5-1 | $606,600.86 | | | No Objection |
| MRR Parkland Properties, LLC | 4-1 | $530,191.45 | | | No Objection |
| | | | | | |
| Total | | $ 1,365,203.21 | | $859516.94 | |

## CLASS I CLAIM: CLAIM OF GREENTREE LENDING

Greentree Lending holds a third mortgage in Debtor's property found at 3217 West

Potomac, Chicago, Illinois pursuant to a mortgage and note.  Greentree's lien on the

property is wholly unsecured due to Bridgeview Bank Group's primary mortgage being

undersecured by the value of the property.  Pursuant to 11 U.S.C. § 507 Chase Bank's claim

of $195,468.00 is wholly unsecured and the lien will be stripped off the property.

Greentree's Claim will be paid with other General Unsecured Creditors. Funds to pay the

claim will derive from net proceeds of the rental income received on the properties.  Class I

is not entitled to vote on the Plan.

## CLASS II CLAIM: CLAIM OF CHASE BANK

Chase Bank holds a second mortgage in Debtor's property found at 3217 West

Potomac, Chicago, Illinois pursuant to a mortgage and note.  Chase Bank's lien on the

property is wholly unsecured due to Bank of America's primary mortgage being

undersecured by the value of the property.  Pursuant to 11 U.S.C. § 507 Chase Bank's claim

of $60,000.00 is wholly unsecured and the lien will be stripped off the property.  Chase

Bank's Claim will be paid with other General Unsecured Creditors. Funds to pay the claim

will derive from net proceeds of the rental income received on the property. Class II is

impaired.

6

### CLASS III CLAIM: ALLOWED SECURED CLAIM OF CFS ALLOCATION SOLUTIONS, LLC

CFS Allocation Solutions ("**CFS**") holds an allowed secured claim on the Debtor's property located at 306 South Hamlin, Chicago, Illinois ("Property"), pursuant to a first and senior recorded mortgage. The claim is cross-collateralized with properties located at 3237 West Thomas and 1239 South Avers, Chicago, Illinois, which are not part of this Estate. CFS filed proof of claim No. 1-1 in the amount of $690,952.00 ("**Claim**"). The Debtor will pay CFS's Claim as follows:

CFS will enter into a forbearance agreement with the Debtor ("**Forbearance 1C**"). Payment of Forbearance 1C will be secured by a first and senior mortgage in the amount of $125,000.00 on the Property. Forbearance 1C will be paid monthly at 5% interest rate (payment of $730.74) pursuant to a 30-year amortization schedule with a balloon payment of all amounts due in 84 months. In addition, Debtor will make monthly payments to CFS in the amount equal to 1/12 the annual real estate taxes for the property. The balance of CFS's Class III claim ($170,952.24) will be paid pursuant to "**Note 2**". Note 2 will be paid monthly, at 2.5% interest, 20-year amortization schedule and an 84 month balloon (payment of $_____). Provided Forbearance 1A, Forbearance 1B and Forbearance 1C are paid in accordance with their respective terms, Note 2 will be satisfied upon full payment of Forbearance 1A, Forbearance 1B and Forbearance 1C. Upon sale of the Property if prior to the maturity date, CFS shall be entitled to the unpaid balance from Forbearance 1C plus 35% of the net sale proceeds from the Property.

If the Debtor defaults under its Plan obligations to CFS, CFS shall be entitled to exercise its remedies against the Property and repayment of its Claim in the full amount, less any payments made to CFS post confirmation of the Plan.

### CLASS IV CLAIMS: ALLOWED SECURED CLAIM OF AMERICAN ENTERPRISE

American Enterprise Bank holds a secured claim in Debtor's property found 4201 West North, Chicago, Illinois pursuant to a mortgage and note. American Enterprise Bank filed a proof of claim listing the claim against the property as fully secured in the amount of $496,811.10. . Debtor shall surrender 4201 West North Ave, Chicago, Illinois to First American Bank. American Enterprise Bank will also receive an unsecured claim of $493,000. Class IV is not impaired.

### CLASS V CLAIM: CLAIM OF MRR PARKLAND PROPERTIES, LLC

MRR Parkland Properties, LLC holds a mortgage on Debtor's property found 310 South Hamlin, Chicago, Illinois and 3214 West Crystal, Chicago, Illinois, pursuant to a mortgage and note. MRR Parkland Properties, LLC has agreed to release the lien on this property. In return, MRR Parkland Properties, LLC's will receive a total distribution of $50,000.00 (7.2%) for its $530,191.45.00 claim. Funds to pay the claim will derive from net proceeds of the rental income received on the property. Class V is impaired.

