```
 1            IN THE UNITED STATES BANKRUPTCY COURT
            FOR THE NORTHERN DISTRICT OF ILLINOIS
 2                     EASTERN DIVISION

 3

 4                                  ) No. 13 B 22702
    PARKLAND PROPERTIES, LLC,      )
 5                                  )
                                    ) Chicago, Illinois
 6                                  ) July 26, 2016
              Debtor.               ) 10:30 a.m.
 7

 8

 9            TRANSCRIPT OF PROCEEDINGS
       BEFORE THE HONORABLE DONALD R. CASSLING
10

11
    APPEARANCES:
12

13
   For the Debtor:         Mr. Michael V. Ohlman;
14
   For Bank of America
15 and Ditech Financial:   Mr. Bryan E. Minier;

16 For Bridgeview Bank
   Group:                  Mr. Paul M. Bauch;
17
   For the U.S. Trustee:   Ms. Katy Gleason.
18

19

20

21
    Court Reporter:        MARY C. KELLY, CSR
22                         United States Courthouse
                           219 South Dearborn Street
23                         Room 661
                           Chicago, Illinois  60604
24

25
```

1      THE CLERK: Parkland Properties, LLC.
2      THE COURT: Good morning. Let's have
3   appearances from my left to my right.
4      MR. MINIER: Good morning, Your Honor.
5   Bryan Minier on behalf of Bank of America and
6   Ditech.
7      MR. OHLMAN: Michael Ohlman for
8   Parkland.
9      MR. BAUCH: Paul Bauch for Bidgeview
10  Bank Group.
11     MS. GLEASON: Katy Gleason on behalf of
12  the United States Trustee.
13     THE COURT: All right. I took a look at
14  the -- let's take up first the -- I think it's
15  styled motion to authorize relief from judgment.
16  This is the one though where Ditech and Bank of
17  America wants me to decide a couple of issues,
18  correct?
19     MR. MINIER: Correct, Your Honor. We
20  filed a supplement last week, and the purpose of
21  that supplement was twofold.
22     The first was to provide you with
23  affidavits that we now have --
24     THE COURT: I saw those.
25     MR. MINIER: -- which I think was kind

1   of a missing piece from the first time we took up
2   the 9024 motions. So it took us some time to get
3   those because they're both big institutions, but I
4   wanted to provide you with those.
5      And the second was to sort of encourage
6   Your Honor to take up this matter as opposed to
7   letting the state court resolve it for the reasons
8   we indicated in the supplement. One is judicial
9   economy. We have two different state courts both
10  deciding the matter. And the second is that I
11  think this is going to involve some bankruptcy
12  issues, so I think it's more proper for Your Honor.
13     THE COURT: Here is -- and I want to
14  hear from everybody. But just preliminarily, it
15  seemed to me there were two discreet issues if I'm
16  reading it correctly. One is whether Ditech and
17  Bank of America received notice and confirmation,
18  and the second is the lien priority issues as
19  between the lenders.
20     And I'm inclined to agree and go ahead
21  and decide the first issue as to notice, but if --
22  and if I rule in Ditech's and Bank of America's
23  favor, that is, if I find that they did not receive
24  notice and thereby have the right to proceed,
25  notwithstanding what the confirmed plan provides,

1  then I'm still inclined to let the state court
2  decide the lien priority issue.  It seems to me, at
3  that point, the remedies would be in state court
4  and that ought to be the court that decides it.
5  And if you're worried about inconsistent results
6  between one or more state court judges, there's
7  ways of addressing that before the state courts.
8  So that's where I think I'm coming out.
9              MR. MINIER:  For clarification, we're
10 not asking Your Honor to resolve the lien priority
11 issues.  I think you're right.  I think they're
12 close to fully briefed, if not fully briefed, in
13 the state courts.  I understand we have got two
14 state court proceedings, but that's where we were
15 to begin with anyway, so we're not asking you to
16 resolve that issue.
17             THE COURT:  On the issue of notice, I
18 guess my question for debtor's counsel as much as
19 anything else, or anybody else who wants to be
20 heard on it, is do we -- I read the affidavits.  Do
21 we have a factual dispute as to whether they
22 received notice or not?  Do we have legal issues
23 that need to be addressed?  So in other words, do
24 we need briefing?  Do we need an evidentiary
25 hearing?  Do we need both?  Tell me where we are.