### CLASS VI CLAIMS: ALLOWED SECURED CLAIM OF BRIDGEVIEW BANK GROUP

Bridgeview Bank Group holds a secured claim in Debtor's property found 1514 South Albany, Chicago, Illinois pursuant to a mortgage and note. Bridgeview Bank Group filed a proof of claim(5-1) in the amount of $606,600.86. Debtor shall surrender 1514 South Albany, Chicago, Illinois to Bridgeview Bank Group as the indubitable equivalent, and in full satisfaction of all Class VI Claims against the Estate. Class VI is not impaired.

### CLASS VII CLAIMS: ALLOWED SECURED CLAIM OF CITY OF CHICAGO WATER

City of Chicago Water Department holds a secured claim in Debtor's pursuant to a lien. The Debtor will pay the Class VII claimant 100% of its claim on or before the first

8

anniversary of the Effective Date of the Plan.  Funds to pay this claim will be paid from the net rental proceeds.  Class VII is not impaired.

### CLASS VIII CLAIMS: BRIDGEVIEW BANK GROUP

Bridgeview Bank Group holds a secured claim in Debtor's property found 3217 West Potomac, Chicago, Illinois pursuant to a judgment lien in the amount of $690,000.  This is the primary lien on the property per the Cook County Recorder of Deeds. The Debtor and Bridgeview Bank have agreed to modify the automatic stay with respect to this property so that Bridgeview may continue its foreclosure action and be declared the primary lienholder. Once a determination is made in the state court the Debtor and Bridgeview Bank Group will enter into a mortgage by which the Debtor will pay Bridgeview Bank Group based on a value of $225,000.

### CLASS IX: ALLOWED GENERAL UNSECURED CLAIMS WITHOUT PRIORITY

The following table indicates the creditors who possess general unsecured claims without priority, and the Debtor's intentions with regard to each creditor.  To the extent these claims are allowed, they will be paid at 6.79% during the Plan, prior to any distribution to the holder of Class IX Equity Interests of the Debtor.

| Creditor | Amount | Claim No. | Debtor's Intent |
|---|---|---|---|
| Chase Bank | $60,000.00 | - | No Objection |
| CFS Allocation Solutions, LLC | 64,063.87 | 7-1 | No Objection |
| First American Bank | $104,541.65 | 2-1 | No Objection |
| People's Gas | $475.00 | - | No Objection |
| Commonwealth Edison | $175.00 | - | No Objection |
| People's Gas | $258.00 | - | No Objection |
| Greentree Lending | Unknown | - | Objection |
| American Enterprise Bank | $93,000 | - | No Objection |

## CLASS IX CLAIMS: EQUITY INTERESTS

The holder of Class X equity interests of the Debtor, Jim and Glenn Brettner will retain their equity interest. They will receive equity distributions if and only if allowed claims of senior classes approve the Disclosure Statement and Plan or will receive 100% distribution and interest if so specified.

## DISPUTED CLAIMS

The Debtor filed claims as either "contingent, unliquidated, or disputed" and the holders of these claims have not filed a proof of claim within the required time. Therefore, the holders of these claims will not be entitled to vote or receive any distribution, pursuant to Bankruptcy Rule 3003(c)(2).

<u>Claims of Creditors That Filed No Proof of Claim</u>: The Bar Date for general unsecured claims was <u>January 10, 2014</u>. If the claim was scheduled by the Debtor as "disputed", "unliquidated", or "contingent", then the Debtor will object to any late filed proof of claim.

## VI.   EXECUTORY CONTRACTS

The Debtor will reject all executory contracts except those leases that are entered into between Parkland VI, LLC.

## VII.   THE PLAN

The Debtor expects to continue its business of rehabbing, holding, and selling real estate. Having proposed, in good faith, a feasible plan under § 1129(a) to satisfy its secured creditors, priority unsecured creditors, and general unsecured creditors, and other holders of allowed claims. The plan provides that, should Debtor fail to obtain the votes required to confirm a consensual plan, it will nevertheless ask the Court to confirm the plan under § 1129(b) as being fair, reasonable, and in accordance with Code provisions.

<u>Classification of Claims:</u>

10

Unclassified Claims consist of Administrative Claims including; (a) claim of the
Debtor's Attorneys, in an amount as yet undetermined, but estimated at approximately
$55,000.00 (combined for all Parkland entities) and (b) the statutory fees owing to the U.S.
Trustee, in an amount as yet undetermined, but expected to be current at the time of
confirmation.