1      MR. OHLMAN:  At this point, I think
2  we're going to have -- if the court is inclined to
3  hear it, we would have to have both I would think.
4  We definitely have legal issues, and I know that we
5  have factual issues.
6      THE COURT:  Tell me what the legal
7  issues are, please.
8      MR. OHLMAN:  The legal issues are, you
9  know, just the notice issues themselves about what
10  is and is not valid notice.
11      The second is, of course, the factual
12  issues that I think are obvious by reading the
13  pleadings.
14      I guess my -- I guess one of my issues
15  with this -- with even hearing it here is that I
16  remember the last hearing there was a directive to
17  have the state court take care of this.  Nothing
18  was done.
19      So we've gone -- since Your Honor was --
20  since Your Honor wasn't here and on sabbatical or
21  I'm not sure what it was, but since we were here
22  last, three-and-a-half months ago or four months
23  ago, a lot of things were supposed to get done.
24  Because this was a large time issue, and they came
25  in here on an emergency, as I recall, and it had to

1   be done right now, right now, right now.

2   Your Honor told them to go to state
3   court because that was the most expedient way of
4   doing this.  Nothing was done.  So we're sitting
5   here in the background just waiting and waiting and
6   waiting, and now three days before or four days
7   before a hearing, when all of these state court
8   issues were supposed to be resolved, we're coming
9   back here, and nothing has been done.

10   This case has been going on, as you
11   know, for three -- over three years, and a lot of
12   that was due to problem with negotiations and
13   people not wanting to move.  And I took a lot of --
14   a lot of the brunt on that when it was and was not
15   my -- at my feet.

16   Now we're coming back here, and we're
17   saying, okay, now we have all these other issues
18   that we need to brief.  This could have been done
19   in the four months, in the three months, and I
20   guess that's just very frustrating to me that we
21   have to reopen this entire case to do this.

22   THE COURT:  I understand.

23   Counsel.

24   MR. BAUCH:  Yes, Your Honor.  We have
25   been doing things in the state court.  As you

1   recall, there are two cases.  The Potomac
2   (phonetic) case is the case where Bridgeview won, I
3   believe, and Bank of America filed a motion for
4   reconsideration.  That's still up in the air.  So
5   the bankruptcy issue actually isn't fronted in that
6   case.  It is fronted in the Potomac case where we
7   basically raise the state law claim plus the
8   bankruptcy claim and the notice issue there.  That
9   was just filed recently, so it hasn't been acted
10  on.
11              But with respect to, I think, the
12  questions about notice, I mean, I think our
13  position is that there is both legal and factual
14  issues.  What we've determined from our research is
15  that, basically, Bank of America was in the
16  electronic noticing system, so it was getting
17  notice from the clerk.
18              This PO box that was being addressed, we
19  did research it, as some of our presidential
20  candidates do, on the Internet, which it seems to
21  suggest that this mailbox has been around for a
22  while.  It looks like it used to belong to MBNA
23  America, which was acquired by Bank of America.
24  People are using this address for notices on cases
25  all over the country.

1              So I don't -- when they say they have
2     nothing to do with this mailbox, I mean, that means
3     a lot of people are wrong and are sending this to
4     the wrong place or, in fact, it is their mailbox.
5     And, again, I can't tell you what is true without,
6     frankly, doing some discovery on that.  But that
7     would be the questions.
8              Then there is, also, the other point is
9     that during -- and I don't think there is any
10    dispute of that -- is that during those cases, they
11    were given notice of the bankruptcy proceeding by
12    Bidgeview's counsel in state court.  There were
13    orders entered saying there is a stay.  Here is the
14    case number.
15             And I think one of the legal issues is
16    we found cases that if you give notice to their
17    state court counsel, that's notice to them.  But,
18    again, whether that's adequate notice, that would
19    become a legal issue.  But I don't think there's
20    going to be a factual dispute that happened in the
21    state court.
22             But I would tend to agree with debtor's
23    counsel.  There's going to be an evidentiary
24    hearing.  You'll probably need discovery on this to
25    find out whose PO box this is, is it still active,