The remaining actual claimants fall into the following classifications:

| Creditor Name | Claim Number | Secured Amount | Priority Amount | General Unsecured | Remarks |
|---|---|---|---|---|---|
| CFS Allocation Solutions, LLC | 3-1 | $94,000.00 | | $96,783.10 | No Objection |
| Commonwealth Edison | - | | | $175.00.00 | No Objection |
| Chase Bank | | | | $60,000.00 | |
| American Enterprise Bank | 6-1 | $496,811.10 | | 1 | No Objection |
| City of Chicago, Department of Water | 3-1 | $625.77 | | | |
| City of Chicago Department of Water | 2-1 | $507.13 | | | No Objection |
| City of Chicago Water | 1-1 | $2,878.86 | | | No Objection |
| People's Gas | - | | | $258.00 | No Objection |
| CFS Allocation Solutions, LLC | 7-1 | $97,000.00 | | $64,063.87 | No Objection |
| Bridgeview Bank Group | 5-1 | $606,600.86 | | $291,600.86 | No Objection |
| MRR Parkland Properties, LLC | 4-1 | $530,191.45 | | | No Objection |
| | | | | | |
| Total | | $ 1,365,203.21 | | $859516.94 | |

## Plan is Fair

The Debtor asserts that its Plan is feasible and fair, and, if creditors do not consent to it, the Debtor will nevertheless ask the Court to confirm it under § 1129(b).

A liquidation analysis is attached hereto as **Exhibit A**. In summary, it shows that the total liquidation value of Debtor's assets is as follows:

| Item | FMV | Liquidation value |
|------|-----|-------------------|
| Real Property | $574,000.00 | $500,000.00 |
| Personal Property<br>· Laidley Tower TIC | $ 2,500.00 | $ 2,000.00 |
| TOTAL FAIR MARKET VALUE | $576,500.00 | |
| TOTAL LIQUIDATION VALUE OF DEBTOR'S ASSETS | | $502,000.00 |

The following Secured Claims and Administrative Priority Claims that would need to be satisfied before any funds would be paid to unsecured creditors:

LIABILITIES

| Less: Secured Liabilities | Secured Claim Amount |
|---------------------------|----------------------|
| Secured Claim of Bank of America (3217 West Potomac) | $194,244.00 |
| Secured Claim of Chase Bank (2nd Mortgage: 3217 West Potomac) | $113,991.00 |
| Secured Claim American Enterprise (4201 West North) | $467,870.00 |
| Secured Claim CFS Allocation Solutions, LLC (306 South Hamlin) | $690,952.00 |
| Secured Claim MRR Parkland Properties, LLC (310 South Hamlin) | $686,329.00 |
| Secured Claim Bridgeview Bank Group (1514 South Albany) | $587,132.00 |
| Secured Claim of City of Chicago, Water Department | $4,011.76 |

| Less: Other Liabilities | |
|-------------------------|---|
| Estimated Chapter 7 Trustee Fees | $5,000.00 |
| Estimated Trustee's Broker | $17,000.00 |
| Estimated Trustee's Real Estate Counsel | $22,500.00 |

TOTAL LIABILITIES                                      $2,789,029.76

Before unsecured creditors would be paid any money, all claimants with a higher priority under 11 U.S.C. § 507(a) must be paid in full from the proceeds of liquidation by a chapter 7 trustee.  Under the above liquidation analysis, after claimants with higher priorities are paid, there would be $0.00 available to pay general unsecured creditors without priority.

### Treatment of Claims by the Plan

The unclassified claims of the Debtor's Attorneys, and the United State Trustee will be paid from the rental income of the Debtor's properties.  All fees of the United States Trustee will be paid current prior to confirmation and the Debtor's Attorneys will be paid after the Court approves the fees.

After confirmation, the holder of the Class I through VII claims will be paid pursuant to the terms of the Plan from the rental income generated by the properties. Beginning in the 12th month the Debtor will begin paying the Class VIII Claimants (General Unsecured Creditors) 10.47% of their allowed claims pro-rata on a quarterly basis. The revenues used to pay the General Unsecured Creditors will be paid from the Debtor's operating account.

### VIII. DEBTOR'S FINANCIAL CONDITION

The Debtor has filed operating reports for Parkland Properties, LLC for the months of December of 2013 and January and February of 2014, and continues to show an operating profit after payments to its secured lenders. While the Debtor did run into problems with vacancies in October and November, it was a short-term issue and the Debtor has been able to fill some of the vacancies and is working to fill others.  The Debtor

is working to continue marketing the vacant apartments in its current inventory and will be sending notices of increased rents to current tenants in some buildings. Further, the Debtor intends to work with its current tenants to enter into long-term leases with more favorable terms and in some instances will be raising rents on certain units.

The Debtor's Five Year Projection of Income and Expenses is attached hereto as **Exhibit D**. Exhibit C indicates that the Debtor anticipates total gross revenue of $153,999 for Year 1, $165,000.00 for Year 2, $165,000.00 for Year 3, $175,000.00 for Year 4, and $175,000.00 for Year 5. As is set forth in full detail in **Exhibit D** hereto, the Debtor estimates that it will have funds available for plan payments in the following amounts; $20,389.00 in year 1, $28,430.00 in year 2, $27,343.00 year 3, $42,907.00 in year 4 and $39,882.00 in year 5. Projected plan payments are set forth in **Exhibit E**, attached hereto. These figures represent estimates, actual plan payments may increase or decrease depending on the rental income and other market conditions.