1    was that a valid place to serve.  And then the
2    question is did the electronic data system, was
3    that also sufficient notice.
4             THE COURT:  Does the U.S. Trustee have
5    anything on this?
6             MS. GLEASON:  No position.
7             THE COURT:  All right.
8             MR. MINIER:  If I may, Your Honor, just
9    one -- a couple points.
10            THE COURT:  Sure.
11            MR. MINIER:  First of all, we kind of
12   lump B of A and Ditech together as we have all
13   along.  There has been no discussion, no evidence,
14   nobody has made any argument that they served
15   Ditech anywhere, period.  So I'm not necessarily
16   saying that we need to bifurcate them.  I think
17   Your Honor can rule on both.  But at a minimum,
18   there has been no discussion whatsoever about any
19   service anywhere on Ditech.  So to the extent Your
20   Honor is inclined to have a briefing schedule and
21   some sort of an evidentiary hearing, I don't know
22   that we need to have it as to Ditech.  Unless the
23   debtor or anybody can say they served Ditech
24   anywhere, I think maybe we can do away with Ditech
25   and just have a briefing schedule and evidentiary

1   hearing as to B of A and this one PO box.
2         That was part of the reason we took so
3   long is we wanted to make sure that what B of A was
4   telling us -- because I did the same research Mr.
5   Bauch did.  We have done the Internet.  We Googled
6   the PO box.  We came up with, I'm sure, the same
7   hits that he did.  It does seem to have been used
8   by other creditors in other cases.  It certainly
9   seems, at one point, to have been associated with
10  MBNA.  So we kind of took the time to make sure it
11  went up the chain at B of A to say is this a valid
12  PO box, and we were told no.
13        So I understand that that's potentially
14  an evidentiary issue.  I guess what I'm saying is,
15  at least as to Ditech, I think we can do away with
16  that today.
17        MR. OHLMAN:  I don't believe that's
18  true.
19        THE COURT:  What's that?
20        MR. OHLMAN:  I don't believe we can just
21  do away with the Ditech issue right now.  That's --
22  that's -- you can't take one away from the other.
23        MR. BAUCH:  I think the concern there,
24  Judge, is these were, I think, Countrywide
25  mortgages, which then became Bank of America, and

1   then were being serviced but not sold, and then, at
2   some point, I don't know what type of notice of the
3   assignment was given to the debtor. We don't even
4   --
5           MR. OHLMAN: The debtor doesn't have any
6   notice that it was transferred to Ditech through
7   the course of the bankruptcy. I would have gotten
8   notice of that if they did receive it. I'm not
9   necessarily saying it didn't happen because that's
10  a whole different host of federal issues. But what
11  I am saying is that I never got notice that Ditech
12  was taking over the mortgage during the bankruptcy,
13  and my client says that they never received
14  anything saying Ditech had taken over the mortgage.
15          What does that mean right now? I don't
16  think that means anything. But what I do think it
17  means is we have issues of fact and we have issues
18  of law that have to be resolved.
19          THE COURT: Okay.
20          MR. OHLMAN: If, in fact, we're going to
21  be doing that.
22          THE COURT: Here I'm still inclined to
23  do what I originally said. I think that it makes
24  more sense. The issues of notice are things that
25  happened in connection with this case, and the