VIII . EFFECT OF CONFIRMATION OF PLAN

A.    <u>INJUNCTION RELATING TO PLAN</u>

    1.    <u>STATUTORY INJUNCTION</u>

AS OF THE EFFECTIVE DATE, EXCEPT AS SET FORTH IN THE PLAN, ALL PERSONS THAT HAVE HELD, CURRENTLY HOLD, OR MAY HOLD A CLAIM OR OTHER DEBT OR LIABILITY THAT IS ADDRESSED IN THE PLAN ARE PERMANENTLY ENJOINED FROM TAKING ANY OF THE FOLLOWING ACTIONS ON ACCOUNT OF SUCH CLAIMS, DEBTS, LIABILITIES OR INTEREST, OTHER THAN ACTIONS BROUGHT TO ENFORCE ANY RIGHTS OR OBLIGATIONS UNDER THE PLAN; (I) COMMENCING OR CONTINUING IN ANY MANNER, DIRECTLY OR INDIRECTLY, ANY SUIT, ACTION OR OTHER PROCEEDING OF ANY KIND AGAINST OR AFFECTING THE DEBTOR OR ITS PROPERTY; (II) CREATING, PERFECTING OR

OTHERWISE ENFORCING IN ANY MANNER, DIRECTLY OR INDIRECTLY, ANY LIEN OR OTHER ENCUMBRANCE OF ANY KIND AGAINST THE DEBTOR OR ITS PROPERTY, (III) ENFORCING, LEVYING, ATTACHING, COLLECTING, OR OTHERWISE RECOVERING BY ANY MANNER OR MEANS, WHETHER DIRECTLY OR INDIRECTLY, ANY JUDGMENT AWARD, DECREE OR ORDER AGAINST THE DEBTOR OR ITS PROPERTY; (IV) ASSERTING ANY RIGHT OF SETOFF, SUBROGATION OR RECOUPMENT DIRECTLY OR INDIRECTLY, AGAINST ANY DEBT, LIABILITY OR OTHER OBLIGATIONS DUE TO THE DEBTOR OR ITS PROPERTY; (V) COMMENCING OR CONTINUING, IN ANY MANNER OR ANY PLACE, ANY ACTION THAT DOES NOT COMPLY WITH OR IS INCONSISTENT WITH THE PROVISIONS OF THE PLAN OR THE CONFIRMATION ORDER; AND (VI) PROSECUTING OR OTHERWISE ASSERTING ANY RIGHT, CLAIM OR CAUSE OF ACTION RELEASED PURSUANT TO THE PLAN TO THE EXTENT ALLOWED UNDER THE PLAN AND.

C.    **Modification**

The Plan Proponent may modify the Plan and/or the Disclosure Statement at any time before confirmation.

## IX. TAX CONSEQUENCES

THE FOLLOWING SUMMARY IS NOT A SUBSTITUTE FOR CAREFUL TAX PLANNING AND ADVICE BASED ON THE PARTICULAR CIRCUMSTANCES OF EACH HOLDER OF A CLAIM OR INTEREST.  EACH HOLDER OF A CLAIM OR INTEREST IS URGED TO CONSULT HIS, HER, OR ITS OWN TAX ADVISORS AS TO THE U.S. FEDERAL INCOME TAX, STATE, LOCAL AND/OR FOREIGN LAW CONSEQUENCES OF THE PLAN.

A.    **Consequences to Debtor**

1.    **Debtor Taxation**

The Debtor will continue being taxed as a Limited Liability Corporation.

2.    **Cancellation of Debt**

In general and absent an exception, a debtor will realize and recognize cancellation of debt income ("COD Income") upon satisfaction of its outstanding indebtedness for total consideration less than the amount of such indebtedness. The amount of COD Income, in general, is the excess of (a) the accrued indebtedness satisfied, over (b) the sum of (x) the amount of Cash paid, and (y) the fair market value of any new consideration given in satisfaction of such indebtedness at the time of the exchange.

A debtor will not, however, be required to include any amount of COD Income in gross income if the debtor's debt is discharged pursuant to a proceeding under chapter 11 of the Bankruptcy Code. Instead, as a consequence of such exclusion, a debtor must reduce its tax attributes by the amount of COD Income that it excluded from gross income under *section 108 of the Internal Revenue Code* In general, tax attributes will be reduced in the following order: (a) Net Operating Losses ("NOL"); (b) most tax credits and capital loss carryovers; and (c) tax basis in assets.