1  issues of lien priority happened well before this
2  case was ever filed outside this case, so I think
3  that second issue belongs in state court.
4           I guess I would like some guidance --
5  well, let's take the discovery issue first.  I
6  don't have any problems with some brief discovery.
7  I do not want to have lengthy discovery on this.
8  It seems to me the things you're talking about can
9  be done through a corporate representative
10 deposition.  And see if you can combine it with the
11 document production request and, if you need to,
12 that that's done, you know, shortly before the
13 deposition.  I don't want to have this become a
14 Battle of the Bulge or pick your metaphor.  It
15 doesn't merit that.  And I think a separate
16 corporate representative deposition -- unless you
17 need -- if you want one of Ditech and one of Bank
18 of America.
19          MR. MINIER:  I don't know that we need
20 that.  Once again, I don't know that we need that.
21 I don't think we have a factual dispute --
22          THE COURT:  If you can work it out.
23          MR. OHLMAN:  We haven't even filed a
24 response.
25          THE COURT:  I understand.  So that

1  raises my second question.  Should the briefing
2  take place simultaneously?  Should it go on
3  parallel tracks?  Or should briefing precede the
4  evidentiary hearing or follow the evidentiary
5  hearing?  I need the parties guidance on that.
6           MR. OHLMAN:  I don't think that I can
7  file a brief without the depositions going forward.
8           THE COURT:  Okay.  Let's --
9           MR. BAUCH:  I mean, we can address the
10 legal issues, obviously, first, but it might make
11 more sense to get the facts -- I mean, if it turns
12 out Ditech we don't have an issue, then I don't
13 think we would need to spend the time briefing it.
14 But on the other hand, I don't see it's going to be
15 any different issues for Ditech versus Bank of
16 America as far as legal questions.
17          THE COURT:  If I understand you both
18 correctly, what you're suggesting is that you'll
19 take the corporate representative depositions, then
20 file the briefs, and then have an evidentiary
21 hearing?
22          MR. BAUCH:  Yes.
23          MR. OHLMAN:  Yes.
24          THE COURT:  Everybody in agreement?
25          MR. MINIER:  That's fine, Your Honor.

1              MR. OHLMAN:  And, Your Honor, if I may?
2              THE COURT:  Sure.
3              MR. OHLMAN:  If we need to do it as a
4    trial brief, I think that can be done as well.
5              THE COURT:  That's okay with me.
6              I'll tell you what.  Can I ask -- can we
7    pass this, and I'll ask you guys to go talk about a
8    briefing schedule?  I'll hear my other cases, and
9    then you can come up and tell me what you suggest
10   as a briefing schedule.
11             MS. GLEASON:  Judge, there is also up
12   the application because I don't intend to
13   participate --
14             THE COURT:  Yes.  Let's talk about that.
15             MS. GLEASON:  Thank you.
16             THE COURT:  Well, we also have the
17   debtor's motion to modify plan.  I assume that's
18   going to be continued with everything?
19             MR. OHLMAN:  Yeah, that will be
20   continued, Your Honor.
21             THE COURT:  And there is motion to
22   withdraw as attorney filed --
23             MR. OHLMAN:  Ms. Fogelberg.
24             THE COURT:  -- on behalf of Bidgeview
25   Bank.  I think I had already granted that?

1       MR. OHLMAN:  I thought so, too, Your
2  Honor.
3       THE COURT:  I was waiting for a draft
4  order to follow, which I don't think I've ever
5  gotten it.
6       MR. OHLMAN:  I'll tell you what.  I will
7  contact -- oh, you're Bridgeview Bank's attorney.
8       MR. BAUCH:  Yes.  Substitute counsel.
9       MR. OHLMAN:  This is Whitney Fogelberg.
10  She left the firm.  She left Vedder Price, and now
11  she's with another firm.
12       MR. BAUCH:  I'll just call them and ask
13  them to submit it.  That was the firm that we kind
14  of replaced, Your Honor.  I was confused about what
15  happened.
16       THE COURT:  All right.
17       Then there was the motion to extend time
18  to file fee application, which I assume is moot at
19  this point.
20       MS. GLEASON:  Yes.  It was filed.  It
21  was a few days late.
22       THE COURT:  That's mooted.
23       And then the application for
24  compensation.  Go ahead.
25       MS. GLEASON:  Your Honor, I reviewed it.