B.    <u>Consequences to Holders of Allowed Claims</u>

(i)    Holders of Secured Claims

The holders of Secured Claims may recognize income, gain or loss for United States federal income tax purposes with respect to the discharge of their Claims. A holder whose Secured Claim is reinstated pursuant to the Plan will not recognize gain or loss unless either (i) such holder is treated as having received interest, damages, or other income in connection with the reinstatement or (ii) such reinstatement is considered a "significant modification" of the Claim. A holder that receives cash or other property in exchange for its

16

Case 13-22702    Doc 501    Filed 07/13/15    Entered 07/13/15 18:10:02    Desc Main
Document      Page 17 of 20

Claim pursuant to the Plan will generally recognize income, gain or loss for United States federal income tax purposes in an amount equal to the difference between (i) the amount of cash or fair market value of other property, if any, received in exchange for its Claim and (ii) the holder's adjusted tax basis in its Claim.  The character of such gain or loss as capital gain or loss or as ordinary income or loss will be determined by a number of factors, including the tax status of the holder, the nature of the Claim in such holder's hands, whether the Claim constitutes a capital asset in the hands of the holder, whether the Claim was purchased at a discount, and whether and to what extent the holder has previously claimed a bad debt deduction with respect to its Claim.

(ii)      Holders of Other Priority Claims

A Claimant whose Claim is paid in full or otherwise discharged on the Effective Date will recognize income, gain or loss for United States federal income tax purposes in an amount equal to the difference between (i) the amount of cash received by such holder in respect of its Claim and (ii) the Claimant's adjusted tax basis in the Claim.  The character of such gain or loss as capital gain or loss or as ordinary income or loss will be determined by a number of factors which must be discussed with your tax professional.  A Claimant recognizing a loss as a result of the Plan may be entitled to a bad debt deduction, either in the taxable year of the Effective Date or a prior taxable year.

(iii)      Holders of General Unsecured Claims

A holder of General Unsecured Claims that receive cash in discharge of its Claim pursuant to the Plan will generally recognize income, gain , or loss for United States federal income tax purposes in an amount equal to the difference between (i) the amount of cash received in exchange for its Claim and (ii) the holder's adjusted tax basis in its Claim.  The character of such gain or loss as capital gain or loss or as ordinary income or loss will be determined by a number of factors of which you should discuss with your tax professional.

A holder recognizing a loss as a result of the Plan may be entitled to a bad debt deduction, either in the taxable year of the Effective Date or a prior taxable year.

C.   <u>Importance of Obtaining Professional Tax Assistance</u>

Each Creditor will encounter certain U.S. federal income tax consequences as a result of the Plan based on the Internal Revenue Code, Treasury Regulations thereunder, and administrative and judicial interpretations and practice in effect on the date of the Plan's confirmation, all of which are subject to change, with possible retroactive effect.  Due to the lack of definitive judicial and administrative authority in a number of areas, substantial uncertainty may exist with respect to some of the tax consequences you may face.

No opinion of counsel has been obtained, and the Debtor does not intend to seek a ruling from the IRS as to any of the tax consequences of the Plan.  Further, there can be no assurance that the IRS will not challenge one or more of the tax consequences of the Plan.  As such, it is imperative that each Creditor carefully plan for his, her, or its particular circumstances.  Each Creditor is urged to consult his, her, or its own tax advisors as to the U.S. federal income tax consequences, as well as other tax consequences, including any applicable state, local, and foreign law.

<u>IRS CIRCULAR 230 DISCLOSURE</u>: TO ENSURE COMPLIANCE WITH REQUIREMENTS IMPOSED BY THE IRS, ANY TAX ADVICE CONTAINED IN THIS DISCLOSURE STATEMENT IS NOT INTENDED OR WRITTEN TO BE USED, AND CANNOT BE USED, BY ANY TAXPAYER FOR THE PURPOSE OF AVOIDING TAX-RELATED PENALTIES UNDER THE U.S. INTERNAL REVENUE CODE.  THE TAX ADVICE CONTIANED IN THIS DISCLOSURE STATEMENT WAS WRITTEN TO SUPPORT THE PROMOTION OR MARKETING OF THE TRANSACTIONS DESCRIBED IN THE DISCLOSURE STATEMENT.  EACH TAXPAYER SHOULD SEEK ADVICE

BASED ON THE TAXPAYER'S PARTICULAR CIRCUMSTANCES FROM AN

INDEPENDENT TAX ADVISOR.

### IX. THE PURPOSE OF THIS DISCLOSURE STATEMENT

Together with this Disclosure Statement, the Debtor has filed with the Court its

proposed Plan of Reorganization.  The purpose of this Disclosure Statement is to provide

each creditor with a description of the Plan to aid her/him in making an informed decision

as to whether to accept or reject the Plan.  Each creditor in an impaired class is entitled to

vote on acceptance of the Plan.  A copy of the Plan accompanies this Disclosure Statement.

THE DISCLOSURE STATEMENT PROVIDES A BRIEF SUMMARY OF THE PLAN AND

OTHER INFORMATION WITH RESPECT THERETO AND IS NOT INTENDED TO

TAKE THE PLACE OF THE PLAN.  EACH CREDITOR IS URGED TO STUDY THE

PLAN IN FULL AND TO CONSULT WITH COUNSEL WITH RESPECT TO THE PLAN

AND ITS EFFECT ON ITS RIGHTS.