1  I did have some comments.  There was some time that
2  was before the retention was allowed.  There was
3  some -- although I know there was a fair amount of
4  cutting before it was even filed, but, you know,
5  there was an awful lot of amended disclosure
6  statements and different things.
7           Ultimately, counsel and I agreed on a
8  $10,000 reduction.
9           THE COURT:  Okay.  Anybody have any
10 difficulties with that?
11          MR. BAUCH:  No objection, Your Honor.
12          THE COURT:  All right.  I'm going to
13 approve that application as amended, and if I can
14 just get a draft order that provides that.
15          This does not reflect on its face the
16 reduction, but I take it you're telling me on the
17 record --
18          MS. GLEASON:  Yes.
19          MR. OHLMAN:  Yes.
20          THE COURT:  Okay.  Very good.  I'll
21 enter that order.
22          And we'll recall you at the end of the
23 call.
24 (The above-entitled cause was passed and recalled:)
25          THE CLERK:  Recalling Parkland

1       Properties.
2                MR. MINIER:  Good morning, again, Your
3       Honor.  Bryan Minier on behalf of Ditech Financial
4       and Bank of America.
5                MR. OHLMAN:  Michael Ohlman for the
6       debtors.
7                MR. BAUCH:  Paul Bauch for Bidgeview,
8       Your Honor.
9                THE COURT:  Okay.  What did we decide?
10               MR. OHLMAN:  I think we're going to go
11      out -- if we can.  We're going to take some time to
12      get these deps.  There are probably going to be
13      two, and there's going to be a rider, of course, so
14      we are going to need some documents.
15               So we're asking for a status at the end
16      of September or beginning of October so that we
17      will have all the depositions and all the discovery
18      issues done by the end of September.
19               THE COURT:  Oh, so you will have taken
20      the depositions.
21               MR. OHLMAN:  Correct.
22               THE COURT:  So that will be done.
23               And then we'll set the briefing
24      schedule?
25               MR. OHLMAN:  And then we'll set the

1   briefing schedule at that time because if we don't
2   need it, we don't need it.
3           THE COURT:  That works for me.
4           MR. MINIER:  That works for me, Your
5   Honor.
6           MR. BAUCH:  And part of that is for
7   vacations.  A lot of people are going to be on
8   vacation during August.
9           THE COURT:  No, I understand.  As long
10  as all the depositions are done during that time,
11  that is fine.
12          So that will be September 27th, correct?
13          THE CLERK:  Yes, Judge, or October 4th.
14          THE COURT:  I don't want to go to
15  October.  Let's do September 27th at 10:30.
16          MR. MINIER:  That's for the status, Your
17  Honor?
18          THE COURT:  Just for the status.
19          And when you come in, if you can have a
20  suggested briefing schedule ready to go.
21          MR. BAUCH:  Sure.  We can maybe submit
22  an agreed order on that.
23          THE COURT:  Perfect.  Thank you.
24          MR. BAUCH:  Thank you.
25          MR. OHLMAN:  Thank you, Judge.

1  MR. MINIER: Thank you.

2  THE CLERK: For clarity of the record,

3 the post-confirmation hearing and the motion to

4 authorize relief is set for September 27th at

5 10:30.

6  Line 22, the debtor's motion to modify

7 plan is continued to September 27th at 10:30.

8  Line Item 23, the motion to withdraw, we

9 have a draft order to follow due by or before

10 August 9th at 10:00 a.m.

11  Line 24, the motion to extend time has

12 been mooted.

13  Line Item 25, final application for

14 compensation, we've received an order.

15  THE COURT: Okay.

16  THE CLERK: Everyone please rise.

17  Court is in recess until 1:00 p.m.

18  (Which were all the proceedings had

19  in the above-entitled cause,

20  July 26, 2016, 10:30 a.m.)

21

22 I, MARY C. KELLY, CSR, DO HEREBY CERTIFY THAT THE
FOREGOING IS A TRUE AND ACCURATE TRANSCRIPT OF
PROCEEDINGS HAD IN THE ABOVE-ENTITLED CAUSE.(f)

23

24

25