The Court will set a date for a hearing on the confirmation of the Plan.  Creditors

may vote on the Plan by filing out and mailing the accompanying Ballot for Accepting or

Rejecting The Plan to:  Closing Department, 7th Floor Dirksen Building: 219 South

Dearborn St., Chicago, IL 60604.  In order for the Plan to be accepted, claimants holding at

least two-thirds (2/3) in amount and more than one-half (1/2) in number of the allowed

claims in impaired classes who vote, must vote in favor of the Plan.  The Plan might be

confirmed with the acceptance of one Class of Claimants as described hereafter in the final

paragraph.

NO REPRESENTATIONS CONCERNING THE DEBTOR ARE AUTHORIZED

THAN AS SET FORTH IN THIS STATEMENT.  ANY REPRESENTATIONS OR

INDUCEMENTS MADE TO SECURE YOUR ACCEPTANCE WHICH ARE OTHER THAN

AS CONTAINED IN THIS STATEMENT SHOULD NOT BE RELIED UPON BY YOU IN

ARRIVING AT YOUR DECISION, AND SUCH ADDITIONAL REPRESENTATIONS AND

INDUCEMENTS SHOULD BE REPORTED TO THE OFFICE OF THE UNITED STATES
TRUSTEE WHICH, IN TURN, SHALL DELIVER SUCH INFORMATION TO THE
BANKRUPTCY COURT FOR SUCH ACTION AS MAY BE DEEMED APPROPRIATE.

THE INFORMATION CONTAINED HEREIN HAS NOT BEEN SUBJECT TO
CERTIFIED AUDIT.  THE DEBTORS DO NOT WARRANT OR REPRESENT THE
INFORMATION CONTAINED HEREIN IS WITHOUT ANY INACCURACY, ALTHOUGH
CONSIDERABLE EFFORT HAS BEEN MADE TO BE ACCURATE.

The Debtor has proposed his Plan of Reorganization in good faith and in compliance
with the applicable provisions of the Bankruptcy Code.  Regardless of the results of voting
under any class of claims, the Debtor may ask the Court to confirm the Plan of
Reorganization which can occur as provided by law if the Court finds that the Plan does not
discriminate unfairly and is fair and equitable with respect to the rejecting creditors
described is such class.  This option can occur only if the Court makes the requisite findings
after being presented with supporting evidence.

Dated: August 17, 2015                          Respectfully submitted,
                                                Parkland VI, LLC

                        By:     /s/ Glenn Brettner
                                Managing Member

                                /s/ Michael V. Ohlman
                                One of its attorneys

Michael V. Ohlman #6294512
MICHAEL V. OHLMAN, P.C.
308 West Erie, Suite 300
Chicago, Illinois 60603
Phone: 847-406-0022
mvohlman@ohlmanlaw.com

20

# EXHIBIT F

## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| Parkland Properties, LLC, *et al.* [1] | ) | Case No.: 13-22702 |
| | ) | Jointly Administered |
| Debtors. | ) | |
| | ) | |
| ———————————————— | ) | |
| | ) | |
| Parkland Properties, LLC, *et al.* | ) | |
| | ) | Adv No: 15A238 |
| v. | ) | |
| | ) | |
| James Brettner, Glenn Brettner | ) | Judge Donald R. Cassling |
| Bridgeview Bank | ) | |
| ———————————————— | ) | |

### NOTICE OF MOTION

To:   Attached Service List

PLEASE TAKE NOTICE THAT ON **April 28, 2015 at 9:30 a.m.** or as soon thereafter as Counsel may be heard, I shall appear before the Honorable Donald R. Cassling, U.S. Bankruptcy Judge, in Courtroom 619 at the Dirksen Federal Building, 219 South Dearborn Street, Chicago, Illinois, or any other judge sitting in his place and stead, and then and there present the attached Motion for Entry of Agreed Judgment Order, at which time you may appear as you deem necessary.

Joshua D. Greene
SPRINGER BROWN, LLC
400 S. County Farm Road, Ste. 330
Wheaton, IL 60187
630-510-0000

### CERTIFICATE OF SERVICE

I, Joshua D. Greene, an attorney, on oath state that I caused to be served this Notice, Motion and proposed Order by mailing and/or electronically serving where available a copy to all parties shown and depositing same in the U.S. Mail at 400 S. County Farm Road, Illinois before 5:45 p.m. on **April 21, 2015** with proper postage prepaid.

/s/ Joshua D. Greene

---

[1] The "Debtors" include: Parkland Properties, LLC (Case No. 13-22702); Parkland II LLC ("Case No. 13-25121); Parkland III, LLC (Case No. 13-25125); Parkland IV, LLC (Case No. 13-26018); Parkland V, LLC (Case No. 13-27098) and Parkland VI, LLC (Case No. 13-26811).

**Service List**

*Via Electronic Service*

Patrick S. Layng
Office of the U.S. Trustee, Region 11
219 S. Dearborn St.
Room 873
Chicago, IL 60604


*Via United States Mail*

Glenn M. Brettner
3217 West Potomac Avenue
Chicago, IL 60651

Adam B. Rome
Greiman, Rome & Griesmeyer, PC
200 W. Madison
Ste. 755
Chicago, IL 60606

Douglas Lipke
Whitney Fogelberg
Vedder Price
222 North Lasalle St.
Chicago, IL 60601

Brian Graham
7634 Lakeside Drive
Frankfort, IL 60423

Bridgeview Bank Group
Attn: Steven Landek, President
7940 South Harlem Avenue
Bridgeview, IL 60455

James Brettner
3217 West Potomac Ave.
Chicago, IL 60651

James Brettner
145 Hill St.
Williams Bay, WI 53191

# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| Parkland Properties, LLC, *et al.* | ) | Case No.: 13-22702 |
| | ) | Jointly Administered |
| Debtors. | ) | |
| ———————————————— | ) | |
| | ) | |
| Parkland Properties, LLC, *et al.* | ) | |
| | ) | |
| | ) | Adv No: 15A238 |
| v. | ) | |
| | ) | |
| James Brettner, Glenn Brettner | ) | Judge Donald R. Cassling |
| Bridgeview Bank | ) | |
| ———————————————— | ) | |

## MOTION FOR ENTRY OF AGREED JUDGMENT ORDER AS TO JAMES BRETTNER AND GLENN BRETTNER

NOW COMES Parkland Properties, LLC, Debtor in Possession, ("Movant"), by and through special counsel, Joshua D. Greene of the law firm of SPRINGER BROWN, LLC., and moves this Honorable Court for the entry of an agreed judgment order as to Defendants Glenn Brettner and James Brettner, and in support thereof respectfully states as follows:

### Background

1.      On May 31, 2013, Plaintiff commenced a Chapter 11 bankruptcy proceeding currently pending in the U.S. Bankruptcy Court for the Northern District of Illinois, Eastern Division, styled In re: Parkland Properties, LLC, et al. , 13-22702 being jointly administered with Parkland II, LLC (Case No. 13-25121), Parkland III, LLC (Case No. 13-25125), Parkland IV, LLC (Case No. 13-26018), Parkland V, LLC ( Case No. 13-27098) and Parkland VI, LLC (Case No. 13-26811).

2.      The Plaintiff continues to manage and operate its business as debtor-in-possession pursuant to Sections 1107 and 1108 of the Code.

3.      On May 14, 2013, the Plaintiff (Parkland VI, LLC) transferred real property located at 3217 West Potomac, Chicago, IL 60651 (the "Potomac Property") to the Defendants via a Quit Claim Deed.

4.      Additionally, on February 13, 2013, the Plaintiff (Parkland II, LLC) transferred real property located at 1508 North Artesian, Chicago, Illinois (the "Artesian Property") to the Debtor via a Quit Claim Deed, which was recorded on March 19, 2013.

5.      On May 31, 2013, the same date as the filing of Movant's chapter 11 petition, Bridgeview Bank recorded a judgment lien based on a judgment obtained against the Debtor in the Circuit Court of Cook County, Illinois. Because the Potomac Property and Artesian Property were titled in the name of the Debtor, the judgment lien became a lien on both the Potomac Property and the Artesian Property that the Debtor had been transferred from the Movant.

6.      On April 7, 2015, Plaintiff filed a complaint to avoid the transfer of the Potomac Property and the Artesian Property to the Defendants and the judgment lien of Bridgeview Bank, as both were done within the avoidance period applicable to the Plaintiff's bankruptcy proceeding.

7.      James Brettner and Glenn Brettner were served with the complaint on April 7, 2015.

8.      Both James Brettner and Glenn Brettner have agreed to entry of a judgment order avoiding the transfer of the Potomac Property and the Artesian Property

referenced above, which would bring both properties within the bankruptcy estate of the Plaintiffs. An agreed judgment order signed by Defendants is attached as Exhibit A. [2]

       9.     Accordingly, Plaintiff requests entry of the agreed judgment order attached hereto as Exhibit A.

     **WHEREFORE,** Parkland Properties, LLC and its affiliates, respectfully requests that this Court enter the agreed judgment order attached as Exhibit A, and for any such other and further relief as this Court deems just and equitable.

Respectfully Submitted,
Parkland Properties, LLC, Parkland II, LLC,
Parkland III, LLC, Parkland IV, LLC,
Parkland V, LLC, Parkland VI, LLC

By: ____/s/Joshua D. Greene/s/_____
         One of its attorneys

Joshua D. Greene (#6292914)
Springer, Brown, LLC
Wheaton Executive Center
400 South County Farm Rd., #330
Wheaton, Illinois 60187
Phone: (630) 510-0000
Fax: (630) 510-0004

---

[2] The judgment order was executed separately by each defendant, thus there are two separate signature pages attached.

# EXHIBIT G

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

In re:                                      )      Chapter 11
                                            )
Parkland Properties, LLC, *et al.* [1]      )      Case No.: 13-22702
                                            )      Jointly Administered
                                            )
Debtors.                                    )      Judge Donald R. Cassling
                                            )

## CERTIFICATE OF SERVICE

To:     See attached service list

    I, Michael V. Ohlman, an attorney, certify that I have served a true and correct copy of the Order setting the time to object to each of the Disclosure Statements and Plans, as amended, continuing the combined hearing on the Debtors' Disclosure Statements and Plans, a copy of the relevant Disclosure Statements and Plans, as amended, and ballots to accept or reject the Plan, as amended, to those whose names appear on the attached service list via ECF and/or US Mail, postage pre-paid from the Riverside Illinois Post Office on August 20, 2015.

                                                     /s/ Michael V. Ohlman

Michael V. Ohlman #6294512
MICHAEL V. OHLMAN, P.C.
308 West Erie, Suite 300
Chicago, Illinois 60606
312-869-4155
mvohlman@ohlmanlaw.com

---

[1] The "Debtors" include: Parkland Properties, LLC (Case No. 13-22702); Parkland II LLC ("Case No. 13-25121); Parkland III, LLC (Case No. 13-25125); Parkland IV, LLC (Case No. 13-26018); Parkland V, LLC (Case No. 13-27098) and Parkland VI, LLC (Case No. 13-26811).

VIA ECF

Devon J Eggert on behalf of Creditor
American Enterprise Bank
deggert@freeborn.com,
bkdocketing@freeborn.com;jhazdra@ecf.inf
oruptcy.com

Whitney Fogelberg on behalf of Creditor
Bridgeview Bank Group
wfogelberg@vedderprice.com

Timothy R Herman on behalf of Creditor
CFS Allocation Solutions LLC, as assignee
of Banco Popular North America
therman@clarkhill.com

Elizabeth L Janczak on behalf of Creditor
American Enterprise Bank
ejanczak@freeborn.com,
bkdocketing@freeborn.com;jhazdra@ecf.inf
oruptcy.com

Patrick S Layng
USTPRegion11.ES.ECF@usdoj.gov

Pamela J Leichtling on behalf of Creditor
CFS Allocation Solutions LLC, as assignee
of Banco Popular North America
pleichtling@clarkhill.com,
estoneking@clarkhill.com

Douglas J. Lipke on behalf of Creditor
Bridgeview Bank Group
dlipke@vedderprice.com,
ecfdocket@vedderprice.com

Thomas M Lombardo on behalf of Creditor
MRR Parkland Loans LLC
tlombardo@dimontelaw.com

Michael V Ohlman on behalf of Debtor
Parkland Properties, LLC
mvohlman@ohlmanlaw.com

Keara Roethke on behalf of Creditor MRR
Parkland Loans LLC
kroethke@ginsbergjacobs.com,
swoods@ginsbergjacobs.com

Joseph Santeler on behalf of Creditor Banco
Popular North America
jsanteler@chuhak.com,
nkonez@chuhak.com

Scott N. Schreiber on behalf of Creditor
CFS Allocation Solutions LLC, as assignee
of Banco Popular North America
sschreiber@clarkhill.com,
jwoyan@clarkhill.com

Miriam R. Stein on behalf of Creditor Banco
Popular North America
mstein@chuhak.com, dgeorge@chuhak.com

Martin D. Tasch on behalf of Creditor First
American Bank c/o Martin D Tasch
mtasch@momlaw.com

Via US Mail

Bank of America
P.O. Box 15168
Wilmington DE 19850

Bridgeview Bank
1970 North Halsted
Chicago, IL 60614

City of Chicago, Water Division
121 North LaSalle Street
Chicago, IL 60602

ComEd
PO Box 805379
Chicago, IL 60680

Liberty Bank
2392 North Milwaukee
Chicago, IL 60647

People's Gas
130 East Randolph St.
Chicago, IL 60601

Comcast
4851 N. Milwaukee Ave
Chicago, IL 60630

George Simoulis
755 N. Keeler Ave
Skokie IL 60076

Kroll Factual Data
5200 Hahns Peak
Loveland CO 80538

Shelia Brettner
1907 Buckingham Road
Mundelein, IL 60060

State Farm Insurance
One State Farm Plaza
Bloomington IL 61710

Tri-State Disposal, Inc.
PO Box 627
Blue Island, IL 60406

Citi Mortgage
P.O. Box 689196
Des Moines, IA 50